**No. 2015-1946**

IN THE

# UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case No. IPR2013-00636*

## REPLY BRIEF OF APPELLANT
## WI-FI ONE, LLC

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court
Suite 1500
Dallas, TX 75201
(214) 978-4972

Peter J. Ayers
LEE & HAYES PLLC
11501 Alterra Parkway
Suite 450
Austin, TX 78758
(512) 605-0252

*Attorneys for Appellant Wi-Fi One, LLC*

**CERTIFICATE OF INTEREST**

Counsel for the Appellant, Wi-Fi One, LLC, certifies the following:

1.      The full name of every party or amicus represented by me is:

**Wi-Fi One, LLC**

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Wi-Fi One, LLC**

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Wi-Fi One, LLC is 100% owned by Optis Wi-Fi Holdings, LLC.**

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**LEE & HAYES, PLLC**
Peter Ayers
J. Christopher Lynch
John Shumaker

**NELSON BUMGARDNER, P.C.**
Donald Puckett

**SKIERMONT DERBY LLP (formerly SKIERMONT PUCKETT LLP)**
Steven Joseph Udick
Sarah E. Spires

i

**MCKOOL SMITH, P.C.**
Douglas A. Cawley

Dated:  February 29, 2016                    Respectfully submitted,


/s/ Donald Puckett
G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485  (facsimile)
puckett@nelbum.com

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4972 (telephone)
(214) 978-4044 (facsimile)
dcawley@mckoolsmith.com

Peter J. Ayers
LEE & HAYES PLLC
11501 Alterra Parkway, Suite 450
Austin, TX 78758
(512) 605-0252 (telephone)
(512) 605-0252 (facsimile)
peter@leehayes.com

*Attorneys for Appellant,*
*Wi-Fi One, LLC*


ii

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST .................................................................................i

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES .....................................................................v

I.    SUMMARY OF REPLY ................................................................1

II.   ARGUMENT IN REPLY .............................................................2

    A.    The Court is not precluded from reviewing the PTAB's
       decision on the §315(b) time bar issue.................................................2

       1.    This case is factually distinguishable from *Achates*. ..................3

       2.    *Achates* is not binding if this Panel determines that
           *Achates* did not consider the relevant binding Supreme
           Court authorities.................................................................9

       3.    The *Achates* decision was wrongly decided. Section
           314(d) does not bar all appellate review of the PTAB's
           determinations regarding the §315(b) time bar. .......................13

       4.    At a minimum, this Panel should request en banc
           reconsideration of *Achates*, or wait for the Supreme
           Court's decision in *Cuozzo*. ....................................................15

    B.    The PTAB's decision on the §315(b) time bar issue should be
       vacated or reversed...........................................................16

       1.    The Board committed a critical legal error by applying
           the wrong substantive legal standards. ....................................17

       2.    The Board committed serious procedural errors. .....................19

       3.    Patent Owner is entitled to appellate relief on the §315(b)
           time bar issue. .................................................................20

C.    The Board erred in determining that the '625 patent claims are anticipated by Hettich..........................................................................20

    1.    Hettich does not teach or disclose commanding a receiver to release expectations. ...........................................................22

    2.    Hettich does not teach or disclose a transmitter discarding unacknowledged packets with sequence numbers less than the "at least one packet."............................27

CONCLUSION ...................................................................................................30

CERTIFICATE OF SERVICE ...........................................................................32

CERTIFICATE OF COMPLIANCE...................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. Inc. v. Gardner,*
    387 U.S. 136 (1967)..................................................................................12

*Achates Ref. Publ., Inc. v. Apple, Inc.,*
    803 F.3d 652 (Fed. Cir. 2015) .............................................................. passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
    809 F.3d 1282 (Fed. Cir. 2015) ...............................................................10

*Atar S.r.l. v. United States,*
    730 F.3d 1320 (Fed. Cir. 2013) ...................................................................8

*Atlantic Thermoplastics, Inc. v. Faytex Corp.,*
    970 F.2d 834 (Fed. Cir. 1992) ......................................................... 9, 10. 15

*Bowen v. Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986)..................................................................................12

*City of Arlington v. FCC,*
    133 S.Ct. 1863 (2013)...............................................................................12

*Cuozzo Speed Techs. v. Lee,*
    2016 U.S. LEXIS 632 (U.S. Jan. 15, 2016)............................... 13, 14, 15, 16

*Cutsforth, Inc. v. MotivePower, Inc.,*
    2016 U.S. App. LEXIS 1083 (Fed. Cir. 2016)..............................................8

*In re Cuozzo Speed Techs., LLC,*
    793 F.3d 1268 (Fed. Cir. 2015) .................................................................13

*In re Sang-Su Lee,*
    277 F.3d 1338 (Fed. Cir. 2002), ..................................................................7

*Intel Corp. v. U.S. Int'l Trade Comm'n,*
    946 F.2d 821 (Fed. Cir. 1991). ....................................................................3

v

*Mach Mining, LLC v. EEOC,*
    135 S.Ct. 1645 (2015).................................................................................12

*Mercier v. U.S.,*
    786 F.3d 971 (Fed. Cir. 2015) ..................................................................11

*Reilly v. Office of Personnel Mgmt.,*
    571 F.3d 1372 (Fed. Cir. 2009) ......................................................... 16, 17

*Smith v. GTE Corp.,*
    236 F.3d 1292 (11th Cir. 2001) .................................................................11

*Synopsys, Inc. v. Mentor Graphics Corp.,*
    2016 U.S. App. LEXIS 2250 (Fed. Cir. 2016)............................................14

*Tohono O'odham Nation v. U.S.,*
    559 F.3d 1284 (Fed. Cir. 2009) .................................................................11

*Tucker v. Phyfer,*
    819 F.2d 1030 (11th Cir. 1987) ........................................................ 9, 10, 11

**Statutes**

5 U.S.C. §556(d) ...................................................................................... 5, 19

5 U.S.C. §556(e) ....................................................................................... 5, 19

35 U.S.C. §314(d) ........................................................................ 1, 2, 9, 12-16

35 U.S.C. §315(b) ..................................................................................... passim

**Rules**

Fed. Cir. R 35(a)(1)........................................................................................15

## I. SUMMARY OF REPLY

Broadcom's responsive brief provides no coherent justification for the PTAB below having refused to even consider the known indemnity agreement in connection with its determination that the District Court Defendants are not a real party in interest or privy of Broadcom, and that the 35 U.S.C. §315(b) time bar does not apply. The Board's §315(b) determination should be reversed because the Board applied the wrong legal standard on this issue, and also because the Board's actions amounted to a serious procedural error. The Federal Circuit is not precluded from reviewing the §315(b) determination by 35 U.S.C. §314(d). The recent *Achates* decision is factually distinguishable. Wi-Fi One also encourages the Panel to revisit the holding of *Achates* because that case did not consider the relevant binding Supreme Court authorities and was wrongly decided.

In addition, the Board's decision below should be overturned because several of the Board's findings are not supported by substantial evidence. The challenged claims require that the receiver release packets having sequence numbers prior to a received out-of-order packet, and that the transmitter accordingly discard those packets. Hettich teaches a different approach. Unlike the challenged claims, following the receipt of a Delay PDU, outstanding packets exist having sequence numbers between the sequence number referenced in the Delay

PDU and the sequence number of the next received out-of-order packet. Consequently, the receiver is still expecting to receive such outstanding packets, and the transmitter has not discarded such packets. Accordingly, Hettich cannot invalidate the challenged claims, and the Board's contrary decision should be reversed.

## II.    ARGUMENT IN REPLY

### A.    The Court is not precluded from reviewing the PTAB's decision on the §315(b) time bar issue.

Contrary to Broadcom's contention, the panel decision in *Achates Ref. Publ., Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) does not preclude this Panel from reviewing the Board's §315(b) determination below. This is true for at least two reasons. First, the present case is factually distinguishable from *Achates* in material ways, as discussed below. Second, the *Achates* decision itself may be revisited by this Panel because the *Achates* panel did not consider the most relevant binding Supreme Court precedents. For the reasons discussed below, this Court retains authority to review the Board's §315(b) determination, notwithstanding *Achates* and notwithstanding 35 U.S.C. §314(d).

2

### 1.    This case is factually distinguishable from *Achates.*

#### a.    Unlike *Achates*, the PTAB panel below did not review the most relevant evidence on the §315(b) issue.

An indemnity agreement between an IPR petitioner and a third party that covers infringement claims arising from the challenged patent is always highly relevant to the "real party-in-interest or privy" issue under §315(b). In all likelihood, an indemnity agreement is the most relevant evidence. *See* Op. Br. at 33-34.[1] Broadcom does not dispute this point, nor could it. The Federal Circuit has held that the existence of an indemnity agreement alone, in many cases, is sufficient for a finding of a privity relationship. *See, e.g., Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991).

Unlike the present case, in *Achates* the PTAB panel had full knowledge of the alleged terms of the alleged indemnity agreement because it reviewed an unsigned draft of the agreement. *See Achates*, 803 F.3d at 654. In that case, the PTAB denied further discovery and found that the §315(b) time bar did not apply because ***even if*** the draft indemnity agreement had been signed, the terms of the draft agreement were not sufficient (in the PTAB's view) to create a privity

---

[1] Citations to "Op. Br." refer to Wi-Fi One's Opening Brief, and citations to "Resp. Br." refer to Broadcom's Responsive Brief.

3

relationship between the relevant parties. *See id*. Thus, in *Achates*, the disputed issue was whether an alleged indemnity agreement had been signed at all. The Board, for purposes of its decision, essentially assumed that the agreement had been signed and found that even if it were signed it still did not establish a privity relationship on the facts of that case. *Id.* Unlike the present case, there was no dispute or uncertainty in *Achates* over the terms of the alleged indemnity agreement. *See id.*

In the present case, by contrast, there is no dispute that there is in fact a binding indemnity agreement between Broadcom and one or more of the District Court Defendants that covers infringement claims arising from the patent challenged below. But here (unlike *Achates*) the Board below ***has no idea what the terms of the indemnity agreement are***. Despite the diligent best efforts of Patent Owner, the Board would not allow the indemnity agreement to be made part of the record. In this case, the PTAB cannot claim to have made an informed decision on the §315(b) issue because the PTAB wholly failed to consider the most relevant piece of evidence. *See* Op. Br. at 32-35.

It is quite perplexing to consider the very substantial time and effort that the parties have expended in this case battling over whether the Board would simply take the indemnity agreement into evidence and consider it. *See* Op. Br. at 8-9

4

(discussing Patent Owner's procedural attempts to force Broadcom to produce the agreement for purposes of this IPR). The agreement is a short document that was produced to Patent Owner's counsel in litigation – albeit under a protective order that precludes Patent Owner from using it in the IPR proceeding below. *See* A2089-92. It simply defies logic and reason that the Board below has been so steadfastly adamant in its refusal to consider it, or to make it a part of the record that the Federal Circuit can review on appeal.

This important factual distinction from *Achates* – the fact that the Board below failed to consider the critical indemnity agreement and had no understanding of its terms – is significant to the outcome of this appeal. Unlike the patent owner in *Achates*, Patent Owner in this appeal can show that the Board committed serious procedural violations. *See* Op. Br. at 27-28 (discussing the Federal Circuit's authority to review for serious procedural violations); Op. Br. at 32-35 (discussing the ways in which the PTAB's actions in this case amount to serious procedural violations).

In its Response Brief, Broadcom *never addresses* Patent Owner's contention that the PTAB's refusal to consider the highly-relevant indemnity agreement amounts to a serious procedural error. *See* Op. Br. at 33-35 (arguing that the PTAB violated §§556(d) and (e) of the Administrative Procedures Act and citing cases).

5

Broadcom's brief simply attempts to justify the PTAB's discovery ruling, i.e., its refusal to compel Broadcom to produce the indemnity agreement. *See* Resp. Br. at 43-48 (discussing alleged justifications for the PTAB's *discovery* ruling). But this misunderstands Patent Owner's argument, and avoids the salient legal issues. As stated in Patent Owner's Opening Brief:

> Patent Owner's point of error, however, is ***more than just a complaint that the Board misapplied the standards for deciding a discovery motion***. The Board's error here is more fundamental. The requested discovery goes to the heart of whether the IPR petition was time barred when it was filed, and thus goes to whether the Board itself has complied with the statutory directive under §315(b). To arrive at the factually correct ruling, the Board by necessity must look at the known indemnity agreements.

Op. Br. at 33 (emphasis added). By limiting its argument to the merits of the discovery motion, Broadcom fails to address Patent Owner's real point of error – that the PTAB committed serious procedural error by failing to consider known, highly-relevant evidence, and also by denying Patent Owner the opportunity to present contrary evidence. *See* Op. Br. at 33-35.

### b.    Unlike *Achates*, the PTAB panel below did not render a reasoned written decision on the §315(b) issue.

This case also is factually distinct from *Achates* because the Board below failed to provide a reasoned explanation for its decision on the §315(b) issue. *See* Op. Br. at 21 fn. 5 and 35-38. In *Achates*, the PTAB first decided a discovery

motion related §315(b), then later made a substantive determination in its institution decision, and then again revisited its substantive §315(b) issue in its final written decision. *See Achates*, 803 F.3d at 654. In both the institution decision and the final written decision, the PTAB in *Achates* set forth a reasoned written decision applying the law to the facts and explaining the substantive basis for its determination. *See id.*

In this case, by contrast, the PTAB never made a substantive determination of the §315(b) issue at all. It only decided Patent Owner's discovery motion – applying procedural standards relating to discovery – before Patent Owner had even fully briefed the substantive §315(b) issue. The PTAB's subsequent institution decision and final written decision merely incorporated by reference the Board's reasoning on the ***discovery motion***, without providing a reasoned basis for its ultimate ***substantive*** determination that the §315(b) time bar does not apply in this case. *See* Op. Br. at 35-38.

The Federal Circuit recently reaffirmed the important principal that the PTAB has an obligation to articulate its reasoning for making its decisions, stating:

> As we held in *In re Sang-Su Lee*, 277 F.3d 1338 (Fed. Cir. 2002), the Board must articulate its reasoning for making its decision. The Board must develop and explain the basis for its findings. This enables the reviewing court to conduct meaningful review of the proceedings. Broad, conclusory statements are not enough to satisfy the Board's obligation to provide reasoned explanation for its decision.

*Cutsforth, Inc. v. MotivePower, Inc.*, 2016 U.S. App. LEXIS 1083 at *7 (Fed. Cir. 2016). *See also Atar S.r.l. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013).

Here, the Board committed serious procedural errors by failing to provide a reasoned decision articulating the basis for its own jurisdiction and its compliance with a statutory directive; and also by failing to explain a clearly articulated statement of reasons for departing from its actions in other similar cases. *See* Op. Br. at 35-36 (citing cases). Broadcom essentially concedes these points, because Broadcom cannot (and does not attempt to) point to any portion of the Board's institution decision or final written decision that sets forth a reasoned basis for finding that the Board complied with §315(b). Instead, Broadcom merely argues: (1) that this court is precluded from reviewing the sufficiency or the Boards' reasoning in its §315(b) decision (Resp. Br. at 42) and (2) that the Board's conclusory statements in the institution decision and final written decision, incorporating the discovery order by reference, are sufficient (Resp. Br. at 48 fn. 20). Broadcom never addresses Patent Owner's real argument – that the Board abrogated its responsibility to provide a reasoned statement of its decision on the §315(b) issue when it merely incorporated, by reference, its finding that Patent Owner had not shown that it was entitled to additional discovery on the issue.

8

These factual distinctions from *Achates* are significant to the outcome of this appeal because they amount to serious procedural errors that are reviewable by this Court, notwithstanding the language of §314(d). *See* Op. Br. at 35-49.

### 2. *Achates* is not binding if this Panel determines that *Achates* did not consider the relevant binding Supreme Court authorities.

Even if this Panel finds that this case is not factually distinct from *Achates*, the Panel is not required to blindly follow the *Achates* decision, because the *Achates* panel itself did not consider the relevant Supreme Court authorities. If *Achates* had considered the relevant Supreme Court cases, and adopted a certain interpretation of those cases, then its holding would be binding precedent on this Panel under the "prior panel precedent rule." But where the prior panel did not consider the relevant Supreme Court precedents, a subsequent panel is allowed to revisit the issues presented in light of the binding Supreme Court authority. *See Atlantic Thermoplastics, Inc. v. Faytex Corp.*, 970 F.2d 834, 839 fn.2 (Fed. Cir. 1992). *See also Tucker v. Phyfer*, 819 F.2d 1030, 1035 fn. 7 (11th Cir. 1987).

The Federal Circuit, of course, has no authority to modify or ignore binding precedent from the United States Supreme Court. "Supreme Court decisions remain binding precedent until [the Court] sees fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *See*

9

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 809 F.3d 1282 at fn. 3 (Fed. Cir. 2015).

In such circumstances, the Federal Circuit has expressly recognized an exception

to the prior panel precedent rule. *See Atlantic Thermoplastics*, 970 F.2d at 839 fn. 2

("A decision that fails to consider Supreme Court precedent does not control if the

court determines that the prior panel would have reached a different conclusion if it

had considered controlling precedent.").

In *Atlantic Thermoplastics*, the Federal Circuit cited the Eleventh Circuit

decision *Tucker v. Phyfer*, 819 F.2d at 1035 fn. 7, which further explained this

exception to the prior panel precedent rule:

> The [prior] panel decided the case ***without any reference to the
> Supreme Court's previous holdings*** in *Lyons* and *Geraghty*. Our prior
> panel rule, which makes decisions of prior panels of this court binding
> on subsequent panels of the court . . . , if applied here, would require
> us to follow [the prior panel's] rationale. We decline to do so,
> however, for we are convinced that had *Lyons* and *Geraghty* been
> called to the attention of the [prior] panel, the panel would have come
> to the conclusion we reach today. In affirming the district court, we do
> not view ourselves as violating the prior panel rule; rather, we are
> simply ***discharging our duty to follow clearly controlling Supreme
> Court precedent***. We hasten to add that had the panel expressly
> considered *Lyons* and *Geraghty*, we would be bound by its
> interpretation and application of those decisions.

10

*Id.* (emphasis added).[2] *See also Tohono O'odham Nation v. U.S.*, 559 F.3d 1284, 1287-88 (Fed. Cir. 2009) (citing *Tucker* for the proposition that a prior panel decision is binding only where it considered the applicable Supreme Court authorities); *Mercier v. U.S.*, 786 F.3d 971, 981 (Fed. Cir. 2015) ("***In the absence of authority from the Supreme Court***, this Court could only overrule [a prior panel precedent] were we to sit en banc") (emphasis added).

As discussed in Patent Owner's Opening Brief, the *Achates* panel did not properly frame the legal issue, and as a result it failed to consider the most relevant Supreme Court authorities. *See* Op. Br. at 17-18, 26-27. Under the relevant Supreme Court cases, in determining whether a statute precludes judicial review the court must start with the strong presumption that judicial review is available, and must then determine whether the specific statute at issue sufficiently evidences a clear congressional intent to overcome the presumption of reviewability. *See* Op.

---

[2] A subsequent panel of the Eleventh Circuit criticized the *Tucker* exception to the prior panel precedent rule and attempted to collect contrary authority. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1302-03 (11th Cir. 2001). In doing so, however, the *Smith* panel cited no other case in which the prior panel had completely failed to consider the relevant Supreme Court authority. *See id.* The *Smith* panel rejected the notion of a broader "overlooked reason" exception. *Id.* at 1303. In any event, as stated in the *Tucker* case itself, the *Tucker* exception is properly limited to circumstances in which the prior panel altogether failed to consider relevant Supreme Court authorities.

Br. at 18-20 (discussing the relevant authority). The *Achates* panel, however, never once mentioned the strong presumption of reviewability, and it did not consider whether §314(d) or its corresponding legislative history are sufficient to overcome this presumption. Thus, the *Achates* decision never considered *Abbott Labs. Inc. v. Gardner*, 387 U.S. 136 (1967) (Administrative Procedure Act evidences a strong congressional presumption in favor of judicial review of administrative action), *Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645 (2015) (reaffirming the presumption), or similar cases. Nor did the *Achates* decision consider *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), or the cases collected in footnote 3 of *Bowen*, in which the Supreme Court has refused to read statutory limitations on reviewability as a complete bar to appellate review.

In *Achates*, the Court's decision to treat §314(d) as a complete bar to judicial review of the §315(b) time bar was premised upon a finding that the time bar was non-jurisdictional. *See Achates*, 803 F.3d at 657-58. Yet, the *Achates* opinion does not cite or consider the Supreme Court holding in *City of Arlington v. FCC*, 133 S.Ct. 1863 (2013), in which the Court rejected the very notion of any distinction between jurisdictional and non-jurisdictional statutory limits on agency power, and instructed lower courts to abandon any such distinction. *See id.* at 1868-71.

As can be seen, the *Achates* court did not consider the relevant and binding Supreme Court authorities on point. For this reason, this Panel may reconsider the holding in *Achates* that §314(d) precludes review of the Board's determinations under §315(b). This Panel can, and should, consider the applicable and binding Supreme Court authority and make its own determination as to whether *Achates* was correctly decided.

> **3.    The *Achates* decision was wrongly decided. Section 314(d) does not bar all appellate review of the PTAB's determinations regarding the §315(b) time bar.**

The Federal Circuit first held that §314(d) precludes review of the PTAB's decision to institute an *inter partes* review following a final written decision on the merits in *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1273 (Fed. Cir. 2015). The *Achates* decision, which applied §314(d) to preclude review of the PTAB's §315(b) decisions, is a direct extension of *Cuozzo*. *See Achates*, 803 F.3d at 657.

The United States Supreme Court, however, recently granted a writ of certiorari in the *Cuozzo* case and will consider the application and scope of §314(d). *See Cuozzo Speed Techs. v. Lee*, 2016 U.S. LEXIS 632 (U.S. Jan. 15, 2016). In the pending *Cuozzo* appeal, the Supreme Court will consider the following issue: "whether the court of appeals erred in holding that, even if the Board exceeds its statutory authority in instituting an IPR proceeding, the Board's

13

decision whether to institute an IPR proceeding is judicially unreviewable." *See Cuozzo*, 2015 U.S. Briefs 446 (2015) (Petition for Writ of Certiorari). The Supreme Court's decision will, in all likelihood, bare directly on this appeal.

In its Opening Brief, Patent Owner provided a lengthy argument as to why *Achates* was wrongly decided. *See* Op. Br. at 17-28. Patent Owner's argument is premised upon the strong presumption of reviewability, an analysis of case law assessing similar limitations on reviewability in other statutory schemes, and an assessment of the text of §314(d) and its legislative history in the overall context of the America Invents Act. *See id.* These arguments go largely unchallenged in Broadcom's Response Brief. Instead, Broadcom's argument rests almost entirely on the notion that this Panel is bound by *Achates* and should defer to its resolution of the reviewability issue. *See* Resp. Br. at 35-42. Patent Owner therefore stands on its Opening Brief as its statement of the reasons *Achates* was wrongly decided.

Since Patent Owner filed its Opening Brief, the Federal Circuit has issued one additional decision holding (upon agreement of the Patent Owner) that §314(d) operates to bar review of the PTAB's §315(b) determination. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 2016 U.S. App. LEXIS 2250 at *31 (Fed. Cir. 2016). Patent Owner encourages the Panel to consider Part III of Judge Newman's dissent, which cites the same binding Supreme Court authority relied upon by

14

Patent Owner to support the notion that *Achates* was wrongly decided. *See id.* at

*71-76.

> **4.     At a minimum, this Panel should request en banc reconsideration of *Achates*, or wait for the Supreme Court's decision in *Cuozzo*.**

For the reasons stated above, this Panel is not bound to follow *Achates*, and

it can decide the reviewability issue differently if the Panel concludes that Supreme

Court precedent dictates a different result. *See Atlantic Thermoplastics*, 970 F.2d at

839 fn. 2.

In the alternative, if this Panel concludes that *Achates* was wrongly decided,

it has the authority itself to ask the other judges of the Federal Circuit for en banc

review of *Achates*. The relevant Federal Circuit rule states:

> **Arguing to a Panel to Overrule a Precedent.** Although only the court en banc may overrule a binding precedent, a party may argue, in its brief and oral argument, to overrule a binding precedent without petitioning for hearing en banc. The panel will decide whether to ask the regular active judges to consider hearing the case en banc.

Fed. Cir. R 35(a)(1).

Finally, this Panel should consider whether it should stay this appeal or

delay a ruling on the reviewability issue under §314(d) until the Supreme Court

renders its decision in the pending *Cuozzo* case.  For purposes of judicial economy,

and also to avoid a ruling that could potentially be inconsistent with the

forthcoming *Cuozzo* opinion from the Supreme Court, the Panel should consider this option. In the event the Court does delay a ruling on this appeal until after the *Cuozzo* opinion is rendered, Patent Owner respectfully requests an opportunity to file a short brief on the effect of that forthcoming opinion on this appeal after *Cuozzo* is decided by the Supreme Court.

**B.   The PTAB's decision on the §315(b) time bar issue should be vacated or reversed.**

As argued in Patent Owner's Opening Brief, the Federal Circuit should, at a minimum, retain jurisdiction to review the Board's decision below to ensure that it did not commit a critical legal error or a substantial departure from important procedural rights. *See* Op. Br. at 23-24 and 27-28 (discussing *Reilly v. Office of Personnel Mgmt.*, 571 F.3d 1372 (Fed. Cir. 2009)). Broadcom's response is limited to a single footnote in which it simply points out that *Reilly* was decided under the Civil Service Retirement Act. *See* Resp. Br. at 39 fn. 12. But Broadcom ignores Patent Owner's argument that the statutory language of the Civil Service Retirement Act, on its face, is a much more restrictive limit on appellate review – yet the Federal Circuit nonetheless found that it retained jurisdiction to review administrative decisions for critical legal errors or serious procedural violations. *See* Op. Br. at 23-24. Given the less restrictive statutory language of §314(d), the

Federal Circuit should retain *at least* as much authority to review administrative

action as was found in *Reilly. See id.*

> **1.    The Board committed a critical legal error by applying the wrong substantive legal standards.**

As shown in Patent Owner's Opening Brief, it is very clear that the Board

below applied a narrow and rigid legal standard focusing exclusively on whether

Broadcom had the right to control the District Court Litigation, and viewed it as

irrelevant whether the District Court Defendants have the ability to control

Broadcom's activities in the IPR below. As just one example, the Board stated in

its decision denying discovery to Patent Owner:

> To show privity requires a showing that Broadcom would be bound by the outcome of the Texas Litigation. To be bound, in normal situations, Broadcom *must have had control over the Texas Litigation.*

*See* A110; *see also* Op. Br. at 31-32 (collecting quotations from the Board below

showing that the Board applied the incorrect legal standard).

In its Response Brief, Broadcom attempts to shift the blame to Patent Owner

and asserts that the Board focused narrowly on Broadcom's control of the Texas

Litigation because Patent Owner made this the focus of its argument in its request

for additional discovery on the issue. *See* Resp. Br. at 42-43 (accusing Patent

Owner of a "shifting sands" approach to the privity issue). But Broadcom makes

its argument based on a few cherry-picked quotes from Patent Owner's motion for discovery. The entirety of the motion papers makes clear that Patent Owner simply sought to obtain the relevant facts (such as a copy of the highly relevant indemnity agreement) and urged the Board to apply the correct broad and flexible legal standard that is required by §315(b). *See* A62-65 (describing a "level of coordination" between Broadcom and its customers"); A66-67 (urging the Board to apply a broad and flexible standard to consider the totality of the circumstances); A68 (stating that the existence of an indemnity agreement, alone, may be sufficient for a finding of privity); A69 (arguing that the Board's review of the indemnity agreement will inherently be useful evidence).

Indeed, in Patent Owner's request for reconsideration of the discovery motion (filed less than two weeks after the Board's denial of the discovery request, and well before Patent Owner filed its Patent Owner Response), Patent Owner specifically argued that the Board had erred by applying a narrow legal standard that required Broadcom to have control over the District Court Litigation for a finding of privity. *See* A125-127; *see also* A172-178 (Patent Owner Response). It is simply incorrect for Broadcom to contend that Patent Owner "reversed its position" after the Board rendered its final written decision. *See* Resp. Br. at 43. Patent Owner has consistently urged the Board to apply the correct, broad and

flexible legal standard to determine whether one or more of the District Court Defendants is a real party in interest or privy of Broadcom for purposes of this IPR. Nothing in Patent Owners' papers justifies the Board applying the wrong legal test and insisting that Broadcom must have controlled the District Court Litigation as a prerequisite to a finding of privity. The Board's application of an erroneous legal standard amounts to a critical legal error. *See* Op. Br. at 28-32.

### 2. The Board committed serious procedural errors.

The Board's conduct also was a substantial departure from important procedural rights. *See* Op. Br. at 32-38. Specifically, the Board refused to consider the known indemnity agreement – perhaps the most relevant evidence on the §315(b) issue – and thus failed to honor its obligation to consider all relevant evidence on this issue. *See* Op. Br. at 33-34 (citing 5 U.S.C. §556(d)). The Board also denied Patent Owner an opportunity to present evidence contrary to the Board's findings. *See id.* at 34-35 (citing 5 U.S.C. §556(e)). The Board further failed to provide a reasoned explanation for its substantive decision on the §315(b) issue. *See id.* at 35-38 (collecting cases). Broadcom largely fails to rebut these points. Under the facts of this case, the Board's actions amount to serious procedural errors and are reversible.

19

**3.    Patent Owner is entitled to appellate relief on the §315(b) time bar issue.**

For the foregoing reasons, Patent Owner has demonstrated that it is entitled to appellate relief. Patent Owner urges this Court to find that it has authority to review the Board's determination of the §315(b) issue directly by appeal of the final written decision. In the alternative, Patent Owner has requested that this appeal be treated as a petition for writ of mandamus. *See* Op. Br. at 38-41. Broadcom provides scant argument in rebuttal to Patent Owner's request for mandamus relief in the alternative. *See* Resp. Br. at 48-49.

Patent Owner urges the Court to reverse the judgment of the Board below and render judgment in favor of Patent Owner, finding that the evidence on the present record is sufficient for a finding that one or more of the District Court Defendants is a real party in interest or privy of Broadcom for purposes of this appeal. *See* Op. Br. at 6-9, 37-38 (discussing the evidence). At a minimum, the Board's judgment below should be vacated and the case should be remanded with instructions for the Board to consider all the relevant evidence (including the indemnity agreement) and to apply the correct legal standard.

**C.    The Board erred in determining that the '625 patent claims are anticipated by Hettich.**

Just like the Board, Broadcom misapplies the '625 patent claims to Hettich. In particular, Broadcom identifies the Delay PDU in Hettich as the received "at

20

least one packet" referenced in the claim, and then concludes that Hettich anticipates the challenged claims because the Delay PDU references a sequence number of the largest block of discarded cells in the transmitter. This argument does not address the limitations of the challenged claims, which recite, in part, a "releasing" limitation (transmitter "commanding a receiver to . . . release any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet") and a "discarding" limitation ("the transmitter discarding all packets for which acknowledgement has not been received, and which have sequence numbers prior to the at least one packet."). A55 at Claim 1. Under this erroneous theory, both Broadcom and the Board ignore packets having sequence numbers greater than the sequence number referenced in the Delay PDU and less than the sequence number of the next received out-of-sequence packet (the recited "at least one packet") and therefore cannot show that Hettich meets the "releasing" and "discarding" limitations. Moreover, Broadcom admits that, in contrast to the challenged claims, Hettich does not "release" or "discard" packets as required by the explicit language of the claims. Accordingly, Hettich does not invalidate the challenged claims.  The Board's decision must be reversed.

### 1.    Hettich does not teach or disclose commanding a receiver to release expectations.

Broadcom errs by stating "Hettich discloses the 'commanding a receiver [to] release' limitation because the Delay PDU commands a receiver to release expectations of receiving any data packet with a sequence number less than or equal to the Delay PDU." Resp. Br. at 23. Implicit in this argument is the assumption that the Delay PDU is the "at least one packet." The flaw in that assumption is that the sequence number referenced in the Delay PDU packet is the sequence number of the contiguous block of packets that have been *discarded* by the transmitter, and therefore any packets having such sequence number could not be received (or even transmitted). Accordingly, the Delay PDU cannot be the received "at least one packet" recited in claim 1, because any such packets have already been discarded by the transmitter.

Broadcom's argument is also internally inconsistent. On the one hand, Broadcom argues that the Delay PDU is the command to receive the "at least one packet" and, on the other, contends that the Delay PDU is also the "at least one packet." Resp. Br. at 26 (by receiving the Delay PDU "[t]he receiver is therefore commanded to receive packets with sequence number greater than N (i.e., N+1, N+2, etc.)").

22

Putting aside Broadcom inconsistencies, Hettich does not anticipate the challenged claims. At bottom, Broadcom argues that the Delay PDU meets the releasing limitation because the "Delay PDU with sequence number N commands a receiver to release expectations of receiving any outstanding packets less than or equal to N, such as N-1, N-2, etc." Resp. Br. at 25. But releasing packets having a sequence number less than or equal to the sequence number referenced in the Delay PDU provides *no* information about releasing packets having a sequence number between N and the claimed "at least one packet" as required by the challenged claims. Because Hettich is silent about releasing of packets having a sequence number larger than N, it cannot anticipate the challenged claims.

Broadcom's example on pages 26–27 of its brief exposes the flaws in its analysis. After presenting an overly simplistic receiver having a trivial receive window—size of only 3—receiving time-sensitive packets, Broadcom postulates that receipt of the Delay PDU with a sequence number of 3 shifts the reception window of the receiver "forward to be able to receive packets 4, 5, and 6." Resp. Br. at 26. Broadcom's conclusion does not necessarily follow from its premise. First, regardless of the Delay PDU, the receiver's reception window may be capable of receiving packets 4, 5, and 6. Second, Broadcom concludes that Hettich anticipates the "release" limitation of the challenged claims because the receiver

23

releases "any expectation of receiving packets [1, 2, and 3] having sequence numbers prior to the at least one packet [4, 5, and 6]." Resp. Br. at 26–27. But that conclusion erroneously assumes that only packet 4 meets the received "at least one packet" recited in the claim. Otherwise, if packet 5 (or 6) is received, then contrary to the challenged claims, the receiver has not released expectations of receiving packet 4 (or 4 and 5), which has a sequence number less than the "at least one packet [5] or [6]." Moreover, a person of ordinary skill in the art would understand that Hettich actually teaches away from receiving packet 4 in Broadcom's simplified example above, because to do so would result in an inefficient receiver with greatly reduced throughput. A205–06 at 41–42; A2040–41 at ¶64. Accordingly, Broadcom's example shows that Hettich does *not* anticipate the challenged claims.

To support its erroneous conclusion, Broadcom creates a straw man by arguing that "claim 1 is directed solely to steps that are performed by a transmitter." Resp. Br. at 28. Claim 1 is a method claim reciting, in part, a transmitter commanding a receiver to release expectations of receiving packets having sequence numbers less than a received out of order packet. A55 at Claim 1. Thus, claim 1 is directed toward a transmitter / receiver system in which the receiver does not expect to receive packets that it would otherwise accept.

24

Tellingly, Broadcom thereafter admits that the receiver in Hettich is *not* commanded to release "any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet," as required in claim 1:

> Thus, the "outstanding packet[s]" that Wi-Fi One relies on for its argument are not packets that the receiver should "release any expectation of receiving" but are in fact packets that the receiver is commanded to receive.

Resp. Br. at 28 (emphasis removed). Broadcom's argument illustrates precisely why Hettich does not anticipate the challenged claims of the '625 patent. Unlike Hettich, the claims require certain outstanding packets to be released (and discarded). The challenged claims are directed toward releasing expectations of packets that the receiver would otherwise receive. Hettich cannot invalidate the challenged claims because even Broadcom admits that Hettich explicitly teaches not releasing expectations of packets having sequence numbers less than the sequence number of the received "at least one packet."

Returning to Broadcom's example, if the next received out-of-order packet has a sequence number of 5 or 6, then the receiver is still expecting to receive a packet having a sequence number of 4, which unlike the challenged claims, is "prior to the at least one packet," and has not been released. Broadcom alternatively argues that a receiver would send a Delay N PDU and then send packet N+1. But such a situation is an impossibility—one of ordinary skill in the

art would not read Hettich as teaching or suggesting receiving (or alternatively, transmitting) a packet having sequence number of 4 after receipt (or alternatively, transmitting) of a Delay PDU because such a system would be too inefficient, and not feasible to function as a receiver. A205–06 at 41–42; A2040–41 at ¶ 64. Thus, Hettich does not teach or disclose the releasing limitation because it expects to receive, rather than release, packets having sequence numbers less than the recited "at least one packet."

Broadcom next uses unsupported expert testimony to resuscitate its flawed position. In particular, Broadcom argues that "[t]herefore, it would make sense for the transmitter to send the [Delay PDU with sequence number N] and then send packet N+1." Resp. Br. at 29. But a POSITA would know that such a transmitter would not be viable or function for its intended purposes because doing so would create a very inefficient receiver. A205–6 at 41–42; A2040–41 at ¶64. Additionally, Broadcom implies that a packet that "may exist" is a packet that will be received by the receiver. Resp. Br. at 29. But the existence of packets having sequence numbers between the sequence number referenced in the Delay PDU and the next received packet confirms that Hettich is silent about releasing such outstanding packets, and therefore, Hettich does not teach or suggest the "releasing" limitation.

26

Broadcom's dismissal of the Board's inconsistent ruling again shows that Hettich does not anticipate the challenged claims. First, Broadcom admits the "Hettich transmitter commands the receiver to accept a gap in the data packet sequence," (Opp. at 30) and in doing so, confirms that Hettich does not meet the "releasing limitation" because the "gap in the data packet sequence" represents a packet that has not been released and has a sequence number less than the received "at least one packet" as required by the challenged claims. Moreover, because the Delay PDU includes a sequence number of a deleted packet, it cannot meet the received "at least one packet" as required by the claims. But in any event, the existence of any gap conclusively shows that unreleased packets having sequence numbers between N and the claimed "at least one packet," and therefore Hettich cannot meet the "releasing" limitation.

### 2. Hettich does not teach or disclose a transmitter discarding unacknowledged packets with sequence numbers less than the "at least one packet."

Hettich does not teach or disclose the discarding step for the same reason as it does not teach or disclose the "releasing" limitation." First, by concluding that the "transmitter discards all unacknowledged packets with sequence numbers less than or equal to the Delay PDU" (Resp. Br. at 31), Broadcom is equating the Delay PDU with the received "at least one packet." But as Wi-Fi One pointed out, the

sequence number of the Delay PDU packet corresponds to a deleted packet, which means that the Delay PDU cannot be the received "at least one packet" recited in the challenged claims. Moreover, Broadcom erroneously states that "[b]ecause the Delay PDU sequence number N represents the latest-in-sequence discarded packet, the transmitter necessarily discarded all unacknowledged packets less than or equal to N." Resp. Br. at 32. But Broadcom's argument ignores packets having sequence numbers between N and the sequence number of the claimed "at least one packet," which according to the challenged claims *must also be discarded*. Because Hettich does not address such packets, Hettich cannot anticipate the challenged claims.

Second, Broadcom argues that "the allegedly 'non-discarded' packets that Wi-Fi One relies on for its argument are not packets that the transmitter is meant to *discard* (i.e., unacknowledged packets with 'sequence numbers prior to the at least one packet') but packets that the receiver is commanded to *receive* (i.e., 'at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet.')." Resp. Br. at 33 (emphasis in original). This admission is fatal. The "discarding" limitation of the challenged claims requires discarding of unacknowledged packets that it would otherwise receive. Because Broadcom admits that Hettich teaches receiving, rather than discarding, such packets, Hettich cannot anticipate the challenged claims.

28

Next, Broadcom alleges that Wi-Fi One admits that "the Hettich transmitter *sometimes* performs the 'discarding' step." Resp. Br. at 34 (emphasis in original). To the contrary, Wi-Fi One argued just the opposite. Wi-Fi One correctly recognized that the "the transmitter in Hettich may contain one or more non-discarded cells for which acknowledgement has not been received and which have sequence numbers prior to the first cell that the receiver received after reception of the Delay PDU." Op. Br. at 49. Accordingly, because Hettich is silent as to such packets, Hettich does not teach or suggest the "discarding" limitation.

Broadcom further erroneously argues that Hettich's transmitter "commands the receiver to receive data packets with a sequence number greater than the sequence number of the sequence number conveyed by the Delay PDU and discards all data packets with a sequence number less than or equal to that sequence number." Resp. Br. at 34–35. But just as with the "releasing" limitation, the Hettich transmitter teaches a gap of packets that the receiver expects to receive (Resp. Br. at 30–31), and have sequence numbers between the sequence number referenced in the Delay PDU packet and the sequence number of the next received packet. Such a packet is an unacknowledged packet as recited in the challenged claims. Because those unacknowledged packets are not discarded, Hettich cannot anticipate the challenged claims.

29

Finally, Broadcom provides no additional rebuttal argument regarding the Board's inconsistent use of the Delay PDU. Relying on the Delay PDU as both the packet that is not received, and thereafter as a received packet, is internally inconsistent and legally erroneous. As discussed above, Hettich does not meet the "releasing" and the "discarding" limitations. Consequently, the Board's decision that Hettich anticipates the challenged claims is not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Board's Final Written Decision should be either reversed or vacated.

Dated:  February 29, 2016                    Respectfully submitted,


                                             */s/ Donald Puckett*
                                             G. Donald Puckett
                                             NELSON BUMGARDNER PC
                                             3131 West 7th Street, Suite 300
                                             Fort Worth, Texas 76107
                                             (817) 377-9111 (telephone)
                                             (817) 377-3485 (facsimile)
                                             puckett@nelbum.com

                                             Douglas A. Cawley
                                             MCKOOL SMITH, P.C.
                                             300 Crescent Court, Suite 1500
                                             Dallas, TX 75201
                                             (214) 978-4972 (telephone)
                                             (214) 978-4044 (facsimile)
                                             dcawley@mckoolsmith.com

                                             Peter J. Ayers
                                             LEE & HAYES PLLC
                                             11501 Alterra Parkway, Suite 450
                                             Austin, TX 78758
                                             (512) 605-0252 (telephone)
                                             (512) 605-0269 (facsimile)
                                             peter@leehayes.com

                                             Attorneys for Appellant,
                                             Wi-Fi One, LLC

# United States Court of Appeals
# for the Federal Circuit

*WiFi One, LLC v. Broadcom Corporation*, No. 2015-1946

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON BUMGARDNER PC, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **February 29, 2016** counsel has authorized me to electronically file the foregoing **Reply Brief for Appellant, WiFi-One, LLC**, with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

DOMINIC E. MASSA, ESQ.
KEVIN GOLDMAN, ESQ.
ZACHARY PICCOLOMINI, ESQ.
KATIE SAXTON, ESQ.
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
617-526-6000
dominic.massa@wilmerhale.com
kevin.goldman@wilmerhale.com
zachary.piccolomini@wilmerhale.com
kate.saxton@wilmerhale.com
*Attorneys for Appellee*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

February 29, 2016                          /s/ Robyn Cocho
                                           Counsel Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that I am an attorney of record on behalf of Appellants Wi-Fi One, LLC and that I personally used the "word count" feature of Microsoft Word 2010 to count the words in the foregoing Brief of Appellant Wi-Fi One, LLC identified in the Rule 32(a)(7)(B)(iii) and determined that the foregoing brief contains 6,783 words and is therefore in compliance with Rule 32(a)(7)(B)(i).

In addition, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

By:

*/s/ Donald Puckett*
G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485  (facsimile)
puckett@nelbum.com