**Nos. 2015-1944, -1945, -1946**

IN THE

# UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee,*

MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,

*Intervenor.*

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2013-00601, IPR2013-00602, IPR2013-00636*

## APPELLANT WI-FI ONE, LLC'S SUPPLEMENTAL *EN BANC* BRIEF

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Ste. 300
Fort Worth, Texas 79107
(817) 377-9111

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Ste. 1500
Dallas, Texas 75201
(214) 978-4972

Peter J. Ayers
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, Texas 78703
(512) 771-3070

*Attorneys for Appellant Wi-Fi One, LLC*

# CERTIFICATE OF INTEREST

Counsel for the Appellant, Wi-Fi One, LLC, certifies the following:

The full name of every party or amicus represented by me is:

**Wi-Fi One, LLC**

The name of the real party-in-interest (if the party named in the caption is not the real party-in-interest) represented by me is:

**Wi-Fi One, LLC**

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**Wi-Fi One, LLC is 100% owned by Optis Wi-Fi Holdings, LLC.**

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**LAW OFFICE OF PETER J. AYERS, PLLC**
Peter Ayers

**LEE & HAYES, PLLC**
J. Christopher Lynch
John Shumaker

**NELSON BUMGARDNER, P.C.**
Donald Puckett

**MCKOOL SMITH, P.C.**
Douglas A. Cawley

**SKIERMONT DERBY LLP**
**(formerly SKIERMONT PUCKETT LLP)**
Steven Joseph Udick
Sarah E. Spires

Dated: February 13, 2017

Respectfully submitted,

/s/ *Donald Puckett*

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485 (facsimile)
puckett@nelbum.com

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4972 (telephone)
(214) 978-4044 (facsimile)
dcawley@mckoolsmith.com

Peter J. Ayers
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, Texas 78703
(512) 771-3070 (telephone)

*Attorneys for Appellant,*
*Wi-Fi One, LLC*

## TABLE OF CONTENTS

***Page***


CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... vi

STATEMENT OF RELATED CASES .......... xv

QUESTION PRESENTED BY THE *EN BANC* ORDER .......... 1

ARGUMENT .......... 2

I. PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT .......... 2

A. Procedural Background—District Court Litigation and IPR Proceedings .......... 8

B. Summary of Evidence Showing Broadcom's Relationship with the Time-Barred District Court Defendants. .......... 9

C. Wi-Fi One's Exhaustive Efforts to Introduce Additional Evidence on the "Real Party in Interest or Privy" Issue—Including a Known Indemnity Agreement. .......... 11

D. The PTAB Decision Below, the Points of Error Raised By Wi-Fi One, and the Panel Decision in this Case. .......... 12

III. LEGAL STANDARDS - EVALUATING STATUTES THAT LIMIT OR MODIFY JUDICIAL REVIEW OF ADMINISTRATIVE ACTION .......... 13

B. Under the APA, an Agency Bears a Heavy Burden to Overcome the Presumption of Judicial Review, and Must Show "Clear and Convincing Indications" that Congress Intended to Limit or Modify Judicial Review. .......... 15

C. The Strong Presumption of Review Requires Statutes be Read Narrowly to Limit Judicial Review for Only the Specific Issues Intended by Congress. .......... 18

IV. RELEVANT STATUTES AND LEGISLATIVE HISTORY..................... 21

A. Congressional Authority to Grant Patents, and Delegation of that Authority to the United States Patent and Trademark Office. ............... 21

B. Congress Created the Federal Circuit Court of Appeals to Provide Consistency in the Application of Patent Laws. .................................... 22

C. The America Invents Act of 2011......................................................... 23

1. Overview of the America Invents Act and Post-Grant Review. ....... 23

2. 35 U.S.C. §315(b)—Statutory Time-Bar for IPR. ............................ 26

3. 35 U.S.C. §314(d)—Limitation on Appeal from Director's Institution Decision. ........................................................................ 30

D. The USPTO's IPR Regulations and Implementation of the AIA. ........ 30

V. *ACHATES* WAS INCORRECTLY DECIDED AND SHOULD BE OVERRULED. ......................................................................................... 34

A. The Reasoning of *Achates* is Erroneous. .............................................. 34

1. *Achates* Overlooked the Strong Presumption of Judicial Review and Did Not Apply the Correct Legal Standards for Evaluating §314(d) ........................................................................................... 35

2. *Cuozzo* Shows that *Achates* Adopted and Applied an Erroneous and Overbroad Interpretation of §314(d) .......................................... 40

B. The USPTO Cannot Meet Its Burden to Show Clear and Convincing Indications of Congressional Intent to Preclude Appellate Review of the Specific Points of Error Raised by Wi-Fi One in this Appeal. ......................................................................... 44

1. The USPTO Cannot Show Clear and Convincing Indications that Congress Intended to Preclude all Review of Every Issue Related to the PTAB's §315(b) Determination................................. 44

2. The USPTO Cannot Show Clear and Convincing Indications that Congress Intended to Preclude Appellate Review of Wi-Fi

One's Specific Points of Error Alleging Due Process and APA Violations. ..... 51

3. The USPTO Cannot Show Clear and Convincing Indications that Congress Intended to Preclude Appellate Review of Wi-Fi One's Points of Error Challenging the PTAB's Ultimate §315(b) Determination. ..... 54

IV. ADDITIONAL CONSIDERATIONS ..... 55

A. *Achates* Should be Overruled so that Important Legal Issues May Be Reviewed and Resolved by this Court. ..... 55

B. The Court should not be Concerned with Opening a Floodgate of Appeals if It Overrules *Achates* ..... 57

CONCLUSION ..... 58

CERTIFICATE OF SERVICE ..... 60

CERTIFICATE OF COMPLIANCE ..... 61

# TABLE OF AUTHORITIES

***Page(s)***

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .......... 14, 17

*Achates Reference Publishing, Inc. v. Apple, Inc.*,
803 F.3d 652 (Fed. Cir. 2015) .......... *passim*

*Apple, Inc. v. VirnetX, Inc.*,
Case IPR2016-00063, Paper 13 (PTAB Jan. 25, 2016) .......... 55

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) .......... 21

*Atl. Gas Light Co. v. Bennett Regulator Guards, Inc.*,
Case IPR2013-00453, Paper 88 (PTAB Jan. 6, 2015) .......... 33, 47

*Austin Road Co. v. Occupational Safety and Health Review Comm'n*,
683 F.2d 905 (5th Cir. 1982) .......... 47

*Barlow v. Collins*,
397 U.S. 159 (1970) .......... 16, 48

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 16

*Bowen v. Michigan Acad. of Family Physicians*,
476 U.S. 667 (1986) .......... *passim*

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) .......... 15

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971) .......... 16

*City of Arlington v. FCC*,
133 Sup. Ct. 1863 (2013) .......................................................................... 3, 19, 37

*Click-to-Call, LP v. Oracle Corp.*,
136 Sup. Ct. 2508 (2016) ..............................................................................35

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
2015 U.S. Dist. LEXIS 154693 (E.D. Va. Nov. 16, 2015) ..................................27

*Covidien LP v. Univ. of Florida Research Found. Inc.*,
Case IPR2016-001274, Paper 21 (PTAB Jan. 25, 2017) .................. 26, 27, 47, 54

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) ..................................................................................... 19, 52

*Dickinson v. Zurko*,
527 U.S. 150 (1999) ..................................................................................... 48, 54

*Dismuke v. United States*,
297 U.S. 167 (1936) ............................................................................................19

*D-Link Sys., Inc. v. Chrimar Sys., Inc.*,
Case IPR2016-01426, Paper 15 (PTAB Jan. 17, 2017) .................................. 9, 49

*ePlus, Inc. v. Lawson Software, Inc.*,
789 F.3d 1349 (Fed. Cir. 2015) ...........................................................................28

*Ericsson, et al. v. D-Link Systems, Inc.*,
No. 10-cv-0473 (E.D. Tex.)........................................................................... xiv

*Ericsson, Inc. v. D-Link Systems, Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ............................................................ xiv, 8, 9

*Ethicon Endo-Surgery, Inc. v. Covidien LP*,
812 F.3d 1023 (Fed. Cir. 2016) ...........................................................................32

*Fisher v. U.S.*,
402 F.3d 1167 (Fed. Cir. 2005) ............................................................. 3, 21, 53

*Flo Healthcare Solutions, LLC v. Kappos*,
697 F.3d 1367 (Fed. Cir. 2012) ........................................................................23

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013) ........................................................................28

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*,
Case IPR2012-00001, Paper 26 (PTAB Mar. 5, 2013)................................ *passim*

*General Elec. Co. v. Transdata, Inc.*,
Case IPR2014-01380, Paper 15 (Nov. 12, 2014)..................................................49

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ..............................................................................................23

*Harmonic v. Avid Tech.*,
815 F.3d 1356 (Fed. Cir. 2016) ........................................................................40

*Heckler v. Chaney*,
470 U.S. 821 (1985) ..........................................................................................14

*Husky Injection Molding v. Athena Automation*,
838 F.3d 1236 (Fed. Cir. 2016) ........................................................................40

*Hyatt v. Kappos*,
625 F.3d 1320 (Fed. Cir. 2010) ........................................................................21

*In re Lepage's Inc.*,
50 C.C.P.A. 852 (C.C.P.A. 1963) ......................................................................21

*In re Recreative Techs. Corp.*,
83 F.3d 1394 (Fed. Cir. 1996) ..........................................................................22

*In re Telefonaktiebolaget LM Ericsson*,
564 Fed. App. 585 (Fed Cir. 2014) ............................................................ xv, 12

*In re Van Geuns*,
946 F.2d 845 (Fed. Cir. 1991) ..........................................................................22

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
946 F.2d 821 (Fed. Cir. 1991) ....................51

*Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*,
2016 U.S. Dist. LEXIS 56885 (D. Mass. Apr. 28, 2016)....................27

*Johnson Health Tech Co. v. Icon Health & Fitness, Inc.*,
Case IPR2014-01242, Paper 16 (Feb. 11, 2015)....................26

*Johnson v. Admin. of Veterans' Affairs*,
415 U.S. 361 (1974) .................... 18, 21

*Johnson v. Robison*,
415 U.S. 361 (1974) ....................3

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ....................19

*Lindahl v. Office of Pers. Mgmt.*,
470 U.S. 768 (1985) .................... 4, 15, 17, 18, 19, 35, 38, 43, 44, 53

*Lindahl v. Office of Pers. Mgmt.*,
718 F.2d 391 (Fed. Cir. 1983) .................... 18, 43

*Mach Mining, LLC v. EEOC*,
135 Sup. Ct. 1645 (2015) ....................17

*Madstad Eng'g, Inc. v. United States PTO*,
756 F.3d 1366 (Fed. Cir. 2014) ....................23

*Marbury v. Madison*,
5 U.S. 137 (1803) .................... 13, 14

*Medtronic, Inc. v. Robert Bosch Healthcare Sys, Inc.*,
Case IPR2014-00488, Paper 52 (PTAB Mar. 16, 2015).................... 33, 47

*Pfizer, Inc. v. Apotex, Inc.*,
488 F.3d 1377 (Fed. Cir. 2007) ....................23

*Power Integrations, Inc. v. Kappos*,
6 F. Supp. 3d 11 (D.D.C. 2013)....................................................................22

*Reilly v. Office of Pers. Mgmt.*,
571 F.3d 1372 (Fed. Cir. 2009) ......................................................................3

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ............................................................... 32, 46, 48, 49

*Traynor v. Turnage*,
485 U.S. 535 (1988) ........................................................................................21

*U.S. v. Nourse*,
34 U.S. 8 (1835) ........................................................................................ 13, 14

*Unified Patents Inc. v. Dragon Intellectual Property, LLC*,
Case IPR2014-01252, Paper 37 (PTAB Feb. 12, 2015).......................................56

*Unified Patents Inc. v. Personalized Media Comm'ns, LLC*,
Case IPR2015-00521, Paper 9 (PTAB Feb. 26, 2015).........................................56

*United States v. Am. Bell Tel. Co.*,
128 U.S. 315 (1888) ........................................................................................21

*United States v. Erika*,
456 U.S. 201 (1982) ................................................................................ 20, 21

*Unwired Planet, LLC v. Google*,
Case No. 2015-1812, Docket No. 62 (Fed. Cir. Jan. 23, 2017) ...........................37

*Versata Dev. Grp., Inc. v. SAP America, Inc.*,
793 F.3d 1306 (Fed. Cir. 2015) ............................................. 5, 36, 37, 38, 41, 46

*Versata Software, Inc. v. SAP Am., Inc.*,
2014 U.S. Dist. LEXIS 54640 (E.D. Tex. Apr. 20, 2014) ...................................28

*Webster v. Doe*,
486 U.S. 592 (1988) ........................................................................................19

*WesternGeco LLC v. ION Geophysical Corp.*,
2016 U.S. Dist. LEXIS 64056 (S.D. Tex. May 4, 2016) ....................................28

*Wi-Fi One, LLC v. Broadcom Corp.*,
837 F.3d 1329 (Fed. Cir. 2016) ........................................................................13

*Zoll Lifecor Corp. v. Philips Elecs. N. Am. Corp.*,
Case IPR2013-00606, Paper 13 (PTAB Mar. 20, 2014).....................................31

**Statutes**

5 U.S.C. §556(d) ..........................................................................................52

5 U.S.C. §556(e) ..........................................................................................52

5 U.S.C. §701(a) ..........................................................................................16

5 U.S.C. §702 ...............................................................................................14

5 U.S.C. §704 ......................................................................................... 14, 54

5 U.S.C. §706 ...............................................................................................54

5 U.S.C. §8347(c) ........................................................................................43

35 U.S.C. §6 .................................................................................................25

35 U.S.C. §112 .............................................................................................39

35 U.S.C. §141 .............................................................................................25

35 U.S.C. §311, *et. seq.* .................................................................................24

35 U.S.C. §311 .............................................................................................24

35 U.S.C. §312 ............................................................................ 4, 24, 39, 41

35 U.S.C. §312(a)(3).....................................................................................25

35 U.S.C. §313 .............................................................................................32

35 U.S.C. §314(a) ........................................................................... *passim*

35 U.S.C. §314(d) ........................................................................... *passim*

35 U.S.C. §315(b) ........................................................................... *passim*

35 U.S.C. §316(a) ..............................................................................30

35 U.S.C. §316(a)(8)...........................................................................25

35 U.S.C. §316(c) ..............................................................................25

35 U.S.C. §316(e) ..............................................................................24

35 U.S.C. §319............................................................................ 25, 39, 49

35 U.S.C. §324(e) ................................................................................6

**Regulations**

37 C.F.R. §42.2 ..................................................................................24

37 C.F.R. §42.3 ............................................................................. 31, 46

37 C.F.R. §42.4(a)...............................................................................32

37 C.F.R. §42.8(b)(1)...........................................................................32

37 C.F.R. §§42.20-42.25.......................................................................25

37 C.F.R. §§42.51-42.65.......................................................................25

37 C.F.R. §42.51(b)(iii) .........................................................................11

37 C.F.R. §42.51(b)(2)..........................................................................33

37 C.F.R. §42.73(a)...............................................................................25

37 C.F.R. §42.100(a) .......... 24

37 C.F.R. §42.104 .......... 24

37 C.F.R. §42.107(a) .......... 33

37 C.F.R. §42.108 .......... 32

37 C.F.R. §42.122(b) .......... 55

**Other Authorities**

157 Cong. Rec. S1376 (Mar. 8, 2011) .......... 25

77 Fed. Reg. at 6868 (Feb. 9, 2012) .......... 31

77 Fed. Reg. at 7041 (proposed Feb. 10, 2012) .......... 31

77 Fed. Reg. at 48680 (Aug. 14, 2012) .......... 31, 33, 47

77 Fed. Reg. at 48695 (Aug. 14, 2012) .......... 31, 33, 47

77 Fed. Reg. at 48756 (Aug. 14, 2012) .......... 26, 27, 30, 31

77 Fed. Reg. at 48759 (Aug. 14, 2012) .......... 32, 46

77 Fed. Reg. at 48760 (Aug. 14, 2012) .......... 32

Cotropia, Christopher A., *"Arising Under" Jurisdiction and Uniformity in Patent Law*, 9 Mich. Telecomm. & Tech. L. Rev. 253 (2003) .......... 22

Dolin, Gregory and Irina D. Manta, *Taking Patents*, 73 Wash. & Lee L. Rev. 719 (2016) .......... 22

H.R. Rep. No. 112-98 (2011) .......... 23, 24, 26, 28

H.R. Rep. No. 1980 (1946) .......... 17

IPR Appeals: Pendency And Success Rates At Fed. Circ. (Feb. 8, 2017), https://www.law360.com/ip/articles/884916........................................................57

Letter from Gary Locke, Dir. U.S. Dep't of Commerce to S. Comm. on the Judiciary (Oct. 5, 2009)..............................................................................28

Lee, Michelle K., *PTAB's Quick-Fixes for AIA Rules Are to Be Implemented Immediately*, Director's Forum: A Blog from USPTO's Leadership (Mar. 27, 2015), https://www.uspto.gov/blog/director/entry/ptab_s_quick_fixes_for. ........... 34, 35

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5(a) and (b), Appellant states:

1. The following petition for writ of mandamus was previously before this Court, arising from the same *inter partes* review proceeding that is now at issue in this appeal:

- *In re Telefonaktiebolaget LM Ericsson*, Nos. 2014-127, -128, and -129 (decided on May 5, 2014). The panel was composed of Judges Lourie, Dyk, and Reyna (with Judge Lourie authoring the opinion). This opinion was designated non-precedential and is reported as 564 Fed. Appx. 585 (Fed. Cir. 2014).

2. The following pending cases are the companion appeals that have been consolidated for purposes of this *en banc* rehearing:

- *Wi-Fi One, LLC v. Broadcom Corporation*, Fed. Cir. No. 2015-1944.
- *Wi-Fi One, LLC v. Broadcom Corporation*, Fed. Cir. No. 2015-1945.
- *Wi-Fi One, LLC v. Broadcom Corporation*, Fed. Cir. No. 2015-1946.

3. The following district court case may be directly affected by the outcome of this appeal:

- *Ericsson, Inc., Telefonaktiebolaget LM Ericsson, and Wi-Fi One, LLC v. D-Link Systems, Inc., Netgear, Inc., Acer, Inc., Acer America Corporation, Gateway, Inc., Dell, Inc., Toshiba America Information*

*Systems, Inc.*, *Toshiba Corporation, Intel Corporation, and Belkin International, Inc.*, No. 10-cv-0473, in the United States District Court for the Eastern District of Texas.

- An appeal was previously taken and decided from that case. The appeal was styled *Ericsson, Inc. v. D-Link Systems, Inc.*, Fed. Cir. Nos. 2013-1625, -1631, -1632, -1633; 773 F.3d 1201 (Fed. Cir. 2014). This appeal was decided on December 4, 2014. The panel was composed of Judges O'Malley, Taranto, and Hughes (Judge O'Malley filed the Opinion and Judge Taranto filed an Opinion dissenting in part).

## QUESTION PRESENTED BY THE *EN BANC* ORDER

In the *en banc* order, the Court requested that the parties brief the following question:

> Should the Court overrule *Achates Reference Publishing, Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) and hold that judicial review is available for a patent owner to challenge the PTO's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. §315(b) governing the filing of petitions for *inter partes* review?

*See* Dkt. No. 67.

# ARGUMENT

## I. PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

The Supreme Court's decision in *Cuozzo v. Lee* demonstrates that the reasoning of *Achates Reference Publishing, Inc. v. Apple, Inc.*, 803 F.3d 652 (Fed. Cir. 2015) is unsound. The specific holding of *Achates*—that 35 U.S.C. §314(d) precludes this Court from reviewing *any aspect* of the USPTO's determination that an IPR petitioner has met the timeliness requirement of 35 U.S.C. §315(b)—must be revisited and overruled.

*Cuozzo* exposed at least two fundamental flaws in the reasoning of *Achates*. First, *Achates* did not use the *strong presumption of judicial review* of administrative action as the starting point of its analysis, and failed to attach any weight at all to the presumption. Second, the analytical framework used by *Achates*—which focused exclusively on whether §315(b) is a "jurisdictional" statute an erroneous analytical framework in this context. Accordingly, the §314(d) holding from *Achates* simply cannot stand on its own reasoning.

Applying the strong presumption of judicial review, the Supreme Court consistently gives a narrow construction to any statute (such as §314(d)) that facially purports to limit judicial review of agency action. Courts must narrowly read such statutes to preclude judicial review only if there are clear and convincing indications of Congressional intent to do so with respect to the *specific issue* being raised on

appeal. Courts also must read such statutes to allow judicial review of constitutional issues, including allegations that the agency has violated constitutional due process rights.[1] Absent a clear expression of Congressional intent, courts must read such statutes to permit judicial review of the *process* by which the agency made the decision (even if the decision itself is unreviewable),[2] and to permit challenges asserting the agency exceeded the scope of its statutory jurisdiction, acted contrary to a statutory command, or otherwise acted contrary to law.[3]

*Cuozzo* involved appellate points at the core of what is precluded from appellate review by §314(d)—a "mine-run" challenge to the Director's decision at the institution stage under §314(a) that "the information presented in the petition . . . shows that there is a reasonable likelihood the petitioner would prevail," and a "closely related" challenge to the "particularity" of the petition under the

---

[1] *See, e.g.*, *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986); *Johnson v. Robison*, 415 U.S. 361, 367 (1974). *See also* Section III(C), *infra*.

[2] *See, e.g.*, *Bowen*, 667 U.S. at 675 (distinguishing a "determination" from the "method" by which a determination is made). *See also Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005) (*en banc*) (even where executive commander-in-chief powers are at issue, judicial "deference to Executive authority does not extend to ignoring basic due process . . . . When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene though only to ensure that the decision is made in the proper manner"). *See also* Section III(C), *infra*.

[3] *See, e.g.*, *Reilly v. Office of Pers. Mgmt.*, 571 F.3d 1372, 1378 (Fed. Cir. 2009) (collecting cases permitting judicial review for claims of "serious legal error"). *See also City of Arlington v. FCC*, 133 Sup. Ct. 1863, 1868 (2013); Section III(C), *infra*.

requirements of §312. *Cuozzo*, however, emphasized that its holding is narrow, and left it open for future cases to determine the scope and application of §314(d) to other appellate points.

*Cuozzo* and the Supreme Court's rich jurisprudence interpreting similar statutes in light of the presumption of review demonstrate that *Achates* read §314(d) too broadly, without appropriately considering the statutory structure, the legislative history, and potential narrow constructions of the statute that are more consistent with the strong presumption of judicial review and the intent of Congress. Indeed, the errors in *Achates* are strikingly similar to the errors this Court made when considering a similar statute in *Lindahl*—an overreliance on the "plain meaning" of the statutory text that required the Supreme Court to reverse this Court's *en banc* decision. *See Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779-80 (1985).

Stated in terms that may resonate with patent lawyers—this Court's cases construing §314(d) have largely adopted the "broadest reasonable interpretation" of the statutory language to preclude review of most every issue touching the Director's institution decision, even on appeal of a PTAB final decision. This is erroneous because the strong presumption of judicial review instead requires courts to adopt the *narrowest* reasonable interpretation of such statutes (consistent with the statutory text, structure of the statutory scheme, and legislative history), so that the statute is read to preclude judicial review of agency action only where there are *clear and*

*convincing indications* Congress intended to do so, and only with respect to the *specific issues* for which Congress intended to limit review.

The USPTO cannot meet its heavy burden in this appeal to show Congress created the PTAB with the intention of immunizing it from *all judicial oversight* for its compliance with the statutory command of §315(b)—particularly because the time bar was an important part of the legislative compromises underlying the AIA. IPR trials adjudicate important patent property rights that are, collectively speaking, vital to the national economy. This Court's own enabling legislation (and its corresponding legislative history) show that Congress attaches special importance to uniformity in patent law and consistency in the treatment of patent rights—and created the Federal Circuit to promote those goals by providing judicial review for both USPTO and district court decisions affecting patent rights.

Given the high stakes involved in PTAB patent trials, the USPTO must temper its views[4] regarding the range of PTAB actions (procedural and substantive) that the USPTO seeks to shield from *all* judicial review—even judicial review for constitutional issues, serious due process violations, clear errors of law, abuse of

---

[4] *See Versata Dev. Grp., Inc. v. SAP America, Inc.*, 793 F.3d 1306, 1315 (Fed. Cir. 2015) (noting the USPTO had intervened to argue that its institution decision was *immunized from all review* and that its §101 determination in the final written decision must be upheld *even if the PTAB is not authorized by statute to invalidate on §101 grounds*).

discretion, arbitrary or capricious actions, and substantial evidence to support factual findings. The USPTO begins on infirm ground whenever it seeks to extend the scope of §314(d) to an issue bound up with the PTAB's final decision. The plain text of §314(d) applies only to the Director's institution decision (made during the first phase of the bifurcated IPR process), and its plain text is not applicable to the PTAB's final decision at all.[5]

The USPTO cannot meet its burden to show that Congress, when it passed the America Invents Act ("AIA") retreated from the strong public policy favoring consistency in the determination of patent rights that previously motivated Congress to create this Court. Quite the opposite—one driving purpose behind the AIA's wholesale revision of post-grant patent procedures was the desire to accelerate the process of getting patent validity disputes to this Court by making IPRs more efficient than district court litigation. Toward that end, Congress eliminated intra-agency appeals for IPR—because it had confidence this Court would provide sufficient oversight to the PTAB.

In this appeal, Wi-Fi One raised points of error related to §315(b) that are not precluded from appellate review. Wi-Fi One challenged both the PTAB's

---

[5] *See id*. at 1319 (holding that the plain text of analogous §324(e) applies only to the Director's institution decision, not the PTAB's final written decision, and the two distinct agency actions "do not become the same just because the agency decides certain issues at both stages of the process").

substantive §315(b) timeliness determination (as both legally erroneous and not supported by substantial evidence) and the PTAB's *process* used to make that determination as inconsistent with constitutional due process and the requirements of the Administrative Procedure Act.

These points of error raise serious and troubling issues as to the PTAB's handling of the §315(b) issue in this case. There is a known indemnity agreement—almost certainly the most relevant evidence on the §315(b) issue here—that the PTAB simply refused to consider, or even allow to be admitted in evidence. The PTAB applied an erroneous legal standard on the real party-in-interest or privy issue that is inconsistent with its own published standard. The PTAB below even failed to provide a reasoned written decision on the ultimate §315(b) issue – deferring instead to its denial of Wi-Fi One's discovery motion as a proxy for an actual §315(b) determination.

Properly read in light of the presumption of review and the relevant Supreme Court cases, §314(d) does not preclude judicial review of these errors. *Achates* must be overruled to permit this Court to consider Wi-Fi One's specific appellate points.

## II. STATEMENT OF FACTS

Wi-Fi One provided a complete statement of facts in its opening appeal brief. *See* Wi-Fi Op.Br. at 5-19. Wi-Fi One restates here only the facts relevant to the *en banc* question.

### A. Procedural Background—District Court Litigation and IPR Proceedings.

The procedural history of this case illustrates the importance of the timeliness requirement of §315(b), and the unreasonable delays that can occur if its requirements are not enforced. These patents were before the Court in 2014,[6] on appeal of a district court judgment following jury trial. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014). Broadcom was not a party to that lawsuit, and itself has never been sued for infringement of the patents. Just weeks after the notice of appeal was filed in the case, Broadcom filed the IPR petitions below, challenging each of the patents involved in the D-Link litigation.

No one disputes that, when Broadcom filed the IPR petitions, D-Link and seven other infringement defendants (the "District Court Defendants") were time-barred, under §315(b), from filing IPR petitions of their own (because each had been sued for infringement more than one year prior). (A77.)

The PTAB granted each petition and instituted three IPR trials, and each trial was conducted while the district court appeal was pending here. This Court entered its opinion on December 4, 2014, and affirmed the jury's finding of infringement

[6] During the pendency of the IPRs below, patent owner Telefonaktiebolaget LM Ericsson transferred ownership of the patents to new patent owner Wi-Fi One, and Wi-Fi One was substituted as the patent owner in IPR. For simplicity, the remainder of this brief will refer to Wi-Fi One's activities in the PTAB, but should be understood to refer to either Ericsson and/or Wi-Fi One at the relevant time.

(and *validity* for one patent). But the Court vacated the damages award and remanded to district court with instructions for a new trial on damages only. *See D-Link*, 773 F.3d at 1236-37. Three months later, however, the PTAB entered its final written decisions and invalidated each patent, overruling Wi-Fi One's objection that the IPR petitions were time-barred by §315(b).

*Ericsson. v. D-Link* has since become well-known to patent lawyers as a precedential case on patent damages. But the expected remand trial on damages, to apply this Court's guidance for standard essential patents, never occurred. The district court stayed the litigation when the PTAB invalidated the patents-in-suit, and it remains stayed to this day.

**B. Summary of Evidence Showing Broadcom's Relationship with the Time-Barred District Court Defendants.**

With a simple unsworn statement, Broadcom represented in its IPR petitions that it is the sole real party-in-interest for each IPR. (A303.) No one disputes, however, that there has been a longstanding significant relationship between Broadcom and at least some of the District Court Defendants, specifically with respect to the infringement claims Ericsson asserted in that case. Wi-Fi One presented to the PTAB strong evidence Broadcom had closely coordinated with some of the District Court Defendants in opposing the asserted patents. (A45-47 (redacted), A45.1-47.1 (sealed); A138-50 (sealed), A188-200 (redacted).) The close ties between Broadcom and its customer-defendants were summarized by the Board

in its order denying Wi-Fi One's motion for additional discovery on the scope of this relationship. (A81-90.)

Even without additional discovery, Wi-Fi One was able to offer substantial evidence that Broadcom and one or more District Court Defendants are privies and/or that one or more District Court Defendants is a real party-in-interest for the IPRs. For example, Broadcom concedes that certain of its products, such as the "BCM4313" and "BCM4321" chips, form the basis for some of the infringement allegations made by Ericsson and Wi-Fi One in the district court litigation. (A304.)

Nor does anyone dispute that there are at least two indemnity agreements between Broadcom and certain District Court Defendants that cover the infringement allegations in district court. (A1628 (district court order noting the existence of at least two indemnity agreements and indemnity-related email); A84 (Board order noting the existence of indemnity agreements).) The specific terms of these indemnity relationships are not known to either the PTAB or this Court, however, because the agreements were not made part of the IPR record, despite the exhaustive efforts of Ericsson and Wi-Fi One discussed below.

There is no dispute that for many years Broadcom worked in coordination with some of District Court Defendants to defend against the infringement claims in district court. (A45-47 (redacted), A45.1-47.1 (sealed); A81-90.) Broadcom also

concedes it took affirmative steps to collaterally attack the patents on behalf its customers who were District Court Defendants. (A46, A50 (redacted); A46.1, A50.1 (unredacted).)

Presumably, the indemnity agreement itself would illuminate the nature of this known indemnity relationship—particularly regarding the parties' respective rights and obligations in both the district court and IPR litigation. In fact, the indemnity agreements were produced to Ericsson's counsel in the District Court Litigation, but subject to a protective order that prevented the documents from being used in the IPR. (A1628-31.) Broadcom also refused to produce the agreement voluntarily, despite its obligation to produce "relevant information that is inconsistent with a position advanced by the party during the proceeding . . . ." 37 C.F.R. §42.51(b)(iii). Instead, Broadcom submitted a declaration carefully worded to focus exclusively on its ties to the District Court Litigation, and avoid any mention of the reverse—the District Court Defendants' control (or lack thereof) over IPRs below. *See* Wi-Fi Op.Br. at 11.

### C. Wi-Fi One's Exhaustive Efforts to Introduce Additional Evidence on the "Real Party in Interest or Privy" Issue—Including a Known Indemnity Agreement.

Wi-Fi One and Ericsson pursued every possible avenue for getting the indemnity agreements (and other relevant evidence) into the IPR record for

consideration by the PTAB and this Court. Ericsson first moved the district court to modify the protective order, but the request was denied. (A1628-31.)

Wi-Fi One then moved for additional discovery in the IPR below seeking, *inter alia*, production of the indemnity agreements. (A44-54 (redacted); A44.1-54.1 (unredacted).) Broadcom opposed the motion, and the PTAB denied all requested discovery (including production of the known indemnity agreements). (A55-64 (redacted brief); A65-74 (unredacted brief); A75-91 (order).) Wi-Fi One requested rehearing of the decision denying discovery, but the rehearing request also was denied. (A92-100; A101-06.) Wi-Fi One even pursued mandamus from this Court to compel the PTAB to allow the requested discovery, but the mandamus request was denied. *See In re Telefonaktiebolaget LM Ericsson*, 564 Fed. Appx. 585 (Fed. Cir. 2014).

**D. The PTAB Decision Below, the Points of Error Raised By Wi-Fi One, and the Panel Decision in this Case.**

On March 6, 2015, the PTAB issued its final written decisions finding all challenged claims unpatentable, for all three patents. (A1.) Wi-Fi One filed a request for rehearing, challenging the PTAB's substantive §315(b) determination and raising Wi-Fi One's procedural objections. (A252-269). The PTAB denied the request for rehearing (A270-79), and Wi-Fi One timely appealed to this Court.

On appeal, Wi-Fi One continues to assert Broadcom was time barred by §315(b) and challenges the procedures used by the PTAB in reaching that decision.

*See* Wi-Fi Op.Br. at 2, 31-44. Relying on *Achates*, however, the panel refused to consider any of these points of error. *See Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329, 1333 (Fed. Cir. 2016). The panel found that *Cuozzo* did not overrule *Achates* or cast doubt on its reasoning. *See id.* at 1334-35. The panel also held that "Wi-Fi does not dispute that *Achates* renders its challenge to the Board's timeliness ruling nonappealable if *Achates* is good law." *Id.* at 1333. To the contrary, Wi-Fi has argued all along that this case is materially distinguishable from *Achates* on the facts, and on the specific points of error that Wi-Fi One has raised. *See* Pet. for Reh'g, Dkt. No. 62 at 7-8.

## III. LEGAL STANDARDS - EVALUATING STATUTES THAT LIMIT OR MODIFY JUDICIAL REVIEW OF ADMINISTRATIVE ACTION

### A. The Court's Evaluation of Statutes Such as §314(d) Must Begin with the Very Strong Presumption of Judicial Review, Rooted in Both the Constitution and the Administrative Procedure Act.

The strong presumption that administrative actions or decisions are subject to judicial review is a lynchpin of the federal separation of powers. It is rooted in the U.S. constitution and bedrock constitutional cases such as Chief Justice John Marshall's opinions in *Marbury v. Madison*, 5 U.S. 137 (1803) and *U.S. v. Nourse*, 34 U.S. 8 (1835). These cases viewed judicial review of administrative action as an essential component of the rule of law itself, necessary to ensure executive agencies act only within the proper scope of their delegated statutory authority and abide by

lawful Congressional commands. *See Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) (discussing *Marbury* and *Nourse*).

The presumption of judicial review has legislative roots as well. When Congress passed the Administrative Procedure Act ("APA") in 1946, it codified the presumption of judicial review as follows: "A person suffering legal wrong because of agency action, or adversely aggrieved by action within the meaning of a relevant statute, *is entitled to judicial review thereof*." 5 U.S.C. §702 (emphasis added). *See also Bowen*, 476 U.S. at 670-72; *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). The APA codified the presumption of judicial review for final agency action and also "preliminary, procedural, or intermediate agency action or ruling not directly reviewable" upon appeal of the final agency action. *See* 5 U.S.C. §704.

The presumption of review applies to actions or decisions of an agency, but not to an agency's *inaction or failure to act*. Because of the complex policy and political factors bound up with executive discretion, the Supreme Court recognizes the opposite presumption in this context—a presumption of *no review* for an agency's inaction or failure to act. *See Heckler v. Chaney*, 470 U.S. 821, 831-33 (1985) ("[W]hen an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect").

Post-APA, the Supreme Court has frequently considered statutes that facially appear to limit judicial review of agency action. In each case, the Court's analysis begins with the strong presumption of judicial review, and measures evidence of Congressional intent to limit review against the strong presumption. *See, e.g.*, *Cuozzo Speed Techs., LLC v. Lee*, 136 Sup. Ct. 2131, 2140 (2016); *Traynor v. Turnage*, 485 U.S. 535, 544-45 (1988); *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 777-78 (1985); *Bowen*, 476 U.S. at 670.

The *availability* of judicial review is distinct from the *standard of review* that courts apply. If agency action is precluded from review, then there is no judicial review at all, under any standard. Even where an agency is entitled to "*Chevron*" deference, for example, judicial review is nonetheless available to set aside actions "that are arbitrary, capricious, or manifestly contrary to statute." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). In only the rarest of cases—where there is an unmistakably clear expression of Congressional intent to do so—has the Supreme Court found complete preclusion of judicial review.

### B. Under the APA, an Agency Bears a Heavy Burden to Overcome the Presumption of Judicial Review, and Must Show "Clear and Convincing Indications" that Congress Intended to Limit or Modify Judicial Review.

The presumption of review is just that—a presumption—which may be rebutted by evidence of clear Congressional intent to limit or modify judicial review of a specific agency action. *See Bowen*, 476 U.S. at 672-73. The agency bears a

*heavy burden* to overcome this presumption. *See id.*; *see also Barlow v. Collins*, 397 U.S. 159, 166 ("[J]udicial review of such administrative action is the rule, and nonreviewability the exception which must be demonstrated"). To overcome the presumption, the agency must show "clear and convincing indications . . . that Congress intended to bar review." *See Cuozzo*, 136 Sup. Ct. at 2140.[7]

Under the APA, the presumption of judicial review may be overcome in either of two ways: (1) where "statutes preclude judicial review," or (2) where "agency action is committed to agency discretion by law." *See* 5 U.S.C. §701(a). *See also Bennett v. Spear*, 520 U.S. 154, 175 (1997). The second exception "is a very narrow exception" that applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971). This exception is inapplicable to this appeal, and will not be discussed further.

With respect to the first exception—where statutes preclude judicial review—the legislative history of the APA contains clear statements from both the House and Senate confirming Congressional endorsement of the strong presumption of judicial

---

[7] Earlier Supreme Court cases stated this as a "clear and convincing evidence" requirement, but the court "has never applied the clear and convincing evidence standard in the strict evidentiary sense; nevertheless, the standard serves as a useful reminder to courts that, where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling." *Bowen*, 476 U.S. at 672 n.3.

review, and the strong showing an agency must make to overcome the presumption. *See Bowen*, 476 U.S. at 671-72. For example, the House Judiciary Committee report stated:

> The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under this bill a statute, if not specific in withholding such review, must upon its face give *clear and convincing evidence of an intent to withhold it*. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.

*See* H.R. Rep. No. 1980, at 275 (1946) (quoted in *Bowen*) (emphasis added). *See also Abbott Labs*, 387 U.S. at 140 (citing S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). *Accord Mach Mining, LLC v. EEOC*, 135 Sup. Ct. 1645, 1651 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies." (internal quotes omitted)).

To determine whether an agency has met its heavy burden to overcome the strong presumption of judicial review, it is erroneous for a court to consider only the text of the statute. "The question of whether a statute precludes judicial review is determined not only from its express statutory language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Lindahl*, 470 U.S. at 779. *See also Cuozzo*, 136 Sup. Ct. at 2140.

### C. The Strong Presumption of Review Requires Statutes be Read Narrowly to Limit Judicial Review for Only the Specific Issues Intended by Congress.

Even when a statute appears at first blush to preclude all review of an agency action, the presumption of review requires courts to look for a narrow construction (consistent with statutory text, scheme, and legislative history) to avoid finding a total preclusion of judicial review. For example, in *Lindahl*, the *en banc* Federal Circuit found: "It is difficult to conceive of a more clear-cut statement of congressional intent to preclude review than one in which the concept of finality is thrice repeated in a single sentence." *Lindahl v. Office of Pers. Mgmt.*, 718 F.2d 391, 393 (Fed. Cir. 1983) (*en banc*) (considering a statute making disability and dependency determination made by Office of Personnel Management "final and conclusive and are not subject to review"). The Supreme Court, however, reversed and narrowly construed the statute as only precluding review of OPM's *factual* determinations, without precluding review of the law and procedures used by OPM in reaching its determinations. *See Lindahl*, 470 U.S. at 779.

When constitutional issues are involved, the presumption of judicial review is at its zenith and statutes must be narrowly construed to preserve the courts' ability to resolve constitutional issues or review alleged constitutional violations. *See, e.g.*, *Bowen*, 476 U.S. at 672 n.3, 681 n.12; *Johnson*, 415 U.S. at 367. Construing a statute

to preclude review of constitutional issues would raise serious constitutional and separation of powers issues. *See Bowen*, 476 U.S. at 681 n.12.

Even when action is *completely committed* to agency discretion, the Supreme Court nonetheless distinguishes between the decision itself and the *process used to make the decision*. *See Lindahl*, 470 U.S. at 779-81; *Bowen*, 476 U.S. at 675-76. Accordingly, the Supreme Court consistently gives a narrow construction to review-limiting statutes to permit judicial review of procedural errors in process leading to the agency's decision—even if the decision itself is unreviewable. *See, e.g.*, *Bowen*, 470 U.S. at 675-76. *See also Lincoln v. Vigil, 508 U.S. 182, 184 (1993); Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Webster v. Doe*, 486 U.S. 592, 601-04 (1988).

Furthermore, courts must narrowly construe review-limiting statutes to preserve review of agency action outside of the agency's statutory jurisdiction, that violate a statutory directive, or are otherwise contrary to law. *See Bowen*, 476 U.S. at 671; *Dismuke*, 297 U.S. 167, 171-72 (1936). Recently, the Supreme Court made clear there is no distinction between "jurisdictional" and "non-jurisdictional" agency statutes—all Congressional directives to an agency have the force of law, are limitations on the agency's statutory authority to act, and must be followed by the agency. *See City of Arlington v. FCC*, 133 Sup. Ct. at 1868-69; *see also Bowen*, 476 U.S. at 671-72 n.3.

In a rare case where the Supreme Court reads a statute to preclude *all* judicial review of agency action, there must be clear and unmistakable evidence of Congressional intent. *United States v. Erika*, 456 U.S. 201 (1982) is often cited as an example of "total preclusion" of judicial review. *Erika* precluded review of insurance carrier determinations regarding the *amount* of benefits under Medicare *Part B* in the Court of Claims. *See id.* at 206-10. But the Court based its holding on compelling and unambiguous legislative history that showed Congress had implemented significant procedural reforms in the Medicaid Statutes to provide substantial intra-agency review for the very purpose of getting a large number of small-dollar claims out of the courts, combined with a statutory structure that explicitly provided for *administrative and judicial* review of the *amount* of large claims (under *Part A*) and threshold participant eligibility (under Part A *and Part B*). *See id.* at 208-10. Thus, *Erika* is a good illustration of the "clear and convincing indications" Congress must provide when it intends to preclude all judicial review.

*Erika* also illustrates two more important points. First, even with the statute's compelling legislative history and structure, it was nonetheless incumbent on the Court to narrowly construe it. *See id.* at 208 (noting that the statute precludes judicial review of amount determinations, but not eligibility determinations). Second, it was critical for the Court to determine that no constitutional issues had been raised in that appeal. *See id.* at 206 n.5 and 211 n.14.

Indeed, the landmark *Bowen* case, decided just four years later, involved the same Medicare statute (§1395ff); but *Bowen* found that the constitutional, procedural, and other issues raised in that appeal *were not* barred by §1395ff (notwithstanding the legislative history discussed in *Erika*), demonstrating the presumption of review's inherent strength. *Accord Traynor v. Turnage*, 485 U.S. 535, 542 (1988); *Johnson v. Admin. of Veterans' Affairs*, 415 U.S. 361, 366-67 (1974); *Fisher v. U.S.*, 402 F.3d 1167, 1177 (Fed. Cir. 2005) (*en banc*).

## IV. RELEVANT STATUTES AND LEGISLATIVE HISTORY

### A. Congressional Authority to Grant Patents, and Delegation of that Authority to the United States Patent and Trademark Office.

The Constitution allocates authority to grant patents to Congress, not the executive branch. *See United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 358-59 (1888). "The patent . . . is not the exercise of any prerogative power or discretion by the President or by any other officer of the government." *Id*. at 363. Although Congress passed the first Patent Act in 1790 (and another in 1793), it did not create a Patent Office within the executive branch until 1836. *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1343 (Fed. Cir. 2010); *In re Lepage's Inc.*, 50 C.C.P.A. 852, 861 (C.C.P.A. 1963). "As the legislative history reveals, the purpose of the [Patent] act [of 1836] was to bring specialized expertise on *questions of patentability*." *Hyatt v. Kappos*, 625 F.3d 1320, 1343-44 (Fed. Cir. 2010) (*en banc*) (emphasis added), *aff'd* 566 U.S. 431 (2012).

For the next 144 years, Congress provided no statutory mechanism allowing the patent office to reexamine patents it had previously examined and allowed. Prior to 1980, an issued patent could be revoked only by a judicial determination of invalidity. *See* Gregory Dolin and Irina D. Manta, *Taking Patents*, 73 Wash. & Lee L. Rev. 719, 728-35 (2016). Since 1980, Congress has provided mechanisms by which the USPTO has the "power to review and cancel issued patent claims. At the same time, *Congress has cabined that power* by imposing significant conditions on the Patent Office's institution of patent review proceedings." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2149 (2016) (Alito, J., dissenting in part) (emphasis added). *See also In re Recreative Techs. Corp.*, 83 F.3d 1394, 1397-98 (Fed. Cir. 1996) (discussing legislative history of statutory restrictions on reexamination).

Ever since Congress first created reexaminations, patent owners have had appellate rights—via intra-agency appeal and/or appeal to federal court. *See Power Integrations, Inc. v. Kappos*, 6 F. Supp. 3d 11, 19 (D.D.C. 2013). *Accord, In re Van Geuns*, 946 F.2d 845, 846-48 (Fed. Cir. 1991) (interference).

### B. Congress Created the Federal Circuit Court of Appeals to Provide Consistency in the Application of Patent Laws.

"The Federal Circuit was formed in response to a perceived crisis in the federal courts system, and, more particularly, in the judicial handling and development of patent law." Christopher A. Cotropia, *"Arising Under" Jurisdiction and Uniformity in Patent Law*, 9 Mich. Telecomm. & Tech. L. Rev. 253, 259-61

(2003) (discussing legislative history). At least as early as 1966, the Supreme Court recognized serious problems created by the patent office's inconsistent application of patent laws and lack of uniform treatment across patents. *See Graham v. John Deere Co*., 383 U.S. 1, 18-19 (1966).

Following more than ten years of discussion and debate, Congress sought to promote consistency and uniformity in patent law (and the consistent treatment of different patents) by creating the Federal Circuit—which Congress vested with exclusive jurisdiction to hear appeals both from USPTO proceedings and patent appeals from district court cases. *See Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1381 (Fed. Cir. 2012). Congress saw uniformity and consistency in patent law as vitally important for the promotion of technology and economic advancement, and created the Federal Circuit to achieve that end. *See* S. Rep. No. 97-275, at 1 (1981). *See also Madstad Eng'g, Inc. v. United States PTO*, 756 F.3d 1366, 1371 (Fed. Cir. 2014); *Pfizer, Inc. v. Apotex, Inc.*, 488 F.3d 1377, 1380 (Fed. Cir. 2007) (Newman, C.J., dissenting from denial of reh'g *en banc*).

## C. The America Invents Act of 2011.

### 1. Overview of the America Invents Act and Post-Grant Review.

When Congress passed the AIA in 2011 to overhaul the patent system, one of its primary motivations was its perception that the USPTO was issuing many low-quality patents. *See* H.R. Rep. No. 112-98, at 39. Congress created new post-grant

review proceedings, including *inter partes* review ("IPR"), to challenge low-quality patents. *See, e.g.*, 35 U.S.C. §311, *et. seq*. The new post-grant review procedures were intended to serve a dual purpose—to provide an efficient alternative to district court litigation over patent validity and to allow the USPTO to take a second look at its earlier examination and allowance. *Cuozzo*, 136 Sup. Ct. at 2144 (2015).

The AIA created IPR by substantially modifying previous *inter partes* reexamination practice. *Inter partes* reexamination was, as the name implies, a second examination of the patent conducted by examiners (with appeal to administrative patent judges ("APJ"); the new IPRs, on the other hand, are not "examinations" at all, and are much more akin to litigation. *See, e.g.*, H.R. Rep. No. 112-98, at 48 (noting the purpose of post-grant review proceedings is to provide "quick and cost effective alternatives to litigation").

IPR is a *trial* proceeding in which the burden of proof is on the petitioner. 35 U.S.C. §316(e); 37 C.F.R. §42.100(a) ("An *inter partes* review is a trial subject to the procedures set forth in subpart A of this part."); *see also* 37 C.F.R. §42.2; H.R. Rep. No. 112-98, at 45-46. Like litigation, the proceeding begins with a petition that frames the scope of the dispute. 35 U.S.C. §§311-12; 37 C.F.R. §42.104. The USPTO then engages in a bifurcated proceeding in which the Director first determines whether there is a reasonable likelihood the petitioner will prevail. 35 U.S.C. §314(a). If so, the Director may institute a trial, which will be conducted

by the PTAB in the second phase of the bifurcated IPR. 35 U.S.C. §316(c). Like litigation, parties submit evidence (including expert testimony) and engage in discovery. 35 U.S.C. §§312(a)(3), 316(a)(8); 37 C.F.R. §§42.51-42.65. IPR rules allow for adversarial motion practice. 37 C.F.R. §§42.20-42.25. The IPR trial culminates in an oral argument followed by a final written decision in which the PTAB sets forth the reasons supporting the decision. 37 C.F.R. §42.73(a).

PTAB final decisions in IPR are immediately appealable to the Federal Circuit. 35 U.S.C. §319. There are no intra-agency avenues for a party to appeal *any aspect* of the PTAB's decisions during trial, or its final written decision. Indeed, Congress created the PTAB in the AIA by reorganizing what was previously known as the BPAI, an intra-agency board that (among other things) heard appeals from patent examinations and reexaminations. *See* 35 U.S.C. §6. Congress vested the PTAB with original trial jurisdiction over instituted IPR trials. *See* 35 U.S.C. §316(c). Once the PTAB issues its final written decision, a party has a right to immediate appeal to the Federal Circuit. *See* 35 U.S.C. §141, §319. In this way, the AIA eliminated any avenue for intra-agency appeal that previously had been available in *inter partes* reexamination. The purpose of this change was to get cases to the Federal Circuit faster, for ultimate resolution. 157 Cong. Rec. S1376 (Mar. 8, 2011) (statement of Sen. Kyl) ("By reducing two levels of appeal to just

one, [the elimination of intra-agency appeal] will substantially accelerate the resolution of *inter partes* cases.”).

**2. 35 U.S.C. §315(b)—Statutory Time-Bar for IPR.**

The AIA’s one-year statutory time bar for IPR petitions states:

> An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the *petitioner, real party in interest, or privy of the petitioner* is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

35 U.S.C. §315(b) (emphasis added). Congress included this time bar for at least two reasons: (1) encouraging prompt and efficient resolution of patent disputes by having all issues raised promptly, and (2) protection of patent owners from harassment. *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012); *see also Covidien LP v. Univ. of Florida Research Found. Inc.*, Case IPR2016-001274, Paper 21 at 14.

First, the AIA’s primary goal of accelerating the efficient resolution of patent disputes is frustrated if parties delay filing IPR petitions. *See Johnson Health Tech Co. v. Icon Health & Fitness, Inc.*, Case IPR2014-01242, Paper 16 at 3 (Feb. 11, 2015) (citing H.R. Rep. No. 112-98) (“The one-year deadline helps to ensure that *inter partes* review provides a quick and cost effective alternative to litigation, and

is not used as a tool for harassment or litigation gamesmanship."). Delay is particularly problematic if the IPR petitioner also is a district court infringement defendant. Application of the one-year time bar ensures that, in most cases, an IPR petition will be filed before substantial discovery, claim construction, or dispositive motions, and give the district court an opportunity to consider a stay of the case. This conserves judicial resources—another important objective of the IPR proceedings. *See Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, 2016 U.S. Dist. LEXIS 56885, at *14 (D. Mass. Apr. 28, 2016); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2015 U.S. Dist. LEXIS 154693, at *11-12 (E.D. Va. Nov. 16, 2015).

If IPR filings are delayed, this also can cause a host of procedural complexities that result when patents proceed through district courts and the PTAB on different tracks, generating separate appeals that may arrive at this Court at different times. In this way, §315(b)'s timeliness requirement was intended "to *protect the integrity of both the USPTO and Federal Courts* by assuring that all issues are promptly raised and vetted." *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (emphasis added); *Covidien*, Case IPR2016-001274, Paper 21 at 14.

The facts of this case illustrate the point. These patents were before the Court on appeal from the district court more than two years ago, but the expected remand trial never occurred because of delayed IPR filings. The patents are now *back* in this Court, in a completely different procedural posture, and with a different record.

Many other cases illustrate the "dual path" inefficiencies and inconsistencies that result when IPR petitions are filed well after substantial district court litigation has occurred. *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013); *Versata Software, Inc. v. SAP Am., Inc.*, 2014 U.S. Dist. LEXIS 54640, at *7-11 (E.D. Tex. Apr. 20, 2014) *aff'd* 564 Fed. Appx. 600 (Fed. Cir. 2014); *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349 (Fed. Cir. 2015); *WesternGeco LLC v. ION Geophysical Corp.*, 2016 U.S. Dist. LEXIS 64056 (S.D. Tex. May 4, 2016).

Second, Congress understood that IPR might be abused by bad actors, and thus included statutory procedures intended to protect patent owners from harassment and delay. *See* H.R. Rep. No. 112-98, at 48 ("The Committee recognizes the importance of quiet title to patent owners to ensure continued investment resources. . . . [T]he changes made by [the AIA] are not to be used as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent."). *See also* Letter from Gary Locke, Dir. U.S. Dep't of Commerce to S. Comm. on the Judiciary at 3 (Oct. 5, 2009) ("It is important that post-grant review procedures be designed to prevent delay and abusive challenges").

One important protection for patent owners is the timeliness requirement of §315(b), which was intended to prevent repeated attacks on a patent over an extended period. Most district court defendants, recognizing that IPR should be

quicker and more efficient than district court, have an incentive to turn to IPR quickly. But a bad actor might use repeated IPR petitions over a period of years to harass the patent owner, impose costs on a patent owner that cannot afford the expenses of defending against repeated IPRs, or subject the patent to such doubt that the infringer escapes liability or force the patent owner to simply give up.

To guard against potential abuse, Congress included the timeliness requirement of §315(b), which was an essential part of the legislative compromise required for passage of the AIA. "The *inter partes* proceeding . . . has been carefully written to balance the need to encourage its use while at same time preventing the serial harassment of patent holders. This bill represents a delicate balance, and [extending the one-year deadline] may turn the *inter partes* program into a tool for litigation gamesmanship rather than a meaningful and less expensive alternative to litigation." Transcript of Markup of H.R. 1249, Meeting of H. Comm. on the Judiciary, at 1432-43 (Apr. 14, 2011) (Chairman Smith, opposing proposed amendment extending the §315(b) time bar "from 12 months after the filing of a civil action to 30 days after the *Markman* hearing").

Of significance to this appeal, §315(b) applies not only if the infringement defendant is the IPR petitioner, but also if a "real party in interest or privy of the petitioner" is time barred under §315(b). *See id.* This statutory language prevents a time-barred party from abusing the process by employing an agent or shill to file the

petition, thus subverting the time bar. *Cf.* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012) (stating that one of "[t]he core functions of the 'real party-in-interest' and 'privies' requirement" is to "assure proper application of the statutory estoppel provisions," which "seek[] to protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a 'second bite at the apple,' and to protect the integrity of both the USPTO and Federal Courts by assuring that all issues are promptly raised and vetted.").

#### 3. 35 U.S.C. §314(d)—Limitation on Appeal from Director's Institution Decision.

While Congress authorized direct appeal to the Federal Circuit following a final written decision, the statute also places a restriction on appeal from the Director's decision to institute an IPR trial: "The determination by the Director whether to institute an inter partes review *under this section* shall be final and nonappealable." 35 U.S.C. §314(d) (emphasis added).

The scope of §314(d) was addressed by the U.S. Supreme Court in *Cuozzo*, and is discussed in detail below. *See Sections* V(A)(1) and V(A)(2) below.

### D. The USPTO's IPR Regulations and Implementation of the AIA.

The IPR statutes grant rulemaking authority to the USPTO for regulations governing IPR trial proceedings conducted before the PTAB. *See* 35 U.S.C. §316(a). The USPTO published draft rules for public comment on February 9 and 10, 2012.

*See* Practice Guide for Proposed Trial Rules, 77 Fed. Reg. 6868 (Feb. 9, 2012); Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 7041 (proposed Feb. 10, 2012) (each to be codified at 37 C.F.R. pt. 42). The USPTO also published its Office Patent Trial Guide "to advise the public on the general framework of the regulations, including the structure and times for taking action in each of the new proceedings." Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012) (to be codified at 37 C.F.R. pt. 42).

The USPTO's regulations for PTAB trials require compliance with statutory time limits such as the time bar of §315(b):

> **§42.3 Jurisdiction**
>
> . . .
>
> (b) A petition to institute a trial must be filed with the Board consistent with any time period required by statute.

37 C.F.R. §42.3(b).

The PTAB regulations also require that each petition contain a mandatory notice that identifies each real party-in-interest (but not each "privy of the petitioner"). *See* 37 C.F.R. §42.8(b)(1) (2017). In practice, the PTAB allows a party to meet this mandatory disclosure of each real party-in-interest by making an unsupported statement in the petition. *See Zoll Lifecor Corp. v. Philips Elecs. N. Am. Corp.*, Case IPR2013-00606, Paper 13 at 7 (PTAB Mar. 20, 2014) (citing 77 Fed. Reg. 48680, 48695 (Aug. 14, 2012)).

In its Office Trial Practice Guide, the USPTO published standards for determining whether a third party is a real party-in-interest or privy of the IPR petitioner, adopting a "broad and flexible" framework based on *Taylor v. Sturgell*, 553 U.S. 880 (2008). *See* 77 Fed. Reg. at 48759-60.

Of relevance to this case, the IPR regulations delegate to the PTAB *all* the Director's authority for deciding whether to institute an IPR trial—the first step in the bifurcated IPR process. *See* 37 C.F.R. §42.4(a) ("The Board institutes the trial on behalf of the Director"); *see also* 37 C.F.R. §42.108. In practice, the institution decision is decided by the same panel of APJs that will preside over the trial post-institution. *See Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1028 (Fed. Cir. 2016) ("The PTO has determined that, in the interest of efficiency, the decision to institute and the final decision should be made by the same Board panel . . . ."). In this way, the USPTO's regulations eliminate any gatekeeping role for the Director at the institution stage of the bifurcated IPR process.

In IPR, a patent owner is entitled to file a preliminary response prior to the Board's institution decision. 35 U.S.C. §313 and 37 C.F.R §42.107(a). The patent owner may choose to raise §315(b) timeliness issues in the preliminary response, and if so the PTAB (on behalf of the Director) may preliminarily decide the issue as part of the institution decision. But the patent owner is not required to file a preliminary response at all. 37 C.F.R. §42.107(a). Post-institution, a patent owner

may continue to raise the §315(b) issue. *See* Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 48680, 48695 (Aug. 14, 2012) ("After institution, standing issues may still be raised during the trial."). *See also, e.g.*, *Atl. Gas Light Co. v. Bennett Regulator Guards, Inc.*, Case IPR2013-00453, Paper 88 (PTAB Jan. 6, 2015); *Medtronic, Inc. v. Robert Bosch Healthcare Sys, Inc.*, Case IPR2014-00488, Paper 52 (PTAB Mar. 16, 2015).

At the institution stage, the evidentiary record is often incomplete—particularly as to whether there are real parties-in-interest or privies who were served with an infringement complaint that triggered the §315(b) time bar. With the patent owner response (or in a motion to terminate), the patent owner may submit additional evidence that was not included with the preliminary response to more fully develop the evidentiary record. *See Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, Case IPR2014-00488, Paper 27 (PTAB Dec. 1, 2014).

Either before or after institution, the patent owner may request "additional discovery" from the petitioner on the §315(b) time bar issues, including whether there are real parties-in-interest or privies of the petitioner. *See* 37 C.F.R. §42.51(b)(2). In a precedential opinion, the PTAB adopted standards governing requests for additional discovery—the so-called "*Garmin* factors." *See Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, Case IPR2012-00001, Paper 26, at 6-7 (PTAB Mar. 5, 2013).

The PTAB, however, frequently denies discovery to patent owners on the §315(b) issues—even in cases where a patent owner makes a strong threshold showing to raise suspicion that there are unidentified real parties-in-interest or privies of the petitioner that have triggered the time bar. The Director acknowledged in 2015 that "the existence of ample discovery to establish the real-party-in-interest (RPI) of the petitioner has been a concern," and stated the USPTO's intention to update the Trial Practice Guide "to emphasize the importance of RPI [real party-in-interest] discovery as to determinations of standing and as to possible later estoppel consequences." Michelle K. Lee, *PTAB's Quick-Fixes for AIA Rules Are to Be Implemented Immediately*, Director's Forum: A Blog from USPTO's Leadership (Mar. 27, 2015), https://www.uspto.gov/blog/director/entry/ptab_s_quick_fixes_for. Unfortunately, this has not occurred and the USPTO has not taken any steps to remedy this well-known problem.

## V. *ACHATES* WAS INCORRECTLY DECIDED AND SHOULD BE OVERRULED.

### A. The Reasoning of *Achates* is Erroneous.

*Achates* was decided on September 30, 2015—without the benefit of the Supreme Court's guidance in *Cuozzo* on the proper scope and application of §314(d). Moreover, the parties in *Achates* did not highlight the strong presumption of judicial review in the appellate briefs, and did not cite or argue the most relevant Supreme Court authorities. With the benefit of the Supreme Court's *Cuozzo* opinion, it is now

clear that *Achates* framed the issue incorrectly, and its reasoning was erroneous. *See Click-to-Call, LP v. Oracle Corp.*, 136 Sup. Ct. 2508 (2016) (granting Click-to-Call's petition for certiorari, vacating this Court's decision, and remanding for reconsideration in view of *Cuozzo*).

### 1. *Achates* Overlooked the Strong Presumption of Judicial Review and Did Not Apply the Correct Legal Standards for Evaluating §314(d).

The *Achates* opinion never mentions the strong presumption of judicial review and attaches no weight at all to the presumption. Nor does *Achates* cite or consider the most relevant Supreme Court cases that frame the issue of statutory limits on judicial review, such as *Bowen* or *Lindahl*. In assessing the scope of §314(d) and its application to judicial review of the PTAB's §315(b) timeliness determinations, the *Achates* opinion never considers whether there are "clear and convincing indications" of Congressional intent to preclude review, as the relevant Supreme Court cases require. *See, e.g., Cuozzo*, 136 Sup. Ct. at 2139-42 (assessing the statutory text, overall structure, and legislative history to determine if it was sufficient to overcome the strong presumption of review). *See also* Wi-Fi Op.Br. at 27-30; Wi-Fi Rpl.Br. at 9-12.

Instead, based on its review of prior Federal Circuit panel opinions construing and applying §314(d), the *Achates* analytical framework focuses solely on whether the timeliness requirement of §315(b) is a "jurisdictional" restriction on the PTAB's

ability to act, or else merely "non-jurisdictional." *See Achates*, 803 F.3d at 657-58. *Achates* derives this framework by noting that prior cases (with one exception) had given §314(d) a broad reading to preclude review (even on appeal of a final written decision) for practically every issue decided at the institution stage. *See id.* at 655-57. The one exception (*Versata II*) held this Court may review whether a case met the statutory criteria for a "covered business method review" because those statutory criteria are "jurisdictional." *See id.* at 656-57 (discussing *Versata Dev. Grp., Inc. v. SAP America, Inc.*, 793 F.3d 1306 (Fed. Cir. 2015)).

*Achates* reads §314(d) to preclude review of all issues decided at the institution stage, even on appeal of a final written decision, unless the issue is "jurisdictional" in nature, thus constructing an erroneous analytical framework that focused solely on whether the §315(b) time bar is "jurisdictional." *See Achates*, 803 F.3d at 657-58. *Achates* also supports its holding by finding that issues of statutory interpretation "fall outside [the] exception for *ultra vires* agency action." *Id.* at 658.

At least two fundamental flaws in *Achates* were apparent even before the Supreme Court decided *Cuozzo*.[8] First, as Wi-Fi One argued in its opening appeal

---

[8] This is not to say that *Versata II* was incorrectly decided. The holding of *Versata II* is in line with Supreme Court cases preserving review for what were previously referred to as "jurisdictional" issues that are now best described as statutory restrictions on the agency's authority to act. *See* Section III(C), *supra*. The mistake of *Achates* was its holding that the "jurisdictional" exception from *Versata II* was the *only* exception to *Achates*' otherwise-expansive reading of §314(d).

brief (before the Supreme Court granted certiorari in *Cuozzo*), the Supreme Court had already abrogated any supposed distinction between "jurisdictional" and "non-jurisdictional" agency statutes—holding instead that *all* statutory directives to an agency are jurisdictional, impose limitations on the agency's authority to act, and must be followed.[9] *See City of Arlington*, 133 Sup. Ct. at 1868 ("No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute is administers is always, simply, *whether the agency has stayed within the bounds of its statutory authority*") (emphasis in original); Wi-Fi Op.Br. at 27-28. Second, *City of Arlington* held (directly contrary to *Achates*) that any agency action falling outside the legally correct interpretation of the statute is *ultra vires*. *See City of Arlington*, 133 Sup. Ct. at 1864-65.

---

[9] In a pending case, Google requested *en banc* rehearing based on *City of Arlington* and requested consolidation for oral argument with this case. *See Unwired Planet, LLC v. Google,* Case No. 2015-1812, in the Federal Circuit Court of Appeals, Dkt. 62 at 3, n.1 (Jan. 23, 2017). But Google turns *City of Arlington* on its head. The core holding of *City of Arlington* is that *all* statutory directives to an agency are restrictions on the agency's authority to act. Thus, *City of Arlington* undermines the conclusion in *Achates* that §315(b) was "nonjurisdictional." But, directly contrary to Google's argument, it also compels an *expansion* of the "jurisdictional" exception recognized in *Versata II*—to statutes like §315(b)—because, post-*City of Arlington* all statutory directives are "jurisdictional." Google urges the Court to hold that PTAB institution decisions are *completely unreviewable*. If the PTAB, for example, instituted a pharmaceutical compound patent for CBM review, does Google really contend this Court would be powerless to correct such an obvious abuse of the PTAB's statutory authority?

In *Cuozzo* (decided June 20, 2016), the Supreme Court provided the correct analytical framework for assessing preclusion of appellate review under §314(d). First, *Cuozzo* anchors its analytical framework with the strong presumption of judicial review. *See Cuozzo*, 136 Sup. Ct. at 2140. Next, the Court looked at the text of the statute, the overall statutory structure, and legislative history to determine if they provide the "clear and convincing indications" of Congressional intent necessary to overcome the strong presumption of judicial review. *See Cuozzo*, 136 Sup. Ct. at 2140-41. This analytical framework is drawn from, and is consistent with, the long line of similar Supreme Court cases previously discussed, such as *Bowen* and *Lindahl*.

The "jurisdictional" or "non-jurisdictional" nature of the statutes implicated—which was the central distinction for the *Achates* analysis—has no part in the core analytical framework of *Cuozzo*. Instead, *Cuozzo* demonstrates that *Achates* turned the presumption of review on its head when *Achates* presumed §314(d) bars appeal of practically any issue decided at institution, and found a narrow exception only for issues implicating the "jurisdiction" of the PTAB rather than starting with the presumption of review and assessing evidence of Congressional intent against the presumption.

It is important to note that *Cuozzo* used the "presumption of review" analytical framework as the basis for its decision; the laundry list of potentially reviewable

issues later listed in *Cuozzo* is *not* the analytical framework to be applied in future cases. After expressly limiting its holding to the specific appellate points raised in that case—a "mine-run" challenge to the director's institution decision under §314(a), along with a "closely related" challenge to the "particularity" of the petition under §312—the Court then listed types of appellate points that would not be precluded from appellate review under the Court's construction of §314(d):

> This means that we need not, and do not, decide the precise effect on §314(d) on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond "this section." . . . [W]e do not categorically preclude review of a final decision where a petition fails to give "sufficient notice" such that there is a due process problem with the entire proceeding, nor does our interpretation enable the agency to act outside its statutory limits by, for example, canceling a patent claim for "indefiniteness under §112" in inter partes review. . . . Such "shenanigans" may be properly reviewable in the context of [35 U.S.C.] §319 and under the Administrative Procedure Act, which enables reviewing courts to "set aside agency action" that is "contrary to constitutional right," "in excess of statutory jurisdiction," or "arbitrary and capricious."

*Cuozzo*, 136 Sup. Ct. at 2141 (internal citations omitted). Each of the listed exceptions corresponds to one of the ways, discussed above, the Supreme Court will narrowly construe a review-limiting statute. *See* Section III(C), *supra*.

Thus, an appellant seeking review for an issue that relates to institution (or perhaps that was initially decided during institution) does not need to show that the point of error fits into one of the enumerated *Cuozzo* "buckets." *Cuozzo* did not flip the presumption of review to put the burden on the appellant to show that a specific point of error is not precluded by §314(d), nor did it state that the laundry list of exceptions is an exclusive list. Rather, if an appellant can show its point of error fits into one of the *Cuozzo* exceptions, then that alone is *sufficient* (but not necessary) to show that the USPTO cannot meet its burden to overcome the presumption of review. But, as *Cuozzo* shows, the appropriate analytical framework is rooted in the presumption of review, and measures whether the evidence of Congressional intent is sufficient to overcome the presumption. *See* Section III(A-C), *supra*.

2. ***Cuozzo* Shows that *Achates* Adopted and Applied an Erroneous and Overbroad Interpretation of §314(d).**

*Achates* applied an extremely broad reading to §314(d), essentially holding that it precludes appellate review of all issues related to or decided in connection with institution—the one narrow exception being for "jurisdictional" issues, as recognized by *Versata II*. *See Achates*, 803 F.3d at 657-58. Subsequent decisions have cited *Achates* and its expansive reading of §314(d) as authority for finding that other appellate issues are similarly precluded from review. *See, e.g., Harmonic v. Avid Tech.*, 815 F.3d 1356, 1366-67; *Husky Injection Molding v. Athena Automation*, 838 F.3d 1236, 1237 (Fed. Cir. Sept. 23, 2016).

*Cuozzo* demonstrates this expansive construction of §314(d) is incorrect. *Cuozzo* is primarily concerned with the core appellate issues that the plain language of §314(d) precludes from appellate review—namely, the Director's determination under §314(a) that the "information presented in the petition . . . shows there is a reasonable likelihood that the petitioner would prevail . . . ." *See Cuozzo*., 136 Sup. Ct. at 2140.

Recognizing the plain text of §314(d) makes reference to the Director's determination "under this section [§314]," *Cuozzo* extended this preclusion outside of §314 (to the §312 "particularity" requirement for petitions) only because the Court found that "Cuozzo's claim that Garmin's petition was not pleaded 'with particularity' under §312 is little more than a challenge to the Patent Office's conclusion, under §314(a), that the 'information presented in the petition' warranted review." *Cuozzo*, 136 Sup. Ct. at 2142.

This point is essential to understanding *Cuozzo*. Based on the plain text of the statute, the limitation on appeal in §314(d) relates only to the Director's institution decision under §314(a). Under *Cuozzo*, any penumbra that extends §314(d) beyond the Director's §314(a) determination must be limited to other statutes or issues that are "closely related" to the Director's institution decision. There is no suggestion in *Cuozzo* that sub-issues relevant to or decided at institution are immune from review

if those same sub-issues are also intrinsically bound up in the PTAB's final written decision.

When the PTAB's final decision revisits a sub-issue related to institution, or when the sub-issue is intrinsically bound up with the final decision, the resolution of that sub-issue is no longer the "Director's decision" under §314(a) at all, but instead becomes the PTAB's decision and, by the statute's plain text, outside the scope of §314(d)'s preclusion of appeal. The strong presumption of judicial review, coupled with the complete absence of any legislative history indicating that Congress intended to preclude review of *any* issues bound up in the PTAB's final decision, compels a narrow construction of §314(d) that limits the scope of the statute to the Director's institution decision under §314(a) and only other issues that are "closely related." *See Cuozzo*, 136 Sup. Ct. at 2142.

Ignoring the presumption of review, *Achates* adopted an overly broad reading of §314(d) such that any issues related to institution will always be immune from judicial review, even if the same issue is an essential underpinning of the PTAB's final written decision, or even if the issue is expressly re-decided by the PTAB following trial. *See Achates*, 803 F.3d at 658 (holding that §314(d) precludes judicial review of issues decided at institution "even if such assessment is reconsidered during the merits phase of proceedings and restated as part of the Board's final written decision"). In so holding, *Achates* did not consider or address the fact that,

at the institution stage, the factual record is not complete because no witnesses have been cross-examined and, until recently, the patent owner was precluded from offering any testimonial evidence pre-institution. Given the one-sided record available to the Director at institution, it makes no sense to preclude judicial review of all issues touching on institution when the same issues are bound up in the PTAB's final decision.

The near-absolute reading of §314(d) adopted by *Achates* is strikingly similar to the error made by this Court sitting *en banc* in *Lindahl*. In that case, the Court considered a provision of the Civil Service Retirement Act (§8347(c)), which made certain determinations of the commission "final and conclusive and not subject to review." *See Lindahl*, 718 F.2d at 394. Based largely (but not exclusively) on the text of the statute, this Court found that §8347(c) precluded all review of certain disability determinations, including both substantive and procedural determinations. *See id.* at 397. The Supreme Court reversed, finding at least two significant errors in the Federal Circuit's statutory interpretation. First, the Supreme Court disagreed with this Court's "plain meaning" reading of the statute. *See Lindahl*, 470 U.S. at 779-80 ("[O]ur hesitation regarding the 'plain meaning' . . . is compounded by the fact that, when Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive . . . ."). Second, the Supreme Court held that, notwithstanding the language of the statute, only the

commission's findings of fact were immune from review, and a party could appeal disability determinations for procedural errors and legal errors. *See id.* at 791.

The *Achates* holding bears a striking resemblance to this Court's holding in *Lindahl* that was reversed—except that the statutory language of §315(b) and the relevant legislative history in this case (as compared to the text and legislative history in *Lindahl*) are far less supportive of any clear indication of Congressional intent to preclude review.

## B. The USPTO Cannot Meet Its Burden to Show Clear and Convincing Indications of Congressional Intent to Preclude Appellate Review of the Specific Points of Error Raised by Wi-Fi One in this Appeal.

Once the erroneous reasoning of *Achates* is cast aside, the issue decided by *Achates*—whether §314(d) precludes appellate review of the Director's timeliness determination under §315(b)—must be reconsidered in the context of the present case, applying the correct legal standards and framework described above.

### 1. The USPTO Cannot Show Clear and Convincing Indications that Congress Intended to Preclude all Review of Every Issue Related to the PTAB's §315(b) Determination.

Wi-Fi One is unaware of any indication in the statutory text, structure of the statutory scheme, or legislative history to suggest that Congress intended to completely shield the Directors' timeliness determinations under §315(b) from all judicial review. Indeed, because the strong presumption of review requires that statutes such as §314(d) be narrowly construed (consistent with the clearly expressed

intent of Congress), the USPTO will carry a particularly heavy burden to show that §314(d) precludes review of *all* issues related to §315(b).

As discussed above, when Congress passed the Federal Courts Improvement Act in 1982 to create the Federal Circuit and vest it with exclusive nationwide jurisdiction over patent appeals, it did so because of the strong importance Congress attached to uniformity, consistency, and predictability in the adjudication and enforcement of patent rights. *See* Section IV(B), *supra*. Congress determined that *judicial review by this Court* was the best means for promoting the needed consistency—including inconsistencies arising from lack of uniformity *within the patent office*. *See id.* This legislative history is particularly relevant to the issues presented in this appeal; and it further strengthens the already strong presumption of judicial review in the context of patent law.

The text of §314(d) does not support a total preclusion of appellate review for §315(b) issues, and can be narrowly construed (consistent with its plain language) to avoid this result. By its plain terms, §314(d) applies only to the *Director's* decision to institute an IPR for trial "*under this section* [§314]" which the Supreme Court in *Cuozzo* held to be a reference to the Director's determination under §314(a) that the "information presented in the petition . . . shows that there is a reasonable likelihood that the petitioner would prevail . . . ." *See Cuozzo*, 136 Sup. Ct. at 2141. A narrow construction of the statutory language (as required by the strong presumption of

review) would read §314(d) just like the Supreme Court did in *Cuozzo*—to apply to the Director's §314(a) determination, and only to other issues if they implicate statutes "closely related" to §314(a). *Accord Versata*, 793 F.3d at 1319 (distinguishing between the Director's institution decision and the PTAB's final written decision).

Under *Cuozzo*'s narrow reading of the statute, §314(d) would not apply to §315(b) determinations at all, because the PTAB's timeliness determination under §315(b) is in no way "closely related" to the Director's decision under §314(a). The §314(a) determination has a close nexus to the USPTO's specialized agency expertise for adjudicating the validity of a patent; but the §315(b) timeliness finding on the other hand, is wholly unrelated to the agency's special expertise. Instead, it is more akin to a "statute of limitations" determination that is frequently made and reviewed by the judiciary. Indeed, the substantive legal standard for determining real party-in-interest or privy adopted by the USPTO is a standard borrowed from *Taylor v. Sturgill*—a Supreme Court case dealing with estoppel in a case filed under the Freedom of Information Act. *See* Office Patent Trial Practice Guide 77 Fed. Reg. at 48759.

Moreover, the USPTO itself has never viewed the §315(b) timeliness requirement as being only relevant to institution. *See, e.g.*, 37 C.F.R. §42.3 ("Jurisdiction" regulation requires compliance with statutory time periods). The

USPTO assured the public that "[a]fter institution, standing issues may still be raised during the trial." *See* Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 48680, 48695 (Aug. 14, 2012). In practice, the PTAB continues to consider §315(b) post-institution. *See, e.g.*, *Atl. Gas Light Co.*, Case IPR2013-00453, Paper 88 at 14; *Medtronic,* Case IPR2014-00488, Paper 52 at 19.

A recent PTAB opinion provided a well-reasoned explanation for why it does not have *in rem* jurisdiction over a patent. Instead, per the PTAB itself, its statutory authority is limited to deciding disputes between parties that are properly brought before it; and statutory procedures—*specifically including §315(b)*—function as restrictions on the PTAB's jurisdiction or authority to act in a particular case. *See Covidien*, Case IPR2016-001274, Paper 21 at 12-14.

Because §315(b) is a restriction on the PTAB's authority to act, then it necessarily follows that the §315(b) issue (even if it is not expressly reconsidered following institution) is necessarily bound up in the PTAB's final written decision. *See, e.g.*, *Austin Road Co. v. Occupational Safety and Health Review Comm'n*, 683 F.2d 905, 908 (5th Cir. 1982) (agency has a duty to set forth facts that establish that it is acting within its statutory authority). Any argument that characterizes §315(b) as solely an "institution" decision merely because §315(b) uses the word "institution" elevates form over substance to an extreme degree.

Without clear evidence, it cannot be presumed that Congress intended the USPTO to be completely immune from judicial review in its application of §315(b). This is true both because the §315(b) timeliness issue is wholly unrelated to the USPTO's agency expertise in examining patents,[10] and also because Congress (when it passed the Federal Courts Improvement Act) clearly expressed its strong desire to maintain uniformity and consistency in the treatment of patents through centralized judicial review to the Federal Circuit. *See* Section IV(B), *supra*.

The uniformity and consistency intended by Congress is substantially undermined when the PTAB is not subject to judicial review—even on procedural issues such as §315(b). Even though the USPTO's *Taylor* test is supposed to be "broad and flexible" (as stated by the USPTO in its Trial Practice Guide), in many cases the PTAB bends the standard to pick and choose the evidence it will consider or ignore. In this case, for example, the PTAB only looked at whether Broadcom had the right to control the related district court litigation, and refused to consider whether the District Court Defendants might be controlling (or have a right to control) the IPR. *See* Wi-Fi Op.Br. at 34-35. By comparison, in a different IPR case

---

[10] *See Barlow v. Collins*, 397 U.S. 159, 166 (1970) ("The role of the courts should, in particular, be viewed hospitably where the question sought to be reviewed does not significantly engage the agency's expertise"). *See also Dickinson v. Zurko*, 527 U.S. 150, 162-63 (1999) (recognition of agency expertise in its field of competence and availability of internal agency review better explain deference to agencies than technical distinctions in standards of review).

(filed by D-Link Systems, coincidentally) the PTAB applied the standard in exactly the opposite way—focusing only on whether a third-party was controlling the IPR, and holding that strong evidence the third-party was in fact controlling the defense of related district court litigation was *irrelevant* to whether the third party was a real party-in-interest of the petitioner. *See D-Link Sys., Inc. v. Chrimar Sys., Inc.*, Case IPR2016-01426, Paper 15 (PTAB Jan.17, 2017).

As another point of comparison, in a PTAB case with facts strikingly similar to this case—where the IPR petitioner had not itself been sued for infringement, but several of its customers had been sued more than one year prior—the PTAB permitted discovery of the indemnity agreement, considered it under the *Taylor* test, and declined to institute for trial because of the §315(b) time bar. *See General Elec. Co. v. Transdata, Inc.*, Case IPR2014-01380, Paper 15 (Nov. 12, 2014) (order permitting discovery) and Paper 34 (April 15, 2015) (order denying institution).

Given Congress's stated strong desire for uniformity in the treatment of patents, it cannot be assumed that Congress intended, with the AIA, to allow the PTAB to produce these types of inconsistent results while also being shielded from judicial review. To the contrary, Congress has long intended to provide patent consistency by ensuring appellate review by the Federal Circuit, and expressly provided for as much in the AIA. *See* 35 U.S.C. §319.

Indeed, looking at the overall statutory structure of the AIA and IPR, one of the important changes from previous *inter partes* reexamination practice was the elimination of intra-agency appeal (to the BPAI) that was previously available for *inter partes* reexamination, and providing instead for streamlined appeals to the Federal Circuit. *See* Section IV(C)(1), *supra*. By eliminating all intra-agency appeal, Congress indicated that it was attaching *heightened importance* to the availability of appellate review to the Federal Circuit, and in fact wanted to create procedures that would get patents to the Federal Circuit more efficiently and quickly. *See id.*

Moreover, the AIA legislative history contains clear evidence Congress was very concerned with protecting patent owners from harassment, undue expenses, and delay, and that §315(b) is a particularly important procedural protection for preventing delay and harassment. *See* Section IV(C)(2), *supra*. It cannot be assumed that Congress would leave the application of §315(b) to the whim of the USPTO, with no appeal to the Federal Circuit for purposes of achieving uniformity, given the importance that §315(b) and other procedural protections played in the legislative compromises that balanced the interests of various patent stakeholders. *See* Section IV(C)(2), *supra*.

Given the foregoing, the USPTO will be unable to show clear and convincing indications that Congress intended §314(d) to preclude appellate review of all

aspects of the PTAB's §315(b) timeliness determinations—which is the burden the USPTO must carry to sustain the holding of *Achates*.

### 2. The USPTO Cannot Show Clear and Convincing Indications that Congress Intended to Preclude Appellate Review of Wi-Fi One's Specific Points of Error Alleging Due Process and APA Violations.

When the Court considers the *specific* points of error raised by Wi-Fi One in this appeal, the USPTO will similarly be unable to show that Congress intended to preclude appellate review of these specific issues. This is most apparent with respect to the due process and APA points of error that Wi-Fi One has raised, challenging the fundamental fairness of the process that was used by the PTAB in this case to reach its §315(b) determination.

In this appeal, Wi-Fi One raises serious questions regarding the PTAB's process used to make the §315(b) determination in this case. Wi-Fi One challenges the PTAB's *refusal to consider* a known indemnity agreement (almost certainly the most relevant piece of evidence on the §315(b) issue in this case[11]), the PTAB's denial of all discovery to Wi-Fi One on this issue (including the PTAB's refusal to

[11] The Federal Circuit has held that, in many cases, the existence of an indemnity agreement *alone* will be sufficient for a finding of privity. *See Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed. Cir. 1991). In this case, however, the PTAB found that "[p]aying for trial expenses pursuant to indemnity normally does not establish privity or control." (A85.)

even permit Wi-Fi One to put the indemnity agreement into the record), and the PTAB's failure to provide a reasoned written decision on the §315(b) issue at all.

Wi-Fi One's points of error raise issues of constitutional due process and violations of procedural protections guaranteed by the APA. *See* Wi-Fi One Op.Br. at 36-41; Rpl.Br. at 5-6. More specifically, Wi-Fi One contends that the PTAB below: (1) failed to consider known and highly-relevant evidence, contrary to 5 U.S.C. §556(d); (2) violated Patent Owner's right to present evidence contrary to the PTAB's conclusions under 5 U.S.C. §556(e); and (3) failed to provide a reasoned written opinion as required by fundamental principles of administrative law.

As discussed in Section III(C), *supra*, courts have always read jurisdiction-limiting statutes narrowly to preserve judicial review of constitutional issues (such as due process violations) and/or challenges to the process used in making the decision (such as the material APA violations). This is true even when the ultimate decision is completely committed to agency discretion by statute. *See generally, e.g.*, *Dep't of Navy v. Egan*, 484 U.S. 518, 527-31 (1988) (even though fitness for service in the military is completely committed to the discretion of the executive as commander in chief, the Merit Service Protection Board has jurisdiction to review the *process* that is used in making the fitness-to-serve determination). *See also Fisher v. U.S.*, 402 F.3d 1167, 1177 (Fed. Cir. 2005) (*en banc*) (addressing justiciability of Tucker Act claims). The Supreme Court draws a distinction between

the agency decision itself, and the process used to make the decision. *See, e.g.*, *Bowen*, 476 U.S. at 675-76; *Lindahl*, 470 U.S. at 779.

Thus, even if the Court were to decide that the PTAB's ultimate timeliness determination under §315(b) is not subject to review, this does not preclude judicial review of procedural irregularities that taint the process used by the PTAB to make its §315(b) determination. To show otherwise, the USPTO must show clear indications that Congress intended to grant the PTAB discretion to make its §315(b) determinations in ways that violate constitutional due process, or with disregard to important procedural requirements of the APA—with no judicial oversight.

Again, the USPTO will be unable to meet this burden. When it passed the APA, Congress codified the strong presumption of judicial review; and the APA legislative history provided compelling statements of the strong evidence required to find that Congress intends to preclude appellate review for agency decisions. *See* Section III(B), *supra*. There is nothing in the text, structure, or legislative history of the AIA that provides any hint of support that Congress intended to give the PTAB *carte blanche* to trample constitutional rights or ignore the APA in connection with its §315(b) decisions.

Wi-Fi One also appealed the PTAB's denial of discovery under the facts of this case. *See* Wi-Fi Op.Br. at 36. This "procedural" or "intermediate" decision ordinarily is reviewable on appeal from a final decision of the agency. *See* 5 U.S.C.

§704. Section 314(d) should not be read to preclude appellate review of the PTAB's discovery rulings, merely because they relate to the §315(b) timeliness issue. Indeed, in many cases, discovery motion practice on this issue does not take place until after institution.

Ordinarily, Section 706 of the APA establishes the applicable standard of review for each of the procedural issues raised by Wi-Fi One. *See* 5 U.S.C. §706. *See also Dickinson*, 527 U.S. at 152 (1999). Wi-Fi One is unaware of any indication that Congress intended §314(d) to alter the ordinary standard of review, and contends that §706 should apply to all procedural issues it has raised in this appeal.

**3. The USPTO Cannot Show Clear and Convincing Indications that Congress Intended to Preclude Appellate Review of Wi-Fi One's Points of Error Challenging the PTAB's Ultimate §315(b) Determination.**

In this appeal, Wi-Fi One also challenges the USPTO's ultimate §315(b) determination, asserting that: (1) the PTAB used an erroneous legal standard to reach its determination (Wi-Fi Op.Br. at 31-35), and (2) the PTAB's findings are not supported by substantial evidence (Wi-Fi Op.Br. at 40-41). The USPTO will be unable to show clear indications that Congress intended to preclude these points of error from judicial review.

If an IPR petition is time barred, then §315(b) is a Congressional restriction on the PTAB's authority to hear that IPR petition (as the USPTO itself recognizes). *See* Section V(B)(1), *supra* (discussing *Covidien*). Like any statutory command from

Congress to an agency, the PTAB is obligated to comply. When the PTAB fails to comply with the statute for any reason—for example, by applying an erroneous legal standard or making factual findings that are not supported by substantial evidence—it exceeds the scope of its statutory authority and acts contrary to law.

The USPTO will be unable to meet its heavy burden to show clear and convincing indications of Congressional intent to preclude review of Wi-Fi One's specific points of error.

## VI. ADDITIONAL CONSIDERATIONS

### A. *Achates* Should be Overruled so that Important Legal Issues May Be Reviewed and Resolved by this Court.

The reasoning and analysis the Court provides in this case likely will have implications for reviewability of other issues not at issue here. As just one example, there is good reason to believe that the PTAB's regulations on joinder are in direct conflict with §315(b). The PTAB frequently permits time-barred parties to file untimely IPR petitions if joinder is requested at the time of filing, notwithstanding the statutory time bar of §315(b). *See, e.g. Apple, Inc. v. VirnetX, Inc.*, Case IPR2016-00063, Paper 13 at 4 (PTAB Jan. 25, 2016). In a sentence of the statute not at issue here, §315(b) states that the timeliness requirement "shall not apply to a request for joinder." The PTAB's regulation, however, suspends the timeliness requirement for otherwise untimely *IPR* petitions that are filed with a proper motion for joinder. *See* 37 C.F.R. §42.122(b).

If *Achates* is affirmed, this Court might be precluded from reviewing whether the PTAB's joinder regulation is consistent with the statute. This critical issue requires judicial review to ensure that the core goals of the AIA are not frustrated.

Indeed, because the PTAB typically denies requests for discovery on real party-in-interest and privy issues, certain cooperatives have sprung up to file IPR petitions for the benefit of its members, allowing the members to circumvent the §315(b) time bar and avoid estoppel if the IPR is unsuccessful. *See*, *e.g.*, *Unified Patents Inc. v. Dragon Intellectual Property, LLC*, Case IPR2014-01252 Paper 37 at 8-14 (PTAB Feb. 12, 2015) (denying patent owner's real party-in-interest challenge based on partial record at institution); *id*. at Paper 39 (PTAB Feb. 17, 2015) (denying patent owner's request for discovery). *See also Unified Patents Inc. v. Personalized Media Comm'ns, LLC*, Case IPR2015-00521 Paper 9 at 1 (Feb. 26, 2015) (brief filed by Unified Patents, citing the *Dragon* orders, to argue: "The Board knows Unified, and should no longer entertain mud-slinging RPII arguments . . .").

These practices currently subvert the AIA's goals of accelerating disputes over validity and protecting patent owners from delay and harassment, and may go uncorrected without judicial oversight. Surely Congress did not intend the AIA to lead to such inconsistent treatment of patent cases, given Congress's intent to promote uniformity and consistency for patents by creating this very Court.

### B. The Court Should Not be Concerned with Opening a Floodgate of Appeals if It Overrules *Achates*.

Commentators have noted that this Court may be concerned with the growing number of PTAB appeals. Although this is not appropriate for consideration under the relevant legal standards, this significant issue deserves to be addressed.

First, the statistics do not show that the Federal Circuit is unable to manage its docket, even with a growing number of PTAB appeals. A recently published empirical study shows that the Federal Circuit has not seen a statistically significant increase in the length of time appeals are pending.[12] Many of the Court's PTAB appeals also involve stayed district court litigation, so presumably many of these appeals would have arrived at this Court through a different route. Also, it is likely there are some (or many) PTAB appeals being heard by this Court from cases that should never have been instituted because the PTAB did not apply §315(b) properly. One or two opinions from this Court providing clear guidance on the substantive and procedural rules for §315(b) could serve to substantially limit the number of future PTAB appeals.

Second, if the Court is concerned that overturning *Achates* could lead to more appeals involving procedural issues, one way to manage that concern is for the Court

[12] *See* IPR Appeals: Pendency And Success Rates At Fed. Circ. (Feb. 8, 2017), https://www.law360.com/ip/articles/884916.

to hold that such procedural challenges are waived unless they are first presented to the PTAB. Since many of the procedural errors will not manifest until the final decision, this would require a party to file a motion for rehearing to present its due process and APA points of error to the PTAB in the first instance, as Wi-Fi One did below. (A252-69.) This would substantially reduce the number of such procedural appeals by giving the PTAB the chance to correct procedural errors; and it would allow this Court to dispose of procedural errors on the basis of waiver for parties that did not do so.

## CONCLUSION

In its original brief, Wi-Fi One requested that the PTAB's decisions below be vacated, and judgment entered on the §315(b) time bar given the compelling circumstantial evidence presented on this issue, and the lack of substantive rebuttal evidence from Broadcom. *See* Wi-Fi Op.Br. at 41-44. But in the alternative, Wi-Fi One requests that the PTAB's decisions below be vacated, and the cases remanded to the PTAB for further proceedings on the §315(b) issue.

Dated: February 13, 2017

Respectfully submitted,

*/s/ Donald Puckett*

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485 (facsimile)
puckett@nelbum.com

Peter J. Ayers
Law Office of Peter J. Ayers, PLLC
2200 Bowman Avenue
Austin, Texas 78703
(512) 771-3070 (telephone)

Douglas A. Cawley
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4972 (telephone)
(214) 978-4044 (facsimile)
dcawley@mckoolsmith.com

*Attorneys for Appellant,*
*Wi-Fi One, LLC*

## CERTIFICATE OF SERVICE

I, Elissa Diaz being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by NELSON BUMGARDNER PC, attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **February 13, 2017** counsel has authorized me to electronically file the foregoing **Wi-Fi One's Supplemental *En Banc* Brief** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Dominic E. Massa, Esq.
Kevin Goldman, Esq.
Zachary Piccolomini, Esq.
Katie Saxton, Esq.
Wilmer Cutler Pickering Hale and Dorr LLLP
60 State Street
Boston, Massachusetts 02109
617-526-6000 (telephone)
dominic.massa@wilmerhale.com
kevin.goldman@wilmerhale.com
zachary.piccolomini@wilmerhale.com
kate.saxton@wilmerhale.com

Nathan K. Kelley, Solicitor
Benjamin T. Hickman
Melissa N. Patterson
Scott Weidenfeller
U.S. Patent and Trademark Office
Office of the Solicitor
PO Box 1450, Mail Stop 8
Alexandria, VA 22313
571-272-9035
nathan.kelley@uspto.gov
benjamin.hickman@uspto.gov
melissa.patterson@usdoj.gov
scott.weidenfeller@uspto.gov

Paper copies will also be mailed to the above principal counsel on this date. Any Counsel for Amicus Curiae, appearing at the time of this filing will be served only via CM/ECF notice.

Thirty paper copies will be filed with the Court within the time provided in the Court's rules.

February 13, 2017

*<u>/s/ Elissa Diaz</u>*
Counsel Press

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that I am an attorney of record on behalf of Appellants Wi-Fi One, LLC and that I personally used the “word count” feature of Microsoft Word 2010 to count the words in the foregoing Brief of Appellant Wi-Fi One, LLC identified in the Rule 32(a)(7)(B)(iii) and determined that the foregoing brief contains 13,957 words and is therefore in compliance with Rule 32(a)(7)(B)(i).

In addition, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

By: */s/ Donald Puckett*
G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111 (telephone)
(817) 377-3485 (facsimile)
puckett@nelbum.com