**Nos. 2015-1944, -1945, -1946**

**IN THE**

# United States Court of Appeals

**FOR THE FEDERAL CIRCUIT**

WI-FI ONE, LLC,
*Appellant*,

v.

BROADCOM CORPORATION,
*Appellee*,

v.

MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE
*Intervenor.*

Appeals from the U.S. Patent and Trademark Office,
Patent Trial and Appeal Board in IPR2013-601, IPR2013-602, IPR2013-636

**BRIEF FOR ELM 3DS INNOVATIONS, LLC AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT ON REHEARING EN BANC**

Jeffrey A. Lamken
*Counsel of Record*
Lucas M. Walker
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jlamken@mololamken.com

*Counsel for Amicus Curiae Elm 3DS Innovations, LLC*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Wi-Fi One, LLC **v.** Broadcom Corp.

Case No. 2015-1944, -1945, -1946

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ☒ (amicus) ☐ (name of party)

Elm 3DS Innovations, LLC

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Elm 3DS Innovations, LLC | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

MoloLamken LLP: Jeffrey A. Lamken, Lucas M. Walker

2/23/2017
Date

/s/ Jeffrey A. Lamken
Signature of counsel

Please Note: All questions must be answered

Jeffrey A. Lamken
Printed name of counsel

cc: all counsel via ECF

Reset Fields

# TABLE OF CONTENTS

Page

INTEREST OF *AMICUS CURIAE* .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

A. Immunity From Judicial Review Has Emboldened The PTO To Flout Statutory Limits On Its Authority .......... 4

B. The Inter Partes Review Statute Is Properly Read To Allow Judicial Review Of The Agency's Authority .......... 10

1. Section 314(d) Bars Review Only Of Determinations "Under This Section" .......... 10

2. Judicial Review Is Available Where The PTO Acts Outside Its Statutory Limits—Including Statutory Time Limits .......... 13

3. Section 315(b)'s One-Year Deadline Is A Limit On Agency Authority .......... 15

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015) ........ *passim*

*Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016) ........ *passim*

*Elm 3DS Innovations, LLC v. Lee*, No. 1:16-cv-1036 (E.D. Va. filed Aug. 12, 2016)........ 15

*Elm 3DS Innovations, LLC v. Lee*, No. 1:16-cv-1036 (E.D. Va. Dec. 2, 2016), ECF No. 61 ........ 15

*GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309 (Fed. Cir. 2015)........ 12

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373 (Fed. Cir. 2014) ........ 12

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ........ 16

*Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329 (Fed. Cir. 2016) ........ 2, 17

## STATUTES

5 U.S.C. § 706(2)(C) ........ 13, 16

5 U.S.C. § 6103 ........ 5, 12

5 U.S.C. § 6103(b)........ 6

5 U.S.C. § 6103(c)........ 5

35 U.S.C. § 21 ........ 5, 12

35 U.S.C. § 21(a)........ 6

35 U.S.C. § 21(b)........ 5, 7

35 U.S.C. § 261 ........ 9

35 U.S.C. § 282(b)(2)........ 14

35 U.S.C. § 282(b)(3) ........................................................................ 14

35 U.S.C. § 311 ........................................................................ 3

35 U.S.C. § 312 ........................................................................ 3,11

35 U.S.C. § 313 ........................................................................ 3

35 U.S.C. § 314 ........................................................................ 3, 10, 11, 12

35 U.S.C. § 314(a) ........................................................................ 10, 11

35 U.S.C. § 314(d) ........................................................................ *passim*

35 U.S.C. § 315 ........................................................................ 3,11

35 U.S.C. § 315(b) ........................................................................ *passim*

35 U.S.C. § 316 ........................................................................ 3

35 U.S.C. § 317 ........................................................................ 3

35 U.S.C. § 318 ........................................................................ 3

35 U.S.C. § 319 ........................................................................ 3

35 U.S.C. § 321(b) ........................................................................ 14

35 U.S.C. § 321(c) ........................................................................ 14

35 U.S.C. § 324(e) ........................................................................ 14

**REGULATIONS**

37 C.F.R. § 1.10(a) ........................................................................ 6

37 C.F.R. § 1.10(i) ........................................................................ 6

37 C.F.R. § 42.6(b)(1) ........................................................................ 7

37 C.F.R. § 42.6(b)(2) ........................................................................ 7

**PTO MATERIALS**

77 Fed. Reg. 48,756 (Aug. 14, 2012) ........................................................................ 7

*Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*,
Case No. IPR2016-00386, Paper 14 (PTAB July 1, 2016). ............................8, 15

U.S. Patent & Trademark Office, *Shutdown of Certain Electronic Systems of the United States Patent and Trademark Office from Tuesday, December 22, 2015 through Thursday, December 24, 2015* (Dec. 23, 2015), https://www.uspto.gov/web/offices/com/sol/og/2016/week03/TOC.htm#ref9 ..........................................................6

**OTHER MATERIAL**

Bonnie Berkowitz, *Why Few People Dare Eat the Boss's M&Ms*,
Washington Post (Feb. 13, 2017),
https://www.washingtonpost.com/graphics/health/candy-dish ............................5

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus* Elm 3DS Innovations, LLC owns a portfolio of patents for stacked-circuit technology issued to its president, inventor Glenn Leedy. Some of those patents have been challenged in inter partes review proceedings where the petitions were filed outside the one-year window afforded by 35 U.S.C. § 315(b). The PTO instituted review nonetheless. It deemed the petitions timely because the PTO's Director had declared that certain days, which were not otherwise federal holidays, would be considered federal holidays for purposes of determining timeliness at the PTO. But the PTO has no power to create federal holidays; only Congress or the President can. Elm challenged the PTO Director's rule declaring new federal holidays under the Administrative Procedure Act, but the district court dismissed, holding that any review must come from this Court. Elm thus has a keen interest in seeing that judicial review is available to enforce § 315(b)'s timeliness requirement.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Elm submits this brief to offer a distinct perspective on § 315(b)'s timeliness requirement. Many cases involving § 315(b)'s one-year deadline raise case-

---

[1] This Court's January 4, 2017 Order granting rehearing en banc authorizes the filing of *amicus* briefs without consent and leave of Court. No party or party's counsel authored this brief in whole or part, and no person other than *amicus* and its counsel contributed money intended to fund the preparation or submission of this brief.

specific questions about how the PTO applied the deadline in light of particular facts.[2] Elm, however, has been subjected to an inter partes review that was undeniably filed more than one year after the district-court infringement action was commenced. The PTO deemed the filing timely nonetheless because the PTO Director purported to *extend* the statutory one-year deadline. In particular, the PTO Director declared that specific days, which are *not* federal holidays, would be treated by the PTO as federal holidays so as to extend the deadline. No law gives the Director authority to create new federal holidays.

The PTO's disregard for the limits Congress imposed on inter partes review illustrates what happens when an agency believes it is immune from judicial review. Rather than acting within the confines of the law, the agency will tend to act without regard to legal requirements, to the detriment of many subject to the agency's authority. Neither statutory text nor precedent requires that the PTO enjoy such unchecked power. Indeed, the Supreme Court expressly disclaimed that result in *Cuozzo Speed Technologies, LLC v. Lee*. The Court said in no uncertain terms that the PTO is not free to act "outside its statutory limits" because a reviewing court has authority to address such "shenanigans," including attempts to cir-

[2] For example, some cases involve whether the petitioner is a privy of a party that has been sued for infringement. The existence or absence of privity may determine whether § 315(b)'s one-year deadline was violated in a given case. *See Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652, 653-54 (Fed. Cir. 2015); *Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329, 1333 (Fed. Cir. 2016).

cumvent timeliness requirements. 136 S. Ct. 2131, 2141-42 (2016). The Court assured that affected parties may obtain review "in the context of [a] § 319" appeal from the PTO's final decision "and under the Administrative Procedure Act." *Id.* at 2142. As Elm has experienced, however, district courts have refused to entertain challenges to PTO overreach under the APA. If the Supreme Court's representation in *Cuozzo* is to be respected, this Court must provide the judicial review needed to ensure the PTO stays within the boundaries of the law.

## <u>ARGUMENT</u>

In creating inter partes review, Congress gave the PTO authority to reevaluate—and potentially cancel—previously issued patents in adversary proceedings. *See* 35 U.S.C. §§ 311-319. But Congress also forbade the agency from initiating such review once parallel federal-court litigation has reached a certain stage. In particular, § 315(b) commands that "inter partes review *may not be instituted* if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." § 315(b) (emphasis added). That one-year time limit reflects Congress's judgment that the potential for PTO action on matters already before the courts must at some point yield to judicial proceedings.

Nothing in the statute prevents this Court from overturning PTO actions that disregard that limit. In *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d

652 (Fed. Cir. 2015), the Court reached the opposite conclusion. In that case, the Court construed § 314(d)—which provides that a "determination . . . whether to institute an inter partes review under this section shall be final and nonappealable"—as barring judicial review of the PTO's "assessment of the time-bar of § 315(b)." *Id.* at 658. But the Supreme Court has since clarified that § 314(d) does *not* prevent judicial review where the PTO "act[s] outside its statutory limits," including its statutory time limits. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2141 (2016). Courts retain authority to address such "shenanigans." *Id.* at 2142.

Elm submits this brief to apprise the Court of one such PTO "shenanigan." The PTO declared petitions for inter partes review of Elm's patents to be timely—even though they were filed outside § 315(b)'s one-year window—because the PTO Director purported to extend the deadline by declaring new federal holidays. As Elm will explain, the statutory text and precedent make clear that such agency action remains subject to judicial review. *Achates*'s contrary holding should be overruled.

### A. Immunity From Judicial Review Has Emboldened The PTO To Flout Statutory Limits On Its Authority

It is a basic truth of human nature that people are less likely to follow the rules when they think there will be no accountability. A driver is more apt to speed when no cops are in sight. The class clown will wait until the teacher's back is turned before lobbing a spitball. A coworker is more likely to empty the candy jar

when no one is around.[3] Even well-intentioned government officials are not immune. Recognizing that—and recognizing that better decisions generally result when agencies must defend their judgments—federal law has long subjected the exercise of executive power to judicial review.

Experience under *Achates* has proved the wisdom of that approach. Immunized from judicial review, the PTO has flouted § 315(b)'s one-year time limit—going so far as to claim the power to *declare ad hoc federal holidays*. But there can be little dispute that the PTO has no such power.

1. Federal law clearly sets forth how PTO deadlines must be administered. For example, it is a familiar rule that, whenever a deadline "falls on Saturday, Sunday, or a Federal holiday within the District of Columbia," the deadline will roll over to "the next succeeding secular or business day." 35 U.S.C. § 21(b).

Neither 35 U.S.C. § 21, nor any other statute, empowers the PTO or its Director to create federal holidays. Congress has reserved that power to itself and the President. A separate statute, 5 U.S.C. § 6103, specifies the days that constitute "legal public holidays" under federal law, including holidays unique to the District of Columbia and its environs, *see* § 6103(c) (Inauguration Day). Under that statute,

[3] *See* Bonnie Berkowitz, *Why Few People Dare Eat the Boss's M&Ms*, Washington Post (Feb. 13, 2017), https://www.washingtonpost.com/graphics/health/candy-dish ("Not once in our experiment did the last piece [of candy] disappear while Kevin was sitting by the jar.").

other federal holidays may be declared "by Federal statute or Executive order." § 6103(b). But no agency or officer is empowered to establish such holidays.

2. The PTO, however, has brushed aside that clear statutory scheme. On December 22, 2015, the PTO experienced a power outage at its Alexandria headquarters that impaired its electronic filing system for several days. *See* U.S. Patent & Trademark Office, *Shutdown of Certain Electronic Systems of the United States Patent and Trademark Office from Tuesday, December 22, 2015 through Thursday, December 24, 2015* (Dec. 23, 2015), https://www.uspto.gov/web/offices/com/sol/og/2016/week03/TOC.htm#ref9 ("*PTO Federal Holiday Rule*"). While certainly an unusual situation, federal law and PTO regulations provided a ready solution.

Although filings generally must be *received* by the agency by their due date, § 21(a) authorizes the PTO to establish—and the PTO in fact has established—a "mailbox" rule. Under that rule, a document is "considered filed in the Office on the date on which it was *deposited* with the United States Postal Service." § 21(a) (emphasis added); *see* 37 C.F.R. § 1.10(a). The statute even addresses the PTO's authority to deem a filing timely if a postal emergency prevents timely mailing.[4] Thus, parties with filings due during the outage could mail their documents on the

[4] In that event, the Director may consider a paper filed on the date it "*would have been deposited* with the United States Postal Service but for postal service interruptions or emergencies designated by the Director." 35 U.S.C. § 21(a) (emphasis added); *see* 37 C.F.R. §1.10(i).

due date and still have them considered timely. PTO regulations and guidance expressly recognized that solution. While PTO regulations generally require inter partes review filings to be made "electronically via the Internet," they permit non-electronic filings when "authorized." 37 C.F.R. § 42.6(b)(1), (2). The PTO's trial practice guide explains that "[c]ircumstances where a paper filing may be warranted include those occasions *where the Office's electronic filing system is unable to accept filings*." 77 Fed. Reg. 48,756, 48,758 (Aug. 14, 2012) (emphasis added).

The Director, however, did not simply authorize parties to meet their deadlines by filing by mail. Instead, she purported to extend even *statutory* deadlines by declaring that three additional days would be treated as *new federal holidays*. Citing the power failure in Virginia, the Director announced that the PTO would consider December 22, 23, and 24 each to be a "Federal holiday within the District of Columbia" for purposes of § 21(b). *PTO Federal Holiday Rule*. As a result, she declared, any filing "due on these days" would be "considered as timely" if filed electronically "on the next succeeding business day," *i.e.*, December 28, 2015. *Id.* The Director cited no statute empowering her to alter statutory deadlines by declaring federal holidays—because none exists.

3. Elm has suffered the consequences of that disregard of the law. Elm had earlier sued a number of defendants for infringing its patents, serving the complaint on December 24, 2014. Under § 315(b), the defendants were required to file

any petition for inter partes review within one year—no later than December 24, 2015. The defendants failed to do so. They neither filed nor mailed their petitions by that date. Instead, they filed their petitions electronically on December 28, 2015—four days after the statutory deadline had expired.

That posed no obstacle for the PTO. It declared the petitions timely based on the Director's declaration that December 22-24 were "federal holidays" that rolled the statutory deadline to December 28. *Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, Case No. IPR2016-00386, Paper 14 at 4-5 (PTAB July 1, 2016). The PTO then instituted (now pending) inter partes review of the patents. *See id.* at 40.[5] In doing so, the PTO did not simply extend a party's filing deadline. The PTO extended its *own* powers. Speaking directly to the PTO, federal law specifies that "[a]n inter partes review *may not be instituted*" if the petition is filed outside the one-year window. 35 U.S.C. § 315(b) (emphasis added). Here, the PTO instituted just such a proceeding by purporting to declare new holidays it has no authority to create.

4. The lesson of Elm's experience is clear: Unreviewable power emboldens agencies to assert authority that Congress withheld, and that they would not assert if they faced the prospect of judicial review. It is hard to imagine that

[5] The PTO issued similar timeliness and institution decisions with respect to each challenged patent in case numbers IPR2016-00387, IPR2016-00388, IPR2016-00389, IPR2016-00390, IPR2016-00391, IPR2016-00393, IPR2016-00394, and IPR2016-00395.

the PTO Director would have claimed the fictional power to declare new federal holidays and extend statutory deadlines—instead of simply telling parties to timely file by mail—had she not believed that *Achates* made her determination unreviewable.

Unreviewable agency power to adjudicate issues invades not just this Court's function, but Congress's as well. Inter partes review is strong medicine: It allows a challenger to seek cancellation of previously issued patent claims—destroying property rights, *see* §261—under a lower standard of proof, and a more favorable claim-construction standard, than the challenger would enjoy in district-court litigation. *See Cuozzo*, 136 S. Ct. at 2144. That carries an obvious risk of abuse: An infringement defendant would have every incentive to collaterally attack the patent-in-suit through a parallel inter partes review the moment the defendant's litigation position appears vulnerable—exposing the patent owner to duplicative proceedings and potentially wasting significant judicial resources. It also threatens to extend agency adjudicatory authority at the expense of the courts'. Congress reasonably sought to mitigate those problems by allowing the PTO to conduct inter partes review of patents asserted in litigation, *but only* if the challenger promptly seeks review. After one year, Congress determined, the PTO must stand aside and allow the patent's validity to be resolved in a single, judicial forum.

Section 315(b)'s one-year time limit is thus integral to the balance Congress struck between agency and court review of issued patents. Leaving its enforcement solely in the hands of the PTO—whose authority Congress enacted § 315(b) to restrain—threatens to destroy that careful balance, to the detriment of both patent owners and the courts. Fortunately, as explained below, the statute need not be read to give the PTO such unchecked power.

### B. The Inter Partes Review Statute Is Properly Read To Allow Judicial Review Of The Agency's Authority

Properly understood, the inter partes review statute does not bar judicial review of the PTO's compliance with the one-year time limit set forth in § 315(b).

#### 1. *Section 314(d) Bars Review Only Of Determinations "Under This Section"*

In *Achates*, this Court interpreted § 314(d) as barring review of timeliness determinations. 803 F.3d at 657. But § 314(d) merely states that "[t]he determination . . . whether to institute an inter partes review *under this section* shall be final and nonappealable." § 314(d) (emphasis added). By its terms, the provision makes nonappealable only a determination made *under § 314*. It thus forecloses appeal of the PTO's "determin[ation]" under § 314(a) "that the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." § 314(a).

Section 314(d) does not, however, purport to foreclose judicial review of a petition's timeliness. Timeliness determinations are not made "under" § 314; they are made under § 315. And timeliness has nothing to do with the § 314 inquiry of whether a petitioner is likely to succeed in proving a claim unpatentable. Rather, timeliness goes to the PTO's authority to entertain the challenge in the first place. As such, it is subject to this Court's review.

The Supreme Court's decision in *Cuozzo* makes that clear. There, the Court recognized the need to focus on "§ 314(d)'s own text." *Cuozzo*, 136 S. Ct. at 2141. The Court emphasized that the statutory text merely "bar[s] appeals of 'determinations . . . to initiate an inter partes review *under this section*.'" *Cuozzo*, 136 S. Ct. at 2141 (emphasis supplied by the Supreme Court). It does not purport to bar review of matters—such as timeliness under § 315(b)—"that reach, in terms of scope and impact, well beyond 'this section.'" *Id.*

To be sure, the Supreme Court concluded that § 314(d) barred review with respect to a requirement found outside § 314—namely, § 312's requirement that a petition for inter partes review state "'with particularity'" the grounds for challenging each patent claim. *Cuozzo*, 136 S. Ct. at 2139. But that was because the issue fell within § 314 *in substance*: "Cuozzo's claim that [the] petition was not pleaded 'with particularity' under § 312," the Court explained, "is little more than a challenge to *the Patent Office's conclusion, under § 314(a)*, that the 'information

presented in the petition' warranted review." *Id.* at 2142 (emphasis added). Consequently, matters bearing on or incorporated into determinations of likelihood of success under § 314 are off-limits. But timeliness under § 315(b) is unrelated to whether the petitioner is likely to succeed in proving a claim unpatentable. It thus falls outside § 314(d)'s ambit. That is all the more true where, as in Elm's experience, the question of timeliness is governed by statutes entirely separate from the inter partes review statute, such as 35 U.S.C. § 21 and 5 U.S.C. § 6103.

In *Achates*, this Court refused to limit § 314(d)'s appeal bar to determinations made (in form or substance) under § 314. It criticized that reading as "too crabbed" and "contradicted by this court's precedent." 803 F.3d at 658. *Cuozzo* makes clear that that reading is *not* too crabbed. Indeed, the Court indicated that "the presumption favoring [judicial] review" calls for a narrow reading of § 314(d). 136 S. Ct. at 2141.

*Cuozzo* also clarifies that *Achates* erred in relying on this Court's precedents from a different context. *Achates* invoked two decisions in which this Court held that § 314(d), along with its post-grant review counterpart, precludes judicial review of PTO decisions *not* to institute review on timeliness grounds. *See* 803 F.3d at 658 (citing *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373 (Fed. Cir. 2014), and *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309 (Fed. Cir. 2015)). In *Cuozzo*, however, the Supreme Court explained that decisions *not* to in-

stitute are unreviewable *irrespective* of § 314(d). *See* 136 S. Ct. at 2140. Cases involving non-institution decisions thus have no bearing on the proper scope of § 314(d).

### 2. *Judicial Review Is Available Where The PTO Acts Outside Its Statutory Limits—Including Statutory Time Limits*

Far from suggesting the complete absence of review, *Cuozzo* underscores its availability. That decision emphasizes that § 314(d), properly understood, does not "enable the agency to act outside its statutory limits." 136 S. Ct. at 2141. When the PTO acts beyond its statutory limits—that is, when it engages in "shenanigans"—"reviewing courts" remain free "to 'set aside agency action' that is . . . 'in excess of statutory jurisdiction.'" *Id.* at 2142 (quoting 5 U.S.C. § 706(2)(C)). Acting outside statutory *time* limits is precisely the sort of "shenanigan" the Court had in mind.

Justice Alito's separate opinion in *Cuozzo* reinforces that understanding. Justice Alito expressed concern that an over-expansive reading of § 314(d) might allow the PTO to disregard, with impunity, statutory limits on its review of issued patents. 136 S. Ct. at 2154-55 (Alito, J., concurring in part and dissenting in part). He focused specifically on the statute's timeliness requirements. Failure to enforce § 315(b)'s one-year time limit, he explained, would "expos[e] the patent owner to the burden of multiplicative proceedings" and allow challengers to "exploit" the PTO's power in a way contrary to Congress's design. *Id.* at 2154. Similar conse-

quences would result with respect to post-grant review, which is subject to a "no appeal" provision materially identical to §314(d). *See* §324(e). In post-grant review, the PTO may review patents on grounds unavailable in inter partes review, such as indefiniteness under §112. *See* §321(b); §282(b)(2), (3); *Cuozzo*, 136 S. Ct. at 2154 (opinion of Alito, J.). But post-grant review is permitted only if the petition is filed within "9 months after the date of the grant of the patent." §321(c). If that time limit were immune from judicial review, Justice Alito observed, the PTO could "grossly exceed [its] authority" by, for example, cancelling a patent claim as indefinite years after the patent was issued. *Cuozzo*, 136 S. Ct. at 2155 (opinion of Alito, J.).

The *Cuozzo* majority, however, insisted that its ruling would not "enable the agency to act outside its statutory limits" in that manner. 136 S. Ct. at 2141. It expressly rejected the notion that a PTO decision "canceling a patent claim for 'indefiniteness under §112'" outside the nine-month window for post-grant review would escape judicial review. *Id.* at 2141-42. It characterized such a time-barred action as a "shenanigan" that is "properly reviewable" on appeal from a final PTO decision under "§319 and under the Administrative Procedure Act." *Id.* at 2142. If the nine-month time limit applicable to post-grant review is subject to judicial review, then so must be the one-year time limit applicable to inter partes review.

District courts, however, have refused to entertain actions under the APA alleging that the PTO has exceeded its authority in the inter partes review context. Indeed, they have even refused to entertain challenges to *rules* bearing on timeliness issues. For example, Elm filed an action under the Administrative Procedure Act challenging the Director's rule declaring new federal holidays. *Elm 3DS Innovations, LLC v. Lee*, No. 1:16-cv-1036 (E.D. Va. filed Aug. 12, 2016); *see Cuozzo*, 136 S. Ct. at 2142 (noting that "shenanigans" may be reviewed "under the Administrative Procedure Act"). The district court dismissed that action, however, ruling—as "courts in [its] district have repeatedly" done—that any review must come "solely [i]n the Federal Circuit." *Elm 3DS*, No. 1:16-cv-1036 (E.D. Va. Dec. 2, 2016), ECF No. 61, at 8-9.[6]

If *Cuozzo*'s promise of agency accountability is to be realized, then, judicial review must be available in *this* Court on appeal from the PTO's final decision in an inter partes review.

3. *Section 315(b)'s One-Year Deadline Is A Limit On Agency Authority*

In *Achates*, this Court reasoned that § 315(b)'s one-year time limit need not be subject to judicial review because, rather than being "jurisdictional," it is a mere filing deadline "requiring that the parties take certain procedural steps at certain

[6] Elm's appeal is currently pending before this Court in case No. 17-1572 (docketed Feb. 3, 2017).

specified times." 803 F.3d at 658. But §315(b) is plainly a statutory limit on *the agency's* authority to act. Contrary to *Achates*, §315(b) is not directed to the parties. It is directed to the PTO itself: It declares that "[a]n inter partes review *may not be instituted*" if the petition is filed outside the one-year window—and it is the PTO, not the parties, that "institutes" review. §315(b) (emphasis added). The statute thus by its terms denies the PTO authority to conduct inter partes review based on an untimely petition. Under *Cuozzo*, that should resolve this case: This Court is permitted to review whether the PTO has strayed "outside . . . statutory limits" on its authority to act. 136 S. Ct. at 2141.

Even if the "jurisdictional" label were relevant, a directive that limits *an adjudicator's power to entertain a case* is properly characterized as "jurisdictional." *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). This Court plainly has power to set aside PTO action "'in excess of statutory jurisdiction'" or that otherwise falls "outside [the agency's] statutory limits." *Cuozzo*, 136 S. Ct. at 2141-42 (quoting 5 U.S.C. §706(2)(C)).

At the very least, §314(d) does not preclude judicial review of issues that are well divorced from Congress's grant of authority to the PTO. *See Cuozzo*, 136 S. Ct. at 2141 (declining to read §314(d) as barring review of issues "that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond 'this section'"). Wheth-

er a particular day is or is not a federal holiday assuredly falls outside the PTO's authority. Congress gave agencies no authority to declare new federal holidays. Any agency decision resting on the contrary proposition is properly subject to judicial review.

## CONCLUSION

This Court should overrule *Achates* and hold that the timeliness of a petition for inter partes review is subject to judicial review.

February 23, 2017

Respectfully submitted,

/s/ Jeffrey A. Lamken

Jeffrey A. Lamken
*Counsel of Record*
Lucas M. Walker
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jlamken@mololamken.com

*Counsel for Amicus Curiae Elm 3DS Innovations, LLC*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 3,940 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

February 23, 2017 /s/ Jeffrey A. Lamken

**CERTIFICATE OF SERVICE**

I certify that today, February 23, 2017, I electronically filed the foregoing Brief for Elm 3DS Innovations, LLC as *Amicus Curiae* in Support of Appellant on Rehearing En Banc with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. Two paper copies will be mailed to the below principal counsel within the time provided by this Court’ s rules. Any counsel for *amici curiae* appearing at the time of this filing will be served only via CM/ECF.

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817-377-9111 (telephone)
puckett@nelbum.com

*Counsel for Appellant Wifi One, LLC*

Dominic E. Massa
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, Massachusetts 02109
617-526-6000 (telephone)
dominic.massa@wilmerhale.com

*Counsel for Appellee Broadcom Corp.*

Nathan K. Kelley, Solicitor
U.S. Patent & Trademark Office
Office of the Solicitor
PO Box 1450, Mail Stop 8
Alexandria, VA 22313
517-272-9035 (telephone)
nathan.kelley@uspto.gov

*Counsel for Intervenor Michelle Lee*

Thirty paper copies will be filed with the Court within the time provided by the Court's rules.

February 23, 2017 /s/ Jeffrey A. Lamken