**Nos. 2015-1944, -1945, -1946**

# United States Court of Appeals for the Federal Circuit

WI-FI ONE, LLC,

*Appellant,*

v.

BROADCOM CORPORATION,

*Appellee,*

MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE,

*Intervenor.*

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2013-00601, IPR2013-00602, IPR2013-00636*

## BRIEF OF INTELLECTUAL PROPERTY OWNERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY

KEVIN H. RHODES, *President*
STEVEN W. MILLER, *Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
1501 M Street, N.W., Ste. 1150
Washington, D.C. 20005
(202) 507-4500

GREGORY A. CASTANIAS
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

*Of counsel:*

DAVID B. COCHRAN
JOHN A. MARLOTT
I. SASHA MAYERGOYZ
JONES DAY

*Counsel for Amicus Curiae Intellectual Property Owners Association*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

WI-FI ONE, LLC **v.** BROADCOM CORPORATION

Case Nos. 2015-1944, -1945, -1946

**CERTIFICATE OF INTEREST**

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☐ (appellee) ☒ (amicus) ☐ (name of party)

Intellectual Property Owners Association

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held Companies that own 10 % or more of stock in the party |
|---|---|---|
| Intellectual Property Owners Association | None | None |
| | | |
| | | |
| | | |
| | | |

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

none

February 22, 2017
Date

*/s/ Gregory A. Castanias*
Signature of counsel

Please Note: All questions must be answered

Gregory A. Castanias
Printed name of counsel

cc:

# TABLE OF CONTENTS

***Page***


CERTIFICATE OF INTEREST .......... i

TABLE OF AUTHORITIES .......... iii

INTEREST OF *AMICUS CURIAE* .......... 1

SUMMARY OF THE ARGUMENT .......... 2

ARGUMENT .......... 3

I. JUDICIAL REVIEW OF INSTITUTION DECISIONS IS AVAILABLE TO ENSURE THE PATENT OFFICE'S COMPLIANCE WITH THE STATUTORY LIMITATIONS ON THE DIRECTOR'S DISCRETION TO INSTITUTE *INTER PARTES* REVIEW .......... 3

A. The Supreme Court's Settled Precedent Establishes a Strong Presumption That Agency Action Is Reviewable Under the Administrative Procedure Act .......... 4

B. Section 314(d) Does Not Overcome the Presumption of Judicial Review .......... 8

1. Section 314 Speaks Only to the Director's Discretionary Determination of Whether to Institute an *Inter Partes* Review, Whereas Section 315(b) Imposes a Compulsory Limit on the Director's Statutory Authority .......... 8

2. *Achates* Should Be Overruled .......... 12

II. JUDICIAL REVIEW OF INSTITUTION DECISIONS FOR COMPLIANCE WITH THE STATUTE HONORS THE LEGISLATIVE STRUCTURE OF THE AIA, AND THE SEPARATION OF POWERS BETWEEN CONGRESS AND THE EXECUTIVE .......... 14

CONCLUSION .......... 16

APPENDIX

# TABLE OF AUTHORITIES

***Page(s)***

**CASES**

*Abbott Labs. v. Garner*,
387 U.S. 136 (1967)....................4, 7, 9, 16

*Achates Reference Publ'g, Inc. v. Apple Inc.*,
803 F.3d 652 (Fed. Cir. 2015)....................2, 12, 13

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984)....................11

*Bowen v. Mich. Acad. of Family Physicians*,
476 U.S. 667 (1986)....................4, 10, 14

*Brownell v. We Shung*,
352 U.S. 180 (1956)....................16

*Califano v. Sanders*,
430 U.S. 99 (1977)....................10

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)....................7, 15

*Cuozzo Speed Techs., LLC v. Lee*,
136 S. Ct. 2131 (2016)....................*passim*

*Dunlop v. Bachowski*,
421 U.S. 560 (1975)....................5, 13

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
527 U.S. 627 (1999)....................7

*Gutierrez de Martinez v. Lamagno*,
515 U.S. 417 (1995)....................11, 15

*Hanauer v. Reich*,
82 F.3d 1304 (4th Cir. 1996) ........................................................................13

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)..........................................................................................8

*Kucana v. Holder*,
558 U.S. 233 (2010)........................................................................................11

*Lindahl v. OPM*,
470 U.S. 768 (1985)....................................................................................6, 12

*Mach Mining, LLC v. E.E.O.C.*,
575 U.S. ___, 135 S. Ct. 1645 (2015)........................................................*passim*

*Reilly v. OPM*,
571 F.3d 1372 (Fed. Cir. 2009) ......................................................................6

*Rusk v. Cort*,
369 U.S. 367 (1962)..........................................................................................7

*Scroggins v. United States*,
184 Ct. Cl. 530, 397 F.2d 295 (1968)..............................................................8

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (Fed. Cir. 2015) ......................................................................6

**STATUTES**

35 U.S.C. § 312(a)(3).............................................................................................5

35 U.S.C. § 314(a) ...............................................................................................8

35 U.S.C. § 314(d) ........................................................................................*passim*

35 U.S.C. § 315(b) .......................................................................................*passim*

35 U.S.C. § 316(a)(1)-(13)...................................................................................14

35 U.S.C. § 319 ..................................................................................................11

Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(D) ........................................7

**OTHER AUTHORITIES**

Fed. Cir. R. 29 ..........................................................................................................1

Fed. R. App. 29 ..........................................................................................................1

S. Rep. No. 79-752 (1945) ....................................................................................10, 14

Stephen G. Breyer et al., Administrative Law and Regulatory Policy
777 (6th ed. 2006)......................................................................................................8

Intellectual Property Owners Association (IPO) submits this brief as an *amicus curiae* pursuant to Fed. R. App. 29, Fed. Cir. R. 29, and paragraph 5 of the Court's Order dated January 4, 2017, authorizing *amicus* briefs in this case. IPO submits this brief in support of judicial review for compliance with the statutory prerequisites for *Inter Partes* Review under the Leahy-Smith America Invents Act (AIA). It takes no position on the underlying merits of the parties' appeal.

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* IPO is an international trade association representing companies and individuals in all industries and fields of technology that own or are interested in intellectual property rights.[1] IPO's membership includes roughly 200 companies and more than 12,000 individuals who are involved in the association either through their companies or as an inventor, author, executive, law firm, or attorney members. Founded in 1972, IPO represents the interests of all owners of intellectual property. IPO regularly represents the interests of its members before Congress and the U.S. Patent and Trademark Office and has filed *amicus curiae* briefs in this Court and other courts on significant issues of intellectual property

[1] No counsel for a party authored this brief in whole or in part, and no such counsel of party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the *amicus curiae* or its counsel made a monetary contribution to its preparation or submission. IPO files this brief in accordance with the Order issued on January 4, 2017, which states that briefs may be filed without consent or leave of the court.

law. The members of IPO's Board of Directors, which approved the filing of this brief, are listed in the Appendix.[2]

## **SUMMARY OF THE ARGUMENT**

IPO's *amicus* brief addresses the single question posed by the Court's January 4, 2017 Order, as follows:

This court should overrule *Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015) and hold that judicial review is available for a patent owner to challenge the Patent Office's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b) governing the filing of petitions for *inter partes* review. The Supreme Court has long held that there is a strong presumption that agency action is reviewable, and Congress's decision to include, in the AIA, a mandatory timeliness requirement in section 315, immediately following section 314(d)'s "No Appeal" provision, strongly indicates that Congress meant for there to be reviewable limits upon the Patent Office Director's power to institute *inter partes* review. Accordingly, the strong presumption in favor of appellate review of the Patent Office's timeliness decisions is not overcome by section 314(d).

[2] IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

# ARGUMENT

## I. JUDICIAL REVIEW OF INSTITUTION DECISIONS IS AVAILABLE TO ENSURE THE PATENT OFFICE'S COMPLIANCE WITH THE STATUTORY LIMITATIONS ON THE DIRECTOR'S DISCRETION TO INSTITUTE *INTER PARTES* REVIEW

"Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. ___, 135 S. Ct. 1645, 1651 (2015). In the AIA, Congress directed, in absolute, non-discretionary terms, that "[a]n *inter partes* review may not be instituted" if, *inter alia*, "the petition requesting the proceeding" is untimely filed. 35 U.S.C. § 315(b). The "No Appeal" provision that appears in the preceding section of the AIA, 35 U.S.C. § 314(d), provides only that "[t]he determination by the Director whether to institute an *inter partes* review under this section shall be final and unreviewable." That section applies only to the Director's exercise of discretion on substantive issues when determining whether to institute an *inter partes* review "under this section" (that is, section 314). Section 314(d) does not, and cannot, foreclose this Court from ensuring the Patent Office Director's compliance with Congress's non-discretionary limitations for instituting *inter partes* review, including the timeliness provision of section 315(b).

### A. The Supreme Court's Settled Precedent Establishes a Strong Presumption That Agency Action Is Reviewable Under the Administrative Procedure Act

The Supreme Court has long recognized that the Administrative Procedure Act (APA) "embodies the basic presumption of judicial review to one suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Abbott Labs. v. Garner*, 387 U.S. 136, 140 (1967). In light of such well-settled precedent, it would be strange for Congress to pass mandatory limitations upon agency authority with one hand, yet deprive the courts of the power to police those mandatory limitations with the other. In recognition of that understanding, the Supreme Court "applies a strong presumption favoring judicial review of agency action." *Mach Mining*, 135 S. Ct. at 1651. Thus, courts must "begin with the strong presumption that Congress intends judicial review of administrative action" because it "has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670-71 (1986)); *see Abbott Labs.*, 387 U.S. at 140 (collecting cases and concluding that "a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is a persuasive reason to believe that such was the purpose of Congress").

The fundamental reason for the presumption of judicial review is grounded in the constitutional separation of powers: Congress legislates, the Executive administers, and the Judiciary polices the proper line between the two, to ensure that the executive does not overstep into an improper, legislative role. Because judicial review is strongly presumed, "the *agency* bears a 'heavy burden' in attempting to show that Congress 'prohibit[ed] all judicial review' of the agency's compliance with a legislative mandate." *Mach Mining*, 135 S. Ct. at 1651 (quoting *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)).

Indeed, in *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016), the Supreme Court declined to allow a respondent's challenge to the Director's decision to initiate *inter partes* review, where the challenge was premised on "an ordinary dispute about the application of certain relevant patent statutes concerning the Patent Office's decision to institute *inter partes* review," *id.* at 2139—in that case, whether the petition adequately identified the claims challenged "with particularity." 35 U.S.C. § 312(a)(3). The Court nonetheless took pains to emphasize that its reading of section 314(d) would not preclude judicial review in cases where, *inter alia*, the Patent Office acts outside its statutory limits: "[W]e do not categorically preclude review of a final decision where a petition fails to give 'sufficient notice' such that there is a due process problem with the entire proceeding, *nor does our interpretation enable the agency to act outside its*

*statutory limits* by, for example, cancelling a patent claim for 'indefiniteness under § 112' in *inter partes* review." *Cuozzo*, 136 S. Ct. at 2141-42 (emphasis added) (quoting dissent).

This same principle is reflected in this Court's opinions. In *Reilly v. OPM*, 571 F.3d 1372 (Fed. Cir. 2009), this Court looked to the Supreme Court's decision in *Lindahl v. OPM*, 470 U.S. 768 (1985), and recognized that it had cited this Court's predecessor, the Court of Claims, approvingly in establishing the proposition that "this court had jurisdiction to review whether there has been 'a substantial departure from important procedural rights, *a misconstruction of the governing legislation*, or some like error going to the heart of the administrative determination." *Reilly*, 571 F.3d at 1377 (quoting *Lindahl*, 470 U.S. at 780-81, in turn quoting *Scroggins v. United States*, 184 Ct. Cl. 530, 397 F.2d 295, 297 (1968)). More recently, in *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015), this Court aptly summarized the strong presumption in favor of judicial review: "It would not only run counter to the language of § 324(e) [the analogous "No Appeal" provision for post-grant review] to read it as barring review of whether the PTAB exceeded statutory limits on its authority to invalidate. It would also run counter to our long tradition of judicial review of government actions that alter the legal rights of an affected person, a hallmark of the distinction between (generally reviewable) final agency action and (generally

unreviewable) agency action that merely initiates a process to consider such an alteration." *Id.* at 1319-20.

The rule that judicial review is usually available to police the agency's *ultra vires* actions is likewise embedded in the APA, 5 U.S.C. § 706(2)(A)-(D), which expresses "a policy favoring judicial review," *Abbott Labs.*, 387 U.S. at 146; *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Rusk v. Cort*, 369 U.S. 367, 379-80 (1962).

Finally, the "strong presumption" in favor of judicial review should be at its zenith in cases involving the PTAB's congressionally granted powers—the PTAB under the AIA has been granted significant powers to take away patent owners' previously granted intellectual-property rights, and so it is critically important that basic due process norms—such as judicial review—be protected. "Patents have long been considered a species of property. As such, they are surely included within the 'property' of which no person may be deprived . . . without due process of law." *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999). Allowing the Patent Office to contravene its statutory authority under section 315(b) by improperly instituting *inter partes* review that may render claims unpatentable and thereby deprive a patentee of his property, is precisely the type of "due process problem" that *Cuozzo* recognizes as requiring judicial review.

### B. Section 314(d) Does Not Overcome the Presumption of Judicial Review

#### 1. Section 314 Speaks Only to the Director's Discretionary Determination of Whether to Institute an *Inter Partes* Review, Whereas Section 315(b) Imposes a Compulsory Limit on the Director's Statutory Authority

"As in any case of statutory construction, [the court's] analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Here, a straightforward reading of sections 314 and 315 establishes that: (1) section 314 confers discretion to the Patent Office concerning substantive issues relating to its expertise and expressly forecloses judicial review of the agency's exercise of such discretion; and (2) section 315 enacts compulsory limits on the Patent Office's statutory authority and does not place any restriction on judicial review of the agency's compliance with those limits.

Section 314, entitled "Institution of *inter partes* review," provides that the Patent Office may institute proceedings if "the Director determines that the information presented in the petition … shows that there is a *reasonable likelihood* that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a) (emphasis added). By its own terms, section 314(a) speaks to the Patent Office's exercise of substantive discretion in deciding whether to institute an *inter partes* review. Subsection (d) of section 314, entitled "No Appeal," provides that "[t]he determination by the Director whether to

institute an *inter partes* review *under this section* shall be final and nonappealable." 35 U.S.C. § 314(d) (emphasis added). Thus, the type of discretion conferred in section 314 and barred from judicial review is "the kind of initial determination [that] … is akin to decisions which, in other contexts, [the Supreme Court] ha[s] held to be unreviewable." *Cuozzo*, 136 S. Ct. at 2140.

Section 315, entitled "Relation to other proceedings or actions," contains the time bar that is at issue in this case. It provides, *inter alia*, that an "*inter partes* review *may not be instituted* if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) (emphasis added). Unlike section 314, which addresses the Patent Office's exercise of discretion, section 315(b) does not refer to or confer any discretion to the Patent Office. Instead, section 315(b) sets forth an express and compulsory limitation on the Patent Office's statutory authority—phrased in the mandatory "may not" form—by restricting its jurisdiction in specified circumstances.

In contrast to section 314, section 315 is devoid of any language precluding this Court from reviewing whether the Patent Office has overstepped its jurisdiction by disregarding the one-year bar under subsection 315(b). In such situations, "[t]he mere failure to provide specially by statute for judicial review is

certainly no evidence of intent to withhold review." *Abbott Labs.*, 387 U.S. at 140 n.2. Rather, Congress's silence with respect to judicial review in section 315 highlights the applicability of, and need for, such review. Had Congress intended to preclude judicial review of the Patent Office's decisions under section 315(b), it would have done so explicitly by invoking the same language it used in section 314(d), which applies only to institution determinations made "under this section," that is, section 314. Congress's decision to not do so is compelling evidence that the Patent Office's determinations under section 315(b) are subject to judicial review. *See, e.g.*, *Califano v. Sanders*, 430 U.S. 99, 104 (1977) (noting "Congress' intention and understanding that judicial review should be widely available to challenge the actions of federal administrative officials").

The absence of any language restraining judicial review under section 315 is not surprising, given that "[i]t has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted," because doing so would give administrative agencies "blank checks" to unilaterally expand their authority. *Bowen*, 476 U.S. at 671 (quoting S. Rep. No. 79-752, at 26 (1945)). The Supreme Court's reasoning in *Mach Mining* is instructive and on point:

> Absent review, the [Patent Office's] compliance with the law would rest in the [Patent Office's] hands alone. We need not doubt the [Patent Office's] trustworthiness, or its fidelity to law, to shy away from that result. We need only know—and know that Congress

> knows—that legal lapses and violations occur, and especially so when they have no consequence.

135 S. Ct. at 1652-53 (alterations supplied in brackets).

Further, "whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). Here, the availability of judicial review under section 315(b) is underscored by other parts of the AIA. In particular, section 319, entitled "Appeal," states that a party "dissatisfied with the final written decision of the [PTAB] … may appeal the decision pursuant to sections 141 and 144." 35 U.S.C. § 319. Nothing in section 319 limits the issues that a party may appeal to this Court from a final decision. In fact, *Cuozzo* refused to "categorically preclude review of a final decision where … *the agency … act[s] outside its statutory limits." Id.* at 2141-42 (emphasis added). If the Patent Office cancels claims in an *inter partes* review proceeding that is time-barred, that is at least as "outside [the Patent Office's] statutory limits" as "cancelling a patent claim for" indefiniteness would be. *Id*.

Finally, "[a]ny lingering doubt about the proper interpretation" of section 315(b) is "dispelled by a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*,

558 U.S. 233, 251 (2010). When a statute is "reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). Applying this principle, even when statutory language "plausibly can be read as imposing an absolute bar to judicial review," is not enough to overcome the "usual presumption favoring judicial review of administrative action" if another natural reading of the language permits review. *Lindahl v. OPM*, 470 U.S. 768, 779 (1985); *see* Stephen G. Breyer *et al.*, Administrative Law and Regulatory Policy 777 (6th ed. 2006) ("[C]ourts start with a 'presumption of reviewability,' which means that they will interpret the asserted preclusive effect of such statutes narrowly…. Also, courts frequently interpret language that, on its face, seems explicitly to preclude review not to do so.").

### 2. *Achates* Should Be Overruled

The Court's January 4, 2017 order granting *en banc* review asks whether *Achates* should be overruled. It should.

*First*, it is plain on the face of the *Achates* opinion that the respondent (Achates) never made the argument that judicial review should be allowed in order to correct the Board's violation of a clear statutory mandate (the time-bar mandate of § 315(b)). *See* 803 F.3d at 659 ("Achates did not raise this argument.").

*Second*, the *Achates* decision predated the Supreme Court's *Cuozzo* decision by almost nine months and, as a result, was unable to take into account its holdings—including its emphatic statement that § 314(d) does not "enable the agency to act outside its statutory limits," 136 S. Ct. at 2141, as well as its underscoring of the fact that the APA "enables reviewing courts to 'set aside agency action' that is . . . 'in excess of statutory jurisdiction.'" *Id.* at 2142.

*Third and finally*, and relatedly, *Achates* did not apply the "strong presumption" favoring judicial review. That decision was reached under a rather different view—set forth in a non-binding Fourth Circuit decision—that judicial review of agency action for compliance with a clear statutory mandate in the face of a statutory bar was an "implicit and narrow exception." 803 F.3d at 658 (quoting *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996)). That statement is at least in tension with, if not outright contradicted by, the Supreme Court's repeated holdings that judicial review is strongly presumed (*see supra* Section I(A), above), and that such presumption can only be overcome if *the agency*—not, as in *Achates*, the challenger—meets the "heavy burden" of "show[ing] that Congress 'prohibit[ed] all judicial review' of the agency's compliance with a legislative mandate." *Mach Mining*, 135 S. Ct. at 1651 (quoting *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975)).

In short, *Achates* is irreconcilable with Supreme Court precedent and should be overruled by the Court, *en banc*.

## II. JUDICIAL REVIEW OF INSTITUTION DECISIONS FOR COMPLIANCE WITH THE STATUTE HONORS THE LEGISLATIVE STRUCTURE OF THE AIA, AND THE SEPARATION OF POWERS BETWEEN CONGRESS AND THE EXECUTIVE

As noted above, judicial review of agency action is so strongly presumed because it is essential to maintaining the constitutional separation of powers. In the AIA, Congress granted the Patent Office certain, circumscribed powers to issue regulations governing the conduct of *inter partes* review proceedings. *See* 35 U.S.C. § 316(a)(1)-(13). But nowhere in the Act did Congress grant the Patent Office the authority to suspend or ignore statutory mandate, such as the time-bar mandate ("may not be instituted") of § 315(b).

Without the availability of appellate review, however, the agency could ignore—and in fact has ignored—certain mandates set forth in the Act. Absent review, such *ultra vires* actions, in clear violation of statutory command, improperly allow the executive agency to exert its muscle far beyond the boundaries marked out for it by Congress. Congress cannot effectively police this line; only the courts can. And that is why "very rarely do statutes withhold judicial review. It . . . could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board." *Bowen*,

476 U.S. at 671 (quoting S. Rep. No. 79-752, at 26 (1945) (legislative history of the APA)).

Thus, this Court's role in this case—and others like it—is to ensure that the executive agency, here the Patent Office, does not usurp the legislature's role by, for instance, instituting a late-filed request for *inter partes* review that Congress said—in absolute terms, without exception—"may not" be initiated. *See, e.g., Gutierrez de Martinez*, 515 U.S. at 424 ("[J]udicial review of executive action will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."). There is no reason to believe that, in the very same Act, Congress meant to use § 314(d) to eliminate judicial power to ensure that the agency does not take actions that Congress forbade in absolute, "may not" terms *appearing in the very next section of the Act.*

Agency action "is subject to judicial review except where there is a statutory prohibition on review or where agency action is committed to agency discretion by law." *Citizens to Preserve Overton Park*, 401 U.S. at 410. The Supreme Court in *Cuozzo* confirmed that the § 314(d) "No Appeal" bar is not an absolute prohibition on review, *see* 136 S. Ct. at 2142, and there is no basis for concluding that a time bar that is written in absolute, mandatory terms somehow commits that determination to unreviewable agency discretion. As *Citizens to Preserve Overton Park* made clear in stating its concerns about due process, "[i]n this case, there is

no indication that Congress sought to prohibit judicial review and there is most certainly 'no showing of "clear and convincing evidence" of a . . . legislative intent' to restrict access to judicial review." 401 U.S. at 410 (citing *Abbott Labs.*, 387 U.S. at 141 and *Brownell v. We Shung*, 352 U.S. 180, 185 (1956)).

## CONCLUSION

For these reasons, the *en banc* Court should hold that judicial review is available for a patent owner to challenge the Patent Office's determination that the petitioner satisfied the timeliness requirement of 35 U.S.C. § 315(b) governing the filing of petitions for *inter partes* review.

Dated: February 22, 2017

Respectfully submitted,

*/s/ Gregory A. Castanias*

GREGORY A. CASTANIAS
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

DAVID B. COCHRAN
JONES DAY
North Point, 901 Lakeside Ave.
Cleveland, OH 44114
(216) 586-3939

*Counsel for Amicus Curiae Intellectual Property Owners Association*

KEVIN H. RHODES, *President*
STEVEN W. MILLER, *Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY OWNERS ASSOCIATION
1501 M Street, N.W., Ste. 1150
Washington, D.C. 20005
(202) 507-4500

JOHN A. MARLOTT
I. SASHA MAYERGOYZ
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
(312) 782-3939

# APPENDIX

# APPENDIX[3]

## Members of the Board of Directors
## Intellectual Property Owners Association

Scott Barker
Micron Technology, Inc.

Edward Blocker
Koninklijke Philips N.V.

Amelia Buharin
Intellectual Ventures, LLC

Karen Cochran
Shell International B.V.

John D. Conway
Sanofi

William J. Coughlin
Ford Global Technologies LLC

Anthony DiBartolomeo
SAP AG

Louis Foreman
Enventys

Scott M. Frank
AT&T

Darryl P. Frickey
Dow Chemical Co.

Gary C. Ganzi
Evoqua Water Technologies, LLC

Krish Gupta
Dell Technologies

Henry Hadad
Bristol-Myers Squibb Co.

Heath Hoglund
Dolby Laboratories

Philip S. Johnson
Johnson & Johnson

Thomas R. Kingsbury
Bridgestone Americas, Inc.

William Krovatin
Merck & Co., Inc.

Mark W. Lauroesch
Intellectual Property Owners Association

Peter Lee
Thermo Fisher Scientific Inc.

[3] IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

Elizabeth Lester
Equifax Inc.

Allen Lo
Google Inc.

Timothy Loomis
Qualcomm, Inc.

Thomas P. McBride
Monsanto Co.

Elizabeth McCarthy
Avaya, Inc.

Todd Messal
Boston Scientific Co.

Steven W. Miller
Procter & Gamble Co.

Micky Minhas
Microsoft Corp.

Lorie Ann Morgan
Gilead Sciences, Inc.

Theadore Naccarella
InterDigital

Douglas K. Norman
Eli Lilly and Co.

Richard F. Phillips
Exxon Mobil Corp.

Dana Rao
Adobe Systems Inc.

Kevin H. Rhodes
3M Innovative Properties Co.

Curtis Rose
Hewlett-Packard Enterprise

Paik Saber
Medtronic, Inc.

Matthew Sarboraria
Oracle USA Inc.

Manny Schecter
IBM Corp.

Steven J. Shapiro
Pitney Bowes Inc.

Jessica Sinnott
DuPont

Dennis C. Skarvan
Caterpillar Inc.

Daniel J. Staudt
Siemens Corp.

Brian Suffredini
United Technologies Corp.

James J. Trussell
BP America, Inc.

Roy Waldron
Pfizer, Inc.

BJ Watrous
Apple Inc.

Stuart L. Watt
Amgen, Inc.

Michael Young
Roche, Inc.

**United States Court of Appeals**
**for the Federal Circuit**

*Wi-Fi One, LLC v Broadcom Corporation*, 2015-1944, -1945, -1946

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SAUL EWING, LLP, Attorneys for Amicus Curiae, Intellectual Property Owners Association to print this document. I am an employee of Counsel Press.

On **February 22, 2017,** counsel has authorized me to electronically file the foregoing **Brief of Amicus Curiae** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including the following principal counsel for the parties: as CM/ECF users, including the following principal counsel for the parties:

Dominic E. Massa
Wilmer Cutler Pickering Hale
and Dorr LLLP
60 State Street
Boston, Massachusetts 02109
617-526-6000
dominic.massa@wilmerhale.com
Principal Counsel for Appellee

Nathan K. Kelley
U.S. Patent and Trademark Office
Office of the Solicitor
PO Box 1450, Mail Stop 8
Alexandria, VA 22313
571-272-9035
nathan.kelley@uspto.gov
Principal Counsel for Intervenor

G. Donald Puckett
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, TX 76107
(817) 377-9111
puckett@nelbum.com1
Principal Counsel for Appellant

Paper copies will also be mailed to the above principal counsel on this date.

All counsel for Amicus Curiae, appearing at the time of this filing, will also be served via CM/ECF notice.

Thirty paper copies will be filed with the Court within the time provided in the Court's rules.

February 22, 2017

/s/ Robyn Cocho
Robyn Cocho
Counsel Press

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 3,649 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14 point font.

Dated: February 22, 2017

*/s/Gregory A. Castanias*
Gregory A. Castanias
*Attorney for Amicus Curiae*
*Intellectual Property Owners*
*Association*