**Nos. 2015-1944, -1945, -1946**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

WI-FI ONE, LLC,

*Appellant*,

v.

BROADCOM CORPORATION,

*Appellee*,

ANDREI IANCU, Director, U.S. Patent and Trademark Office,

*Intervenor*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2013-00601, IPR2013-00602, IPR2013-00636.

**APPELLEE BROADCOM CORPORATION'S RESPONSE TO APPELLANT WI-FI ONE, LLC'S COMBINED PETITION FOR REHEARING EN BANC AND PANEL REHEARING**

DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

July 23, 2018

# CERTIFICATE OF INTEREST

Counsel for Appellee Broadcom Corporation certifies the following:

1.     The full name of every party or *amicus* represented by us is:

Broadcom Corporation

2.     The name of the real party in interest represented by us is:

Broadcom Corporation

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Broadcom Corporation is a wholly-owned subsidiary of BC Luxembourg S.à.r.l., which is a wholly-owned subsidiary of Broadcom Cayman Finance Limited, which is a wholly-owned subsidiary of Avago Technologies Cayman Holdings Limited, which is a wholly-owned subsidiary of Broadcom Pte. Ltd., which is a wholly-owned subsidiary of Broadcom Technologies Inc., which is a wholly-owned subsidiary of Broadcom Inc.  Broadcom Inc. is a publicly traded company, and we do not believe that any publicly held corporation owns more than 10% of Broadcom Inc.'s shares.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  Dominic E. Massa, Katie M. Saxton, Kevin A. Goldman, Zachary P. Piccolomini (former), Michael A. Diener (former), Janine M. Lopez (former)

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

None.

- i -

- ii -

Dated:  July 23, 2018

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ....................................................................................1

ARGUMENT ..........................................................................................2

I.  WI-FI'S OBJECTIONS TO THE PANEL'S STANDARD OF REVIEW
DO NOT WARRANT REHEARING AND, REGARDLESS, ARE
WRONG. ...........................................................................................2

   A.  Wi-Fi's "*Auer* Deference" Argument Is Untimely And
   Fundamentally Flawed. ........................................................2

   B.  The Panel Correctly Applied The Abuse Of Discretion
   Standard. ..............................................................................5

II.  THE BOARD DID NOT APPLY A "RIGID" PRIVITY TEST. ..................6

III.  WI-FI'S OTHER CHALLENGES ARE MERITLESS. ...........................10

CONCLUSION ......................................................................................15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Apple Inc. v. Achates Reference Publishing, Inc.*,
IPR2013-00080, 2013 WL 6514049 (P.T.A.B. Apr. 3, 2013) ...........................7

*Auer v. Robbins*,
519 U.S. 452 (1997).........................................................................................2

*Christensen v. Harris County*,
529 U.S. 576 (2000).........................................................................................3

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012).........................................................................................3

*D-Link Systems, Inc. v. Chrimar Systems, Inc.*,
IPR2016-01425, Paper 15 (P.T.A.B. Jan. 17, 2017) ..................................13, 15

*Director, Office of Workers' Compensation Programs v. Mangifest*,
826 F.2d 1319 (3d Cir. 1987) ........................................................................11

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*,
809 F.3d 1223 (Fed. Cir. 2015) ......................................................................6

*Garmin International, Inc. v. Cuozzo Speed Technologies LLC*,
IPR2012-00001, 2013 WL 11311697 (P.T.A.B. Mar. 5, 2013).........................4

*General Electric Co. v. Transdata, Inc.*,
IPR2014-01380, Paper 15 (P.T.A.B. Nov. 12, 2014).......................................13

*General Electric Co. v. Transdata, Inc.*,
IPR2014-01380, Paper 34 (P.T.A.B. Apr. 15, 2015) ......................................14

*Heat & Control, Inc. v. Hester Industries, Inc.*,
785 F.2d 1017 (Fed. Cir. 1986) ......................................................................6

*In re Durance*,
891 F.3d 991 (Fed. Cir. 2018) .......................................................................4

*In re Sullivan*,
362 F.3d 1324 (Fed. Cir. 2004) ......................................................................3

*Pentax Corp. v. Robison*,
  135 F.3d 760 (Fed. Cir. 1998) ........................................................3, 5

*Redline Detection, LLC v. Star Envirotech, Inc.*,
  811 F.3d 435 (Fed. Cir. 2015) ....................................................5, 6, 12

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ........................................................3

*Taylor v. Sturgill*,
  553 U.S. 880 (2008).................................................................7, 12

*Ultratec, Inc. v. CaptionCall, LLC*,
  872 F.3d 1267 (Fed. Cir. 2017) ......................................................5, 6

*WesternGeco LLC v. ION Geophysical Corp.*,
  889 F.3d 1308 (Fed. Cir. 2018) ...................................................5, 9, 12

*Zoll Lifecore Corp. v. Phillips Electronics North America Corp.*,
  IPR2013-00609, Paper 15 (P.T.A.B. Mar. 20, 2014)............................13, 14, 15

## STATUTES, RULES, AND REGULATIONS

35 U.S.C.
  § 315.........................................................................9, 10, 11, 12, 13
  § 316........................................................................................4

37 C.F.R. § 42.51 ..........................................................................4

Office Patent Trial Practice Guide,
  77 Fed. Reg. 48,756 (Aug. 14, 2012) .......................................7, 12, 13

## INTRODUCTION

Wi-Fi once again seeks to resurrect its invalidated patents by asking the Court to find that the Patent Trial and Appeal Board ("the Board") abused its discretion in denying Wi-Fi's broad requests for "additional discovery" in the underlying IPRs.[1]  Wi-Fi's arguments ignore the Panel's and Board's analyses, fall well short of the standard for rehearing, and fail on the merits in any event.

Wi-Fi's principal argument—raised for the first time in its new petition for rehearing—is that the Panel misapplied "*Auer* deference" in reviewing the Board's denial of Wi-Fi's discovery requests.  *See* Pet. at 4-5, 6-7, 9, 12-16.  It did not.  In fact, *Auer* has no bearing here, as Wi-Fi does not challenge the Board's interpretation of its discovery rules.  The Panel instead simply reviewed the Board's application of its procedural rules under the well-established "abuse of discretion" standard, and correctly found that no abuse had occurred.  Slip op. at 13-16.  Thus, Wi-Fi's real argument is not that the panel erred on the law, but that its case was wrongly decided based on its specific facts.

Wi-Fi alternatively argues that the Board applied, and the Panel sanctioned, a "rigid" "control" test to define privity.  Pet. at 8.  This too is incorrect.  The Board "made clear that it understood that privity and real-party-in-interest status

---

[1]     Wi-Fi filed identical petitions for rehearing in the three co-pending appeals, Case Nos. 2015-1944, 2015-1945, and 2015-1946.  For consistency, all citations herein are to the briefs and appendix filed in Case No. 2015-1944.

could be established not only by [one's] exercise of control," and that "a number of factors may be relevant to the [privity] analysis." Slip op. at 10-11, 12. The Panel properly found that substantial evidence supported the Board's privity decision.

Wi-Fi further argues that the APA required that the Board grant its discovery motion because Wi-Fi's broad requests included purportedly relevant indemnity agreements that were produced to Wi-Fi's predecessor's counsel in separate district court litigation under the terms of a protective order. But it is black letter law that the APA provides agencies with broad discretion to manage their own discovery, and that agencies are *not* compelled to admit all relevant evidence. Moreover, nothing in the APA overrides the well-established procedures allowing for protective orders that limit the use of materials to particular proceedings.

Wi-Fi's petition should be denied.

## ARGUMENT

I.  **WI-FI'S OBJECTIONS TO THE PANEL'S STANDARD OF REVIEW DO NOT WARRANT REHEARING AND, REGARDLESS, ARE WRONG.**

    A.  **Wi-Fi's "*Auer* Deference" Argument Is Untimely And Fundamentally Flawed.**

Wi-Fi argues that the Panel misapplied *Auer* in reviewing the Board's decision to deny Wi-Fi's discovery motion. Pet. at 4-5, 6-7, 9, 12-16; *see Auer v. Robbins*, 519 U.S. 452, 461 (1997). Wi-Fi's argument should be rejected as untimely and, even if considered, fundamentally misunderstands *Auer*.

Wi-Fi waived its *Auer*-based argument.  Before its present petition for rehearing, Wi-Fi never challenged in this appeal the Board's interpretation of its discovery regulations, nor did it dispute the appropriate standard of review for the Board's discovery rulings or even mention *Auer*.  *See* Wi-Fi Opening Br. 35-38. Instead, Wi-Fi simply argued that the Board abused its discretion in denying Wi-Fi's discovery motion.  *See id.* at 36 ("Whatever discretion may be afforded the Board's discovery rulings, that discretion was abused in this case.").  Wi-Fi's *Auer* argument should be rejected for this reason alone.  *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived."); *Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998) ("[W]e decline to address [a] new theory raised for the first time in [a] petition for rehearing.").

Regardless, Wi-Fi's argument rests on a basic misreading of *Auer*.  *Auer* governs deference to an administrative agency's interpretation of its own ambiguous regulations.  *See, e.g.*, *In re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004).[2]  That doctrine has no bearing here, as Wi-Fi is not challenging the interpretation of any allegedly ambiguous regulation.  Instead, apart from its

---

[2]    *Auer* "calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012); *see Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) ("*Auer* deference is warranted only when the language of the regulation is ambiguous." (citations omitted)).

conclusory—and newly-presented—claim that 37 C.F.R. § 42.51(b)(2) is "vague" and "necessarily is interpreted," Wi-Fi does not identify any ambiguity in the regulation itself.[3]  *See* Pet. at 13.  Moreover, Wi-Fi does not challenge—and has never challenged in this appeal—the Board's explanation that, in determining whether to permit additional discover, it considers "whether there exists more than a 'mere possibility' or 'mere allegation that something useful [to the proceeding] will be found.'"  A80 (citing *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001, 2013 WL 11311697, at *3 (P.T.A.B. Mar. 5, 2013)); *see also* Wi-Fi Opening Br. 35-38.  Thus, there is no dispute regarding the Board's ***interpretation*** of Section 42.51(b)(2).

Wi-Fi instead merely challenges the Board's ***application*** of its discovery rules to the facts of this case.  *See, e.g.*, Pet. at 9 (arguing Panel erred in its review of "the PTAB's ***application*** of its trial regulations");[4] *id.* at 12 (arguing Panel was "unduly deferential to the PTAB … regarding ***application*** of its own trial rules").  And it is well-settled that this Court reviews the Board's application of such rules for abuse of discretion.  *See, e.g.*, *In re Durance*, 891 F.3d 991, 1000 (Fed. Cir.

---

[3]    Congress delegated to the PTO the authority to "prescribe regulations … setting forth standards and procedures for discovery of relevant evidence, including … what is otherwise necessary ***in the interest of justice***."  35 U.S.C. § 316(a)(5). In turn, the PTO promulgated 37 C.F.R. § 42.51(b)(2), which tracks Section 316(a)(5) and permits "additional discovery" by motion, if the moving party "show[s] that such additional discovery is ***in the interests of justice***."

[4]    Except as otherwise noted, each emphasis in this brief is added.

2018) ("We review the Board's application of its procedural rules for abuse of discretion."); *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1322 n.9 (Fed. Cir. 2018) ("[T]he Board's denial of [a party's] request for additional discovery … is reviewed for abuse of discretion …."); *Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267, 1271 (Fed. Cir. 2017) ("We review the Board's decision of how it manages its permissive rules of trial proceedings for abuse of discretion."); *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 442 (Fed. Cir. 2015) (same).  Thus, even if Wi-Fi had timely raised this issue, this case still would provide no basis for the Court to address *Auer* deference.

**B.    The Panel Correctly Applied The Abuse Of Discretion Standard.**

Wi-Fi further asserts that the Panel failed to apply a supposed "four-part test" for assessing abuse of discretion with respect to the Board's application of its own rules.  Pet. at 6-7, 12-13, 15.  This argument is equally meritless.

*First*, as before, Wi-Fi waived any argument regarding the appropriate standard of review for the Board's denial of discovery motions by failing to raise the issue before its present petition for rehearing.  *Pentax*, 135 F.3d at 762.

*Second*, the Panel described and applied the correct, well-established abuse of discretion standard.  Slip op. at 15-16.  Indeed, contrary to Wi-Fi's assertion, *there is no separate "four-part test" for review of agency actions*.  Rather, in various decisions—including the particular decisions cited by the Panel in the

present case—this Court has simply identified four long-established categories of abuse of discretion. *Id.*; *see Ultratec*, 872 F.3d at 1272 (explaining that an abuse of discretion occurs if a decision "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision"); *Redline Detection*, 811 F.3d at 442 (same).[5] Wi-Fi's assertion that this constitutes a special "four-part standard of review test," Pet. at 13, is baseless.

*Finally*, Wi-Fi fails to identify a substantive legal error in the Panel's abuse of discretion analysis. Rather, at bottom, Wi-Fi merely disagrees with the Panel's application of the correct standard—a quintessentially case-specific inquiry. *Cf. Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1227-1228 (Fed. Cir. 2015) (Moore, J., joined by Newman, O'Malley, and Taranto, JJ., concurring in denial of rehearing *en banc*) (disagreement with the panel's decision "is not a sufficient reason for *en banc* review").

## II. THE BOARD DID NOT APPLY A "RIGID" PRIVITY TEST.

Wi-Fi's claim that the Board applied a "rigid" "control" test to define privity, Pet. at 8, fares no better. In fact, the Board's "flexible" approach was

---

[5]    Wi-Fi incorrectly asserts that this four-part formulation is derived from *Auer*. Pet. at 13. It originated in *Heat & Control, Inc. v. Hester Industries, Inc.*, which predates *Auer* by more than a decade, and involved review of a district court decision, not an agency action. *See* 785 F.2d 1017, 1022 (Fed. Cir. 1986).

entirely consistent with the PTO's Trial Practice Guide and the Supreme Court's decision in *Taylor v. Sturgill*, 553 U.S. 880 (2008). There is no error, much less error that could justify rehearing.

In *Taylor*, the Supreme Court set out a flexible standard for determining whether a named party and a nonparty are privies. *See* 553 U.S. at 893-94, 893 n.6 (noting that its list "is meant only to provide a framework"). In turn, the Trial Practice Guide provides that the PTO "evaluate[s] what parties constitute 'privies' in a manner consistent with the flexible and equitable considerations established under federal caselaw," and adopts *Taylor*'s definition of privity. *See* Trial Practice Guide, 77 Fed. Reg. 48,756, 48,759 (Aug. 14, 2012). Under this "highly fact-dependent" inquiry, one consideration is whether the nonparty "exercised or could have exercised control over a party's participation in a proceeding." *Id.* at 48,759, 48,760. The existence of an indemnification agreement with an alleged privy is not dispositive. *See, e.g.*, *Apple Inc. v. Achates Reference Publ'g, Inc.*, IPR2013-00080, 2013 WL 6514049, at *2-4 (P.T.A.B. Apr. 3, 2013) (indemnification provision does not establish privity or real-party-in-interest).

Wi-Fi does not dispute that the Trial Practice Guide accurately describes the relevant law. *See* Pet. at 1, 16. Moreover, the Panel and Dissent ***agree*** that the Trial Practice Guide is "consistent" with *Taylor*. *See* Slip op. at 9 (citing *Taylor*, and stating that "[t]he interpretation of the concepts of privity and real party in

- 7 -

interest set forth in the PTO's Office Trial Practice Guide … is consistent with general legal principles"); Dissent at 6 ("The PTO's Trial Practice Guide is consistent with *Taylor*."). Wi-Fi instead merely challenges the Board's application of the correct legal standard to the unique facts of this case.

As the Panel observed, Wi-Fi's assertion that the Board's application of the legal standard was unduly "rigid," Pet. at 8, "mischaracterizes the Board's decisions." *See* Slip op. at 10. In denying Wi-Fi's motion for additional discovery, the Board explained that privity "depends on whether the relationship between a party and its alleged privy is sufficiently close such that both should be bound by the trial outcome and related estoppels." A81 (punctuation omitted). Citing the Trial Practice Guide, the Board further noted that, "[d]epending on the circumstances, a number of factors may be relevant to the analysis including whether the non-party exercised or could have exercised control over a party's participation in a proceeding, and whether the non-party is responsible for funding and directing the proceeding." *Id.* (punctuation omitted). And, in later denying Wi-Fi's request for rehearing of the Board's Final Written Decision, the Board explained that its earlier decisions "did not characterize the legal standard, for all cases, as being limited strictly to a petitioner's control, or opportunity to control, a non-party in previous litigation." A273. Thus, as the Panel noted, the Board did not apply a rigid "control" test but rather "made clear that it understood that privity

- 8 -

and real-party-in-interest status could be established not only by Broadcom's exercise of control over the district court proceedings." Slip op. at 12.[6]

The Board, moreover, appropriately focused on the privity arguments that Wi-Fi presented. *See WesternGeco*, 889 F.3d at 1320, 1320 n.7 (affirming § 315(b) decision where Board "properly focused" on privity theory advanced by patent owner). Specifically, Wi-Fi argued that the evidence would show that "Broadcom has had the opportunity to control and maintains a substantive legal relationship with the D-Link Defendants sufficient to bind Broadcom to the District Court's judgment." A50. The Board properly met Wi-Fi's arguments head-on. *See* A81-89; *see also* A273 ("[O]ur Decision … focuses primarily on Broadcom's … exercise of control, or opportunity to exercise control over the prior District Court lawsuit … because that was the focus of Patent Owner's Motion …."); Slip op. at 10 ("The Board's decision to focus on that ground was in response to the specific arguments that Wi-Fi raised on the privity issue.").

---

[6] The Panel likewise applied the proper Section 315(b) standard in concluding that substantial evidence supported the Board's privity decision. The Panel provided a detailed analysis of the statutory language and the relevant caselaw, including *Taylor*, and confirmed the Trial Practice Guide standard. Slip Op. at 7-12. The Panel recognized that this is a "flexible" standard, and that "a variety of factors can contribute to a finding of privity." Slip op. at 8, 10-11, 12 n.3. Indeed, as a separate panel of this Court has since found, *Wi-Fi* "specifically affirmed the Board's understanding of a broader test to include a number of circumstances in which privity might be found …." *WesternGeco*, 889 F.3d at 1320, 1327 n.7 (punctuation omitted). Thus, both the Board and the Panel applied the correct legal standard.

But addressing Wi-Fi's "control" argument did not mean that the Board, or the Panel, limited its inquiry to "control." As the Panel correctly recognized, the Board considered other arguments advanced by Wi-Fi, and found them unpersuasive as well. *See, e.g.*, Slip op. at 11-12. For instance, the Panel observed that the Board had "addressed Wi-Fi's theory 'that the indemnity agreements imply that the District Court Defendants are real parties in interest in these *inter partes* reviews.'" *Id.* at 11; *see* A85-86; A274. And beyond Wi-Fi's arguments regarding Broadcom's purported indemnity obligations, the Board also considered the three exhibits on which Wi-Fi based its discovery requests, and (correctly) concluded that none showed privity. A84-90. Thus, after taking all of Wi-Fi's arguments and the complete factual record into account, the Board properly found that Broadcom's petition was not time-barred under Section 315(b). A8-9; A272-276.

## III.  WI-FI'S OTHER CHALLENGES ARE MERITLESS.

None of Wi-Fi's additional arguments warrant rehearing.

*First*, Wi-Fi incorrectly contends that the Board's denial of Wi-Fi's motion for "additional discovery" violated the APA because it prevented Wi-Fi from admitting into evidence certain indemnity agreements between Broadcom and two Texas Defendants that were "already in Wi-Fi's possession." Pet. at 7-8, 12-13.[7]

---

[7] Although Wi-Fi bases its petition for rehearing on these indemnity agreements, it sought to propound far broader discovery requests upon Broadcom in its motion for "additional discovery." *See* A1211-17.

- 10 -

That mischaracterizes both the record and the APA.  The indemnity agreements were in Wi-Fi's "possession" only insofar as they were produced to Wi-Fi's predecessor's counsel in the Texas litigation under the terms of a protective order that limited their use solely to the Texas proceedings.  *See id*. at 7.  There is nothing in the APA that overrides a district court's ability to issue and enforce such protective orders.[8]

Nor does the APA require (as Wi-Fi now suggests, Pet. at 8) that the Board grant Wi-Fi's discovery motion merely because, according to Wi-Fi, it sought relevant evidence.  To the contrary, as Wi-Fi itself conceded in its initial brief in this appeal, agencies have broad discretion to manage discovery in their proceedings and the APA "does not command that agencies admit all relevant evidence."  Wi-Fi Opening Br. 38 (quoting *Director, Office of Workers' Comp. Programs v. Mangifest*, 826 F.2d 1319, 1331 (3d Cir. 1987)).

*Second*, Wi-Fi's claim that the Board "did not provide a reasoned written opinion on the § 315(b) issue," Pet. at 11, is contradicted by the record.  The Board's multiple decisions on this point could not be clearer—in sections titled "35 U.S.C. § 315(b)," the Board held that there was no evidence that the Texas

---

[8]    Wi-Fi moved the district court to modify the protective order to allow Wi-Fi to introduce the indemnity agreements in the IPR.  A1628-31.  The court denied that request, reasoning that "granting [Wi-Fi] relief from the Protective Order would undermine the negotiations which produced the Protective Order."  A1630.  Wi-Fi did not appeal that decision.

- 11 -

Defendants were real parties in interest or in privity with Broadcom and therefore that Broadcom's petition was not time-barred.[9]  A8-9; A76-90; A272-276.

*Third*, the Board did not err by purportedly considering "a subset of the *Taylor* factors."  Pet. at 8, 12.  Nothing in *Taylor* or the Trial Practice Guide suggests the wooden, six-part test that Wi-Fi proposes.  *See Taylor*, 553 U.S. at 893-94, 893 n.6 ("grounds for nonparty preclusion could be organized differently," and six-category list does not "establish a definitive taxonomy"); Trial Practice Guide, 77 Fed. Reg. 48,759 (privity analysis is "flexible").  And neither the Board nor this Court is required to address arguments that the petitioner fails to raise before the Board.  *See WesternGeco*, 889 F.3d at 1320, 1320 n.7 (Board "properly focused" on privity theory advanced by petitioner); *Redline Detection*, 811 F.3d at 450 (the Court does not consider arguments not raised before the Board).

*Finally*, Wi-Fi's vague claim that the Board's decision was "inconsistent" with previous Board decisions in "indistinguishable cases" is flatly wrong.  *See*

---

[9]    In its Final Written Decision, the Board explained that Wi-Fi's Section 315(b) "arguments and evidence are not different substantively from the arguments and evidence presented in its Motion for Additional Discovery (Paper 14).  The arguments and evidence are unpersuasive for same reasons explained in our Decision on Patent Owner's Motion for Additional Discovery (Paper 23), which we adopt and incorporate by reference."  A9.  The Board was not required to copy and paste its previous analysis into its Final Written Decision.  *See, e.g.*, Slip op. at 17 ("In light of its multiple and detailed discussions of the Section 315(b) issue, the Board cannot fairly be accused of not providing an adequate explanation for its decision on that question.").

Pet. at 3, 4, 11.  Wi-Fi cites *Transdata*, *Zoll*, and *Chrimar*; none support its case.[10]

Rather, in answering the "highly fact-dependent question" of whether a nonparty is a privy or real party-in-interest, *see* Trial Practice Guide, 77 Fed. Reg. 48,759, the Board decided each case on its own unique facts:

1.      Wi-Fi asserts that *Transdata* is "inconsistent" with the Board's decision here merely because the Board there "granted discovery on §315(b) issues, considered the indemnity agreements, and concluded that the IPR petition was time-barred."  Pet. at 3 n.7.  In fact, the *Transdata* Board permitted additional discovery based on evidence that an indemnification agreement not only existed, but suggested that (1) the alleged privy "made indemnification claims against Petitioner," (2) the petitioner had the contractual right to exercise "sole control" of the related litigation, and (3) the petitioner resolved the indemnification claim by agreeing to provide the alleged privy "with an unqualified defense."  *General Elec. Co. v. Transdata, Inc.*, IPR2014-01380, Paper 15 at 5 (P.T.A.B. Nov. 12, 2014).  No such evidence exists here.  Further, in assessing whether the petition was time-barred, the Board cited *Taylor* for the proposition that privity exists where a party "***assumed control over the litigation*** in which that judgment was rendered," and

---

[10]     *General Elec. Co. v. Transdata, Inc.*, IPR2014-01380, Paper 15 (P.T.A.B. Nov. 12, 2014); *Zoll Lifecore Corp. v. Phillips Elecs. North Am. Corp.*, IPR2013-00609, Paper 15 (P.T.A.B. Mar. 20, 2014); and *D-Link Sys., Inc. v. Chrimar Sys., Inc.*, IPR2016-01425, Paper 15 (P.T.A.B. Jan. 17, 2017).  Wi-Fi's *Chrimar* citation incorrectly refers to IPR2016-01426 rather than IPR2016-01425.  *See* Pet. at 3 n.7.

concluded that the petitioner could control the privy's defense in the related lawsuit, citing, among other things, an agreement that petitioner would "***direct and control the litigation***." *General Elec. Co. v. Transdata, Inc.*, IPR2014-01380, Paper 34 at 7-11 (P.T.A.B. Apr. 15, 2015). Thus, the Board applied the same standard as in the present case, but reached a different result based on the different facts of the case. *See id.* at 12-13.

2. Wi-Fi's only *Zoll*-related argument—an ambiguous reference to Broadcom's alleged "carefully-worded declaration" describing its purported ties to the Texas Defendants, Pet. at 9—mischaracterizes both Broadcom's declaration and *Zoll*. As Broadcom previously explained, it submitted its declaration in response to Wi-Fi's claim that Broadcom could control the Texas Defendants; it was not until Wi-Fi's petition for rehearing of the Final Written Decision that Wi-Fi reversed course and asserted a new theory that the Texas Defendants controlled Broadcom. *See* Broadcom Op. Br. 48 n.20. Thus, Broadcom had no opportunity to submit a declaration responding to Wi-Fi's (untimely) new theory regarding the Texas Defendants' alleged control over Broadcom. *Id.*; *see* A272-74.

Further, the *Zoll* Board—similar to the Board in the present case—explained that "[t]he determination of whether a non-party is a real party-in-interest involves a consideration of '***control***.'" *Zoll Lifecore Corp. v. Phillips Elecs. N. Am. Corp.*, IPR2013-00609, Paper 15 at 10 (P.T.A.B. Mar. 20, 2014). In then conducting

- 14 -

Section 315(b)'s "highly fact-dependent" inquiry (and ultimately finding a privity relationship, *id.* at 10-13), the Board relied on evidence that the alleged real party-in-interest was the petitioner's parent company, "control[led] 100% of Petitioner and authorize[d] its budget and plans," and had "exercised consistent control over Petitioner's business" for more than five years. *Id.* at 11-13. The *Zoll* facts are thus far different from the present case.

3.      Wi-Fi does not identify any specific "inconsistency" between the Board's decision here and in *Chrimar*. And for good reason—in *Chrimar*, the Board noted that privity is "a 'highly fact-dependent question,' taking into account factors such as whether the non-party 'exercised or could have exercised control over a party's participation in a proceeding.'" *D-Link Sys., Inc. v. Chrimar Sys., Inc.*, IPR2016-01425, Paper 15 at 3 (P.T.A.B. Jan. 17, 2017). After conducting that "fact-dependent" inquiry, the Board concluded that there was insufficient evidence to conclude that the non-party was a real party-in-interest. *Id.* at 7-8.

Thus, in *Transdata*, *Zoll*, *Chrimar*, and below, the Board properly applied the *Taylor* standard to the particular facts of each case. The same standard has applied for years, and the Board continues to apply that standard in the same flexible manner. There is no inconsistency.

## CONCLUSION

The petition should be denied.

- 15 -

Respectfully submitted,

/s/ Dominic E. Massa
DOMINIC E. MASSA
KATIE M. SAXTON
KEVIN A. GOLDMAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee Broadcom Corporation*

July 23, 2018

- 16 -

# CERTIFICATE OF SERVICE

I hereby certify that, on this 23rd day of July, 2018, I filed the foregoing Appellee Broadcom Corporation's Response to Appellant Wi-Fi One, LLC's Combined Petition for Rehearing En Banc and Panel Rehearing with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ Dominic E. Massa
DOMINIC E. MASSA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this response complies with the type-volume limitation of Circuit Rule 32(a).

1.    The response complies with the type-volume limitations of Fed. R. App. P. 40(b)(1) and 35(b)(2) because exclusive of the exempted portions the response does not exceed 15 double-spaced pages.

2.    The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2010 in a proportionally spaced typeface:  Times New Roman, font size 14 point.

/s/ Dominic E. Massa

DOMINIC E. MASSA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

July 23, 2018